# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Richard Sharif, | ) | Case No. 09 B 05868 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Wellness International Network, Ltd. | ) | |
| aka WIN, Ralph Oats and Cathy Oats, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 09 A 00770 |
| | ) | |
| Richard Sharif, Individually and as Trustee | ) | |
| of the Soad Wattar Trust | ) | |
| Defendant. | ) | Judge Jacqueline P. Cox |

### Order on Plaintiff's Motion to Compel or Motion for Sanctions

This matter is before the court on the motion of Wellness International Network, Ltd., Cathy Oats and Ralph Oats (collectively, the "Plaintiffs" or "WIN") to compel the Debtor, Richard Sharif, to produce discovery documents, to attend a Rule 2004 examination, and to respond to various discovery requests and interrogatories. In the alternative, Plaintiffs' motion seeks sanctions against Mr. Sharif for failure to comply with discovery requests, deadlines and orders of this court. For the reasons that follow, Plaintiffs' motion for sanctions is GRANTED.

### Background

Prior to filing his chapter 11 petition, the Debtor and the Plaintiffs herein were involved in litigation in the District Court for the Northern District of Texas. The Debtor and several other

1

parties filed a complaint on July 8, 2005 against Wellness International Network, Ltd., WIN Network, Inc., Ralph Oats, Cathy Oats, and Sheri Matthews in the United States District Court for the Northern District of Texas asserting fraud, RICO and other claims seeking damages of nearly $1 million. Pls. Am. Compl. Objecting to Discharge, case no. 09 A 0770, dkt. no. 10 at 2 (the "Am. Compl."). The Debtor and his co-plaintiffs did not conduct any discovery in that action and did not cooperate with WIN's efforts to obtain discovery. *Id.* The Debtor and his co-plaintiffs did not serve initial disclosures and failed to respond to written discovery. *Id.* The Debtor and his co-plaintiffs had admissions deemed against them for their failure to respond to discovery requests. WIN subsequently moved for summary judgment on the grounds that the admissions negated all claims asserted; the Debtor and his co-plaintiffs failed to introduce any evidence in support of the claims. *Id.* The district court granted summary judgment on these grounds. *Id.* The Debtor and his co-plaintiffs appealed the entry of summary judgment to the Fifth Circuit in 2007. *Id.* The Fifth Circuit affirmed all of the district court's rulings and noted:

> A review of the record on appeal demonstrates that Appellant's untimely performance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of nonperformance or insubstantial performance and compliance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to prolong this contumacious litigation for purposes of harassment or delay, or both. The time is long overdue to terminate Appellants' feckless litigation at the obvious cost of time and money to the Defendants by affirming all rulings of the district court but remanding the case to that court for the reinstatement of its consideration of Appellees' motion for attorney's fees. In so doing, we caution Appellants that any further efforts to prolong or continue proceedings in this court, including the filing of petitions for rehearing, will potentially expose them to the full panoply of penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Id.* at 2-3 (citing *Sharif v. Wellness Int'l Network, Ltd.*, no. 07-10834, 2008 U.S. App. Lexis 7483, at *2 (5th Cir. April 8, 2008)). On remand the district court awarded the Plaintiffs herein attorneys' fees in the amount of $655,596.13 as a sanction against the Debtor and his co-plaintiffs. *See* Order on Mot. for Civil Contempt, Civil Action No. 3:05-CV-01367-B, Docket No. 180 at p. 1, District Court for the Northern District of Texas, Dallas Division (February 10, 2009). Plaintiffs herein subsequently served the Debtor with post-judgment discovery and

2

document requests. *Id.* The Debtor never complied with the Plaintiffs' discovery requests and did not tender responsive documents. *Id.*

The Plaintiffs filed a Motion to Compel post-judgment discovery on October 13, 2008; the motion was granted on November 19, 2008 and the Texas district court ordered the Debtor to respond to outstanding discovery requests. *Id.* at 1-2. Despite the district court's order compelling the Debtor to comply with discovery requests, the Debtor did not respond to such requests nor did he appear for a deposition. *Id.*

On December 4, 2008 Plaintiffs filed a Motion for Civil Contempt against the Debtor for violating the Texas court's order on the Motion to Compel. *Id.* At a show cause hearing on January 13, 2009, at which the Debtor did not appear, the Texas court found clear and convincing evidence that the Debtor had violated several court orders compelling the Debtor to comply with outstanding discovery requests and the order to appear at the January 13, 2009 show cause hearing. *Id.* at 3. The Texas court held the Debtor in civil contempt for his discovery violations and ordered him to respond to post-judgment discovery and reimburse Plaintiffs for attorneys' fees and costs incurred to prepare and file the motion to compel and the motion for civil contempt. *Id.* at 3-5. On February 24, 2009, two weeks after the Texas court's contempt ruling, the Debtor filed the instant bankruptcy case.

On August 24, 2009, Plaintiffs filed adversary proceeding 09 A 00770 asking the court to deny Debtor a discharge pursuant to 11 U.S.C. § 727. Count I of the adversary complaint alleges that the Debtor "has continuously concealed property that he owns by holding such property in the name of the Soad Wattar Living Trust with improper intent to deceive" in violation of 11 U.S.C. § 727(a)(2). Am. Compl. ¶ 19. Plaintiffs further assert that the Debtor is the Trustee of the Soad Wattar Trust, exercises complete control over the trust, and holds out the assets in the trust as his own.

Count II alleges that the Debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" in violation of 11 U.S.C. § 727(a)(3). *Id.* at ¶ 22.

Count III alleges that the Debtor knowingly and fraudulently made a false oath or account in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A). Specifically, Plaintiffs assert that Debtor failed to disclose companies in which he was an officer within the past 6 years despite the fact that part of Debtor's bankruptcy petition requires the Debtor to list

3

all businesses in which the debtor was an officer, director, partner or managing executive of a corporation. In response to this question Debtor did not list any businesses. *See* Statement of Financial Affairs ("SOFA"), Voluntary Chapter 7 Bankruptcy Petition (the "Petition"), case no. 09 B 05868, dkt. no. 1 at p. 29, ¶ 18. Plaintiffs assert that the Debtor is or has been an officer of Logan Square MRI and Diagnostic Center, Inc.; Allied Medical Management, Inc.; and Logan Square Surgery Center, Ltd.

Count IV alleges that the Debtor has failed to explain the loss of $5M in assets that he claimed to own in a 2002 Washington Mutual Bank, N.A. Loan Application (the "Loan Application") in violation of 11 U.S.C. § 727(a)(5). The assets listed in the Loan Application include the following: (1) Logan Square MRI Center; (2) Sharif Pharmacy; (3) Hermosa Medical Center; (4) three Banco Popular Accounts containing $90,000, $40,000 and $50,000, respectively; (3) $1,400,000 in a retirement fund 401(k); and $1,400,000 in real estate (collectively, the "Loan Application assets"). *See* Loan Application, Ex. No. 54 to Hearing Ex. No. 15 at p. WM 0840-0841. Although Debtor presently claims that he does not own any of the property that he once claimed to own in the loan application, he has failed to explain its loss or disposition.

Count V seeks a declaratory judgment that the Soad Wattar Trust is the alter ego of the Debtor because the Debtor exercises complete control over the trust, there is a unity of interest between Debtor and the trust such that separate personalities do not exist, and continuing to recognize the Debtor and the trust as separate would promote injustice.

On April 15, 2010, in this adversary proceeding, the Plaintiffs filed a Motion for Sanctions, Costs and Fees, and in the alternative, a Motion to Compel, Motion for Costs and Fees, and Motion to Modify Scheduling Order (hereinafter the "Sanctions Motion"). The court held a hearing on the Sanctions Motion on April 21, 2010. At the hearing, Plaintiffs argued that the Debtor had failed to comply with discovery requests and missed discovery deadlines for document production and responding to interrogatories. This court entered an order on April 21, 2010 compelling the Debtor to comply with all outstanding discovery by April 28, 2010 or else an order of default would be entered against the Debtor in adversary proceeding 09 A 00770. This court continued the hearing on the Sanctions Motion to April 28, 2010.

On April 28, 2010, the parties appeared before this court and the Plaintiffs noted that the Debtor had produced some documents along with certain interrogatory responses on the afternoon of April 27, 2010. *See* May 24, 2010 Transcript of Sanctions Hearing, *Wellness International, Ralph Oats, and Cathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust* at 4 (the "Hearing Transcript"). This court continued the hearing to May 24, 2010 to allow Plaintiffs additional time to assess whether or not the Debtor's document production and discovery responses were in compliance with the April 21, 2010 order compelling the Debtor to comply with all outstanding discovery. At the hearing on May 24, 2010, the Plaintiffs argued that the Debtor still had not fully complied with discovery requests and should be sanctioned. *Id.*

A.    <u>Debtor Failed to Sign or Verify His Interrogatory Responses</u>

Federal Rule of Civil Procedure 33(b), applicable to this adversary pursuant to Bankruptcy Rule of Procedure 7033, requires:

> (1) ... [I]nterrogatories must be answered:
>     (A) by the party to whom they are directed; or
>     (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.
> (3) ... Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath ...
> (5) ... The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed. R. Civ. P. 33(b)(1)-(5). Additionally, the Seventh Circuit Court of Appeals and the United States District Court for the Northern District of Illinois have determined that under Rule 33, answers to interrogatories must be verified and must be signed by the person answering the interrogatory, not only by the party's attorney. *See, e.g., Hindmon v. Natl.-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 619 (7th Cir.1982) (observing that interrogatory answers signed by an attorney and not the party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); accord *Overton v. City of Harvey*, 29 F.Supp.2d 894, 901 (N.D.Ill.1998) (striking as summary judgment exhibit plaintiff's unverified answers to interrogatories signed only by attorney).

The Debtor's interrogatory responses as Trustee of the Soad Wattar Revocable Living Trust (the "Soad Wattar Trust") were signed by Debtor and Debtor's attorney but did not contain a statement verifying the interrogatory answers. *See* Hearing Transcript at 6; Richard Sharif's Answers to Interrogatories as Trustee of the Soad Wattar Revocable Living Trust, Hearing Ex. No. 3 at p. 9 ("Sharif Trustee Interrog. Answers"). Similarly, the Debtor's individual interrogatory responses were signed by Debtor's attorney and did not contain a statement verifying the interrogatory answers. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, Hearing Ex. No. 4 at p. 9 ("Sharif Individual Interrog. Answers"); Hearing Transcript at 6. They should have been signed by the Debtor as required by FRCP 33 and FRBP 7033.

Debtor was not present at the hearing and Debtor's attorney offered no explanation as to why the interrogatory responses were not signed and verified as required under the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

B.    Debtor's Failure to Provide Documents Requested by Plaintiffs and the Trustee.

Plaintiffs asserted that the Debtor has continuously failed to produce numerous documents that were requested by the Plaintiffs in requests for production and by the Trustee at the 341 meeting and in a subsequent motion to compel. Plaintiffs also asserted that the Debtor has failed to produce these documents despite this court's April 21, 2010 order compelling the Debtor to comply with all outstanding discovery requests.

1.    **Washington Mutual Loan Application and Related Documents**

During the Debtor's initial 341 meeting on March 25, 2009, Plaintiffs and the United States Trustee requested that the Debtor provide documents relating to the Loan Application wherein the Debtor asserted that he owned various assets. The assets listed in the Loan Application include the following: (1) Logan Square MRI Center; (2) Sharif Pharmacy; (3) Hermosa Medical Center; (4) three Banco Popular Accounts containing $90,000, $40,000 and $50,000; (3) $1,400,000 in a retirement fund 401(k) account; and $1,400,000 in real estate. *See*

Loan Application as noted above at p. WM 0840-0841. The 341 meeting was continued to April 21, 2009 to allow the Debtor additional time to gather any documents related to the Loan Application assets. *See* Sanctions Motion at p. 5. When the Debtor appeared at the continued 341 meeting he did not provide the U.S. Trustee or the Plaintiffs with the requested documents, and instead alleged that none of the Loan Application assets belonged to him. *Id.* The Debtor asserted that the Soad Wattar Trust owned all of the Loan Application assets, that the Debtor was the Trustee of the Trust, and that the Debtor had lied when he represented that he owned the assets listed in the Loan Application. *Id.* At his Rule 2004 examination the Debtor confirmed under oath that he had testified at the 341 meeting that he lied in the Loan Application:

> Q: The third sentence [of Debtor's answer to the Amended Adversary Complaint states], defendant testified at the 341 meeting that he lied on the loan application, that he did not own of the real estate listed in the loan application, and that this property is owned by Soad Wattar Trust, his mother or sister. Do you see that statement? I'd be glad to orient you if you --
> A: Yeah. Is that by the Answer, defendant admits?
> Q: Uh huh.
> A: Yeah. That on April '09 – okay.
> Q: Is that a true statement?
> A: Yes, yeah.

May 13, 2010 Rule 2004 Examination of Richard Sharif, *Wellness International, Ralph Oats, and Cathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust*, Hearing Ex. No. 15 at pp. 60-61 ("Transcript of Debtor's 2004 Examination").

Based upon the Debtor's assertion that the Trust owned the assets listed in the Loan Application assets, the Plaintiffs and the U.S. Trustee requested documents relating to the formation and funding of the Soad Wattar Trust and documents evidencing ownership or transfer of the Loan Application assets. *See* Sanctions Motion at p. 5. The 341 meeting was continued again to June 3, 2009 to give the Debtor time to provide the requested documents. At the June 3, 2009 meeting the Debtor again failed to provide any of the requested documents. Sanctions Motion at p. 5.

Subsequent to the Debtor's refusal to provide the documents requested at his second and third 341 meetings, the Debtor brought a Motion for Protective Order before this court and

requested that he be granted leave to tender documents relating to the Loan Application and the Soad Wattar Trust under a protective order to prevent disclosure of information to the Debtor's creditors and creditors' attorneys. *See* 09 B 5868, dkt. no. 23. The Debtor's Motion for Protective Order was denied on June 11, 2009. *See* 09 B 5868, dkt. no. 25. Despite this court's denial of Debtor' Motion for Protective Order, the Debtor never tendered any documents relating to the Loan Application, thereby prompting the Trustee to file a Motion for Turnover of Documents from Richard Sharif to Horace Fox, Jr. ("Trustee's Motion") on October 20, 2009. *See* 09 B 5868, dkt. no. 40. This court granted the Trustee's Motion on October 27, 2009 (09 B 5868, dkt. no. 42). To date the Debtor has failed to comply with this court's order to turn over the required documents to the Trustee. *See* Sanctions Motion at p. 6.

The Plaintiffs also requested that the Debtor provide documents relating to each of the Loan Application assets in their requests for production. *See* Richard Sharif's Response to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 1, ¶¶ 15-22 ("Sharif Production Responses"). The Debtor's response failed to produce any documents relating to the Loan Application assets.

### 2.    Richard Sharif Revocable Trust Documents

Plaintiffs asserted that the Debtor failed to disclose all requested information or documents relating to the Richard Sharif Revocable Trust despite interrogatory and production requests requiring him to do so.

The Debtor listed the Richard Sharif Revocable Trust in his Petition as property owned by another person that the Debtor controls. *See* SOFA at p. 27. Based on this disclosure, the Plaintiffs' interrogatories requested the Debtor to identify each trust for the benefit of others that the Debtor had created or contributed to in the last five years. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, Hearing Ex. No. 4 at p. 8, ¶ 11; Richard Sharif's Response as Trustee to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 2 at p. 2, ¶ 11 ("Sharif Trustee Production Responses"). The Debtor responded to the interrogatory with the answer "none", which is wholly inconsistent with the Debtor's sworn bankruptcy

schedules which list the Richard Sharif Revocable Trust on page 27. *See* Sharif Individual Interrog. Answers at p. 8, ¶ 11; Hearing Transcript at 9; SOFA ¶ 14.

The Plaintiffs also requested that the Debtor produce all documents referencing or evidencing any assets held in trust in which the Debtor claims or has an interest. Sharif Production Responses at ¶ 42 and Sharif Trustee Production Responses at ¶ 42. Again, despite Debtor's acknowledgment of having an interest in the Richard Sharif Revocable Trust in his sworn bankruptcy schedules (*See* SOFA at p. 27), the Debtor failed to produce any documents relating to the trust. Hearing Transcript at 9-11.

### 3.    Bank Statements and Financial Records

Plaintiffs asserted that the Debtor failed to produce bank statements and account records relating to financial transactions involving Mr. Sharif individually and the Soad Wattar Trust. The Plaintiffs requested that the Debtor produce documents evidencing any account at a financial institution in which the Debtor is a designated signatory. Sharif Trustee Production Responses at p. 7, ¶ 44; Sharif Production Responses at p. 7-8, ¶ 44. The Debtor failed to produce any documents responsive to these requests and instead listed the names and addresses of three financial institutions with corresponding account numbers. *See* Sharif Production Responses at p. 7, ¶ 44; Sharif Trustee Production Responses at p. 7, ¶ 44; Hearing Transcript at 11.

The Plaintiffs also requested that the Debtor produce documents relating to any checking, savings, money market, passbook, demand deposit, negotiable order of withdrawal or trust account in which the Debtor had any interest. Sharif Trustee Production Responses at p. 8, ¶ 49; Sharif Production Responses at p. 8, ¶ 49. The Debtor failed to produce any documents responsive to this request, even though he has a personal account with JP Morgan Chase Bank, and acknowledged his lack of compliance during his 2004 examination. Transcript of Debtor's 2004 Examination at 166. Instead, the Debtor responded to Plaintiffs' requests by stating that any such documents are available at JP Morgan Chase and providing corresponding account numbers. Sharif Trustee Production Responses at p. 8, ¶ 49; Hearing Transcript at 11-12.

9

During their investigation, the Plaintiffs independently discovered numerous documents that the Debtor failed to produce relating to assets held at AG Edwards in which the Debtor has an interest. The Plaintiffs discovered account statements from AG Edwards for the period of September to October of 2003 in the name of Soad Wattar, the Debtor's mother, and Richard Sharif as joint tenants. A.G. Edwards & Sons, Inc. Account Statements, Ex. No. 61 to 2004 Examination of Debtor ("AG Statements"). These account statements revealed that approximately $752,050 in assets were held by AG Edwards in the joint tenancy of Soad Wattar and Richard Sharif. *See* AG Statements. In his Rule 2004 examination the Debtor admitted that while he does have documents relating to this AG Edwards account, he did not produce them. Transcript of Debtor's 2004 Examination at 172-173. The Debtor also stated that the assets in this AG Edwards account were transferred to Wachovia Bank, but the Debtor failed to produce any transfer documents. Transcript of Debtor's 2004 Examination at 174. The Debtor also failed to disclose the AG Edwards accounts in his bankruptcy petition. *See* Petition. The Debtor failed to produce information or documentation regarding the AG Edwards account or its disposition despite interrogatories and requests for production requiring him to produce all documents evidencing any interest he had in any account from 2002 to the present, along with all documents showing the disposition or transfer of such accounts from 2002 to the present. *See* Sharif Trustee Production Responses at p. 8, ¶ 49; Sharif Individual Interrog. Answers at nos. 6-7; Hearing Transcript at 16-18.

The Plaintiffs also discovered a variable annuity held at AG Edwards for the benefit of the Debtor and his sister, Ragda Sharifeh, as joint tenants. The Plaintiffs found an AG Edwards statement showing the TransAmerica Triple Advantage VA with a valuation of $39,248. AG Statements at AGE 0180-0181. Once again, the Debtor failed to provide any information or produce any documentation relating to this annuity despite receiving interrogatories and document requests requiring him to do so. Hearing Transcript at 22. At his 2004 examination the Debtor was unable to identify where the $39,248 is currently located. Transcript of Debtor's 2004 Examination at 178-179.

The Plaintiffs estimate that approximately $912,000 in assets were held at AG Edwards for the benefit of the Debtor individually or jointly with his mother and his sister, yet the Debtor provided no discovery information or documentation regarding these AG Edwards accounts.

Hearing Transcript at 24.

The Debtor also failed to provide any information or documentation evidencing other accounts that he admitted to having an interest in at his 2004 Examination. Hearing Transcript at 26-31. The Debtor admitted to holding the following accounts but produced no documentation or information about the accounts in response to Plaintiffs' discovery requests: Soad Wattar Living Trust account at Banco Popular; account at Raymond Jones; checking account at JP Morgan Chase. During his Rule 2004 examination, Debtor admitted his failure to produce the requested documents and offered production:

1)  Q: Sir, I'm just asking. You have not given me one single account statement for the trust [at Banco Popular], have you?
    A: Account statement?
    Q: Yes.
    A: You mean, from like the investment firm?
    Q: Yes.
    A: There are boxes available. These are, you know --
    Q: You have not provided us a single account statement, have you?
    A: I did not. Again, I did not know that you needed that one. If not, it's available.

2)  Q: Where are there accounts besides Banco Popular?
    A: Banco Popular, absolutely, and whatever you need from Wells Fargo, I'll provide you with it.
    Q: I'm just asking for the names of the companies – Wells Fargo and who else?
    A: Wells Fargo, Wachovia, which is now Wells Fargo, has a mortgage payment for the house because it comes out of the mother's living trust every month. This is two – three. What else?
    Q: Any investment firms like Smith Barney or Morgan Stanley? I'm just throwing out people that I can think of.
    A: There is one she [Debtor's mother] has an account with Raymond James, since 2005, one account. I just remembered this. I believe that's all I know right now.

3)  Q: I'm asking why have you not produced to me the JP Morgan Chase account statements as requested in discovery?
    A: Counsel, I did list the only account that I have. I'm sorry if I didn't produce the statement available. I know there's a question, Counselor, that I need to reproduce because my lawyer would have told me to produce it. I went by the name of the bank and my account but –

Transcript of Debtor's 2004 Examination at pp. 107-109; 143-144. Plaintiffs argue that even though the Debtor stated during the Rule 2004 Examination that he could produce documents relating to the undisclosed accounts, as shown above, the point is that the Debtor is still grossly out of compliance with his discovery obligations despite this court's April 21, 2010 order compelling him to comply with all outstanding discovery.

### 4. Conveyance, Disposal, or Transfer of Asset Documents

Plaintiffs asserted, and Debtor Sharif's Answers to Interrogatories show, that the Debtor failed to provide information relating to the conveyance, disposal, or transfer of certain assets in which the Debtor once claimed an interest. *See* Sharif Individual Interrog. Answers and Sharif Trustee Interrog. Answers at p. 6-7, ¶¶ 6-8. At his 2004 examination the Debtor admitted that he had once owned a 10% interest in the Logan Square MRI & Diagnostic Center, Inc. ("Logan Square") and had relinquished such interest. *See* Transcript of Debtor's 2004 Examination at p. 95. However, the Debtor never provided any information or documentation evidencing the disposition of his interest in Logan Square, and he admitted the same at the 2004 examination despite having received Plaintiffs' interrogatories and requests for production inquiring about the disposition of his interest in Logan Square. *See* Transcript of Debtor's 2004 Examination at 96; Sharif Individual Interrog. Answers at p. 7, ¶¶ 6-8.

At his 2004 examination the Debtor denied ever having an ownership interest in Sharif Pharmacy (Transcript of Debtor's 2004 Examination at 61), but the Debtor produced a 2002 federal income tax return in which he represented to the IRS he was the 100% owner of Sharif Pharmacy. *See* Transcript of Debtor's 2004 Examination at 68. After the Debtor was confronted with the inconsistency between his testimony and his 2002 federal income tax return Debtor stated that he does not examine his tax returns because his accountant does and he does not understand them. *Id.* at 69. The Debtor admitted that his ownership interest in the Sharif Pharmacy was 10% and that the 100% listed in his tax return was an error. *Id.* at 68. Whether the Debtor's ownership interest in Sharif Pharmacy was 10% or 100%, he produced no documentation evidencing the transfer of his interest in the pharmacy and acknowledged his failure to comply during the 2004 examination. *See* Transcript of Debtor's 2004 Examination at

72. The Debtor also admitted that he asked the office manager of Sharif Pharmacy for responsive documents from 1992 through the present but never undertook any other efforts to obtain documents from 2006 to the present. *Id.* at 87.

### 5. Corporate Records

Plaintiffs asserted that the Debtor failed to produce corporate records for Sharif Pharmacy and Hermosa Medical Center after 2006. Plaintiffs' discovery requests specifically designated corporate records for Sharif Pharmacy and Hermosa Medical Center as documents for production. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 7-8; Sharif Production Responses, Hearing Ex. No. 1 at ¶¶ 7-8. The Debtor never produced the requested documents even after this court's April 21, 2010 order compelling the Debtor's compliance with all outstanding discovery requests. Hearing Transcript at 34-36.

### 6. Documents Evidencing the Formation and Funding of the Soad Wattar Trust

Plaintiffs asserted that the Debtor failed to produce documents relating to the formation and funding of the Soad Wattar Trust. Hearing Transcript at 38. Plaintiffs argued that these documents are critical because nearly everything the Debtor owned is now in the Soad Wattar Trust.

Plaintiffs' requests for production required the Debtor to produce documents establishing and funding the Soad Wattar Trust, evidencing the transfer of assets into the trust, and all other documents related to assets held in the trust. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 27, 45-46, 49-50; Hearing Transcript at 38-41. Plaintiffs specifically requested all deeds, records, titles, or other documents that related to assets in the name of the Soad Wattar Trust from 2002 to the present. Debtor alleges that the Trust was funded with a $2,000,000 inheritance from his deceased father that came from an international wire transfer from Beirut, Lebanon through a financial entity in Dubai. Transcript of Debtor's 2004 Examination at 109. However, Debtor also admitted that he did not have any of the documents evidencing the wire transfers in his possession and that he had not produced such documents to Plaintiffs. Transcript

of Debtor's 2004 Examination at 110-111. The Debtor also admitted that except for one asset, the Revere house, he had failed to produce any documents showing transfers of assets into the Soad Wattar Trust from 1992 to the present. *See id.* at 104-105. In sum, Debtor failed to produce documentation showing from where the money and property in the Soad Wattar Trust came.

Plaintiffs also requested the 1992 trust instrument that purportedly established the Soad Wattar Trust. Sharif's Trustee Responses at ¶ 11 concern amendments to the Soad Wattar Trust and not the original document that established the Trust. Debtor admitted in his 2004 examination that he failed to produce the original trust instrument. Transcript of Debtor's 2004 Examination at 101.

### 7. Signed Tax Returns and Documents Used to Prepare Debtor's Tax Returns

Plaintiffs asserted that the Debtor failed to produce signed tax returns or any of the underlying source documents used to prepare such tax returns. Hearing Transcript at 44. While Plaintiffs did receive some federal and state tax returns from 2003-2008 from the Debtor, not one of the tax returns received was signed. *See* Hearing Transcript at 44; Sharif Production Responses at ¶ 10 and Sharif Trustee Production Responses at ¶ 10. When the Debtor was questioned about the unsigned tax returns at his 2004 examination, he stated that he was 100% sure that the tax returns that went to the government were signed, but he never produced any signed tax returns to the Plaintiffs. *See* Transcript of Debtor's 2004 Examination at 130-131. The Debtor also stated that he never attempted to obtain signed tax returns from the IRS. *Id.* at 130.

The Debtor also failed to produce the source documents used to prepare his tax returns and admitted the same in his 2004 examination. *See id.* at 135.

### 8. Documents Evidencing Debts Owed to Debtor's Family Members

Plaintiffs asserted that the Debtor failed to produce any documents underlying the debts that he owes to his family members. *See* Sharif Production Responses & Sharif Trustee Production Responses at ¶¶ 34-37; Hearing Transcript at 54. The Debtor's bankruptcy petition

14

listed several debts owed to the Debtor's family members including the following: (1) $49,000 to Haifa Kaj, Debtor's sister; (2) $39,000 to Jamal Sharif, Debtor's brother; (3) $93,000 to Ragda Sharifeh, Debtor's wife; and (4) $90,000 to Soad Wattar, Debtor's mother. *See* Petition at Schedule F, p. 17; Hearing Transcript at 55. Based on these disclosures in the Debtor's Schedule F, the Plaintiffs requested that the Debtor produce documents referencing or evidencing any debts owed to the above family members. *See* Sharif Production Responses, Hearing Ex. No. 1 at ¶¶ 34-37; Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 34-37. The Debtor failed to produce any documents evidencing the amounts he owes to his family and asserted that all of the debts were created with oral agreements. *See* Sharif Production Responses, ¶¶ 34-37; Hearing Transcript at 56. The Plaintiffs contend, and the court agrees, that it is hard to believe that $271,000 was transferred as loans to the Debtor and no documents such as wire transfer forms, bank statements, canceled checks, emails, enclosure letters, etc. were created in doing so.

*  *  *

In response to all of the Plaintiffs' assertions regarding the Debtor's non-compliance, the Debtor's attorney argued that while there may be some deficiencies in the Debtor's discovery responses, the Debtor did make a good faith effort to comply with all discovery requests. Hearing Transcript at 75-76. Debtor's attorney pointed out that the Debtor was initially unable to meet the discovery deadlines because he was in Syria attending to his ill mother who subsequently passed away. Hearing Transcript at 68. When this court requested proof of the Debtor's whereabouts the Debtor's attorney produced airline tickets to Syria and a copy of the mother's death certificates. *Id.* This court does not believe that the Debtor made a serious effort to comply with Plaintiffs' discovery requests both before or after his mother's death.

Debtor's attorney argued that Plaintiffs' counsel never called him to object to the sufficiency of the discovery responses and production; Plaintiffs simply filed this motion for sanctions. Hearing Transcript at 68-69. Debtor's attorney also asserted that Plaintiff's supplement to their Sanctions Motion did not contain the proper certification as required by Northern District of Illinois Local Rule 37.2 certifying that the movant consulted with opposing counsel regarding the discovery defects before filing a motion pursuant to Federal Rule of Civil

15

Procedure 26. Hearing Transcript at 77-78. This court notes that a phone call would have been futile because the Debtor was so grossly out of compliance with his discovery obligations. This court also notes that Plaintiffs did in fact comply with Local Rule 37.2 because their Sanctions Motion contained the required certification. Sanctions Motion at 12.

Debtor's attorney asserts that he produced some documents after the Debtor's 2004 examination. Debtor's attorney argued that he surmised at the Debtor's 2004 examination that the plaintiffs wanted more documents than what they had received based on the questions that were posed to the Debtor; in response Debtor's attorney took it upon himself to produce bank statements from several financial institutions relating to the Soad Wattar Trust, the Debtor's personal bank accounts and the Sharif Pharmacy. Hearing Transcript at 70-71. Debtor's attorney never specified exactly which documents were produced after the 2004 examination so it is unclear what was contained in the late production, or whether the documents were responsive to Plaintiffs' requests and why they were not produced sooner. The court notes that the Debtor's 2004 examination took place on May 13, 2010, so any documents produced after that were well outside of the April 28, 2010 deadline that the court gave the Debtor to complete all outstanding discovery and prevented the Plaintiffs from questioning the Debtor about them at the Rule 2004 examination.

## Conclusion

This court has stated time and time again that Bankruptcy Courts provide extraordinary relief which requires extraordinary cooperation from Debtors. This extraordinary cooperation encompasses full compliance with all discovery requests in a timely manner. Failure to comply with discovery can result in sanctions including, but not limited to, a default judgment and attorneys' fees and costs. *See, e.g.*, *In re Golant*, 239 F.3d 931, 933-34 (7th Cir. 2001) (affirming entry of default judgment against a debtor who failed to produce documents after the bankruptcy court compelled him to do so); *In re Thomas Consol. Indus.*, 2005 WL 3776322 (N.D. Ill. 2005) (affirming dismissal of claims as a sanction for violating bankruptcy court's discovery orders compelling compliance with outstanding discovery requests).

It is apparent to this court that the Debtor has failed to comply with most of the Plaintiffs' discovery requests as documented in this Order. While the court understands and sympathizes

with the Debtor's loss of his mother, this court finds that Debtor's disclosures are still inadequate given this court's order compelling the Debtor to comply with all outstanding discovery by April 28, 2010. At no time has the Debtor asserted that he has not had sufficient time to comply with Plaintiffs' requests. The Debtor's lack of compliance is a pattern that has continued from the time of the underlying litigation in Texas to the instant bankruptcy case and adversary proceeding.

This court finds that the Debtor has failed to comply with this court's order compelling him to comply with all of Plaintiffs' outstanding discovery requests. As a sanction for Debtor's failure to comply with discovery requests, this court enters default judgment against Debtor and in favor of Plaintiffs in adversary proceeding 09 A 00770. Judgment is entered in favor of Plaintiffs on all counts of their adversary complaint.

On Count I this court finds that the Debtor, with the intent to hinder, delay, or defraud Plaintiffs, has transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the filing of the petition in violation of 11 U.S.C. § 727(a)(2). Specifically, the Debtor has failed to produce any documents regarding the assets in the Loan Application, which the Debtor once claimed to own, or what was transferred into the Soad Wattar Trust. Additionally, the Debtor has failed to produce any documents evidencing the formation or funding of the Soad Wattar Trust, or the disposition of the $5 million in assets listed in the Loan Application. This court finds that the Debtor has transferred, removed, destroyed, mutilated, or concealed these pertinent documents with the intent to hinder or delay Plaintiffs from discovering assets that may be used to satisfy the judgment amount that the Debtor owes to Plaintiffs.

On Count II this court finds that the Debtor has concealed, destroyed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained in violation of 11 U.S.C. § 727(a)(3). Specifically, the Debtor has failed to produce any documents showing how his financial condition changed from the point when he claimed to own the Loan Assets to now. The Debtor has not produced any documents showing his ownership interest in the Loan Assets and what happened to those assets.

On Count III this court finds that the Debtor knowingly and fraudulently made a false

oath in connection with this bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A). Specifically, as noted above, the Debtor omitted material information from his bankruptcy schedules such as his failure to disclose companies in which he was an officer within the past six years.

On Count IV this court finds that the Debtor has failed to satisfactorily explain the loss of the assets listed in the Loan Application in violation of 11 U.S.C. § 727(a)(5)

On Count V this court enters a declaratory judgment in finding that the Soad Wattar Trust is the alter ego of the Defendant Richard Sharif because he treats its assets as his own property and it would be unjust to allow Debtor to maintain that the trust is a separate entity.

The Defendant is directed to reimburse Plaintiffs for attorneys' fees incurred to file and to prosecute the Sanctions Motion and the supplemental sanctions motion which was filed after the Debtor's Rule 2004 Examination. Debtor is directed to reimburse Plaintiffs for costs incurred in obtaining the Debtor's Rule 2004 examination, including court reporter and videographer costs.

Plaintiffs are hereby ordered to submit an affidavit within fourteen (14) days of the date of this order which sets forth the attorneys' fees and costs associated with pursuing the Sanctions Motion and its supplement.

Due to the court's findings that the Debtor Richard Sharif has not carried out his discovery obligations and has violated 11 U.S.C. § 727, the court defaults Richard Sharif on the Amended Adversary Complaint herein and:

1. Richard Sharif is prohibited from opposing Plaintiffs' claims in adversary proceeding 09 A 00770;
2. Richard Sharif's answer to the Amended Complaint is stricken;
3. Default is entered in favor of the Plaintiffs and against Richard Sharif on Counts I through V of 09 A 00770;
4. Richard Sharif is hereby denied a discharge pursuant to 11 U.S.C. § 727(a)(2)-(a)(6).

**Dated:**      **July 6, 2010**            **ENTERED:**    *Jacqueline P. Cox*

J.Cox

_____
**Jacqueline P. Cox**
**United States Bankruptcy Judge**