UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Richard Sharif, | ) | Case No. 09-05868 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Ragda Sharifeh, in her capacity as successor trustee and successor beneficiary of the Soad Wattar Revocable Living Trust, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 12-00430 |
| | ) | |
| Horace Fox, Jr., in his capacity as Chapter 7 Trustee of Richard Sharif's bankruptcy estate, Richard Sharif, in his capacity as former Trustee of the Soad Wattar Revocable Living Trust, Wells Fargo Advisors, LLC, and the Green Bank, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion**

On February 15, 2016, Ragda Sharifeh and Haifa Sharifeh brought a Motion for Leave to Commence an Action Against the Trustee and his Counsel. Bankr. 09-05868, Dkt. 253.[1]  That same day, Ragda Sharifeh, individually, brought a Motion for Funds from the Trust. Bankr. 09-05868, Dkt. 254. Ragda Sharif also filed a notice of dismissal pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure in Adversary Proceeding 12-00430. All three of these matters concern the disposition of the Soad Wattar Revocable Living Trust (hereinafter the "Soad Wattar Trust" or the "Trust"). At the hearing on February 18, 2016, counsel for Horace

---

[1] Citations to the docket of the main bankruptcy case will be referred to by "Bankr. 09-05868." Citations to the dockets of the various accompanying adversary proceeding will be referred to by "Adv.," followed by the case number of the relevant adversary proceeding.

1

Fox, Jr., not individually but as Chapter 7 Trustee (the "Trustee") for Richard Sharif (the "Debtor"), urged that the Court dismiss the adversary proceeding with prejudice and set a briefing schedule for the two motions. The Court took all the matters under advisement and will discuss them in this Opinion.

For the reasons stated herein, the Motion for Leave to Commence an Action Against the Trustee and his Counsel should be denied for failure to establish a prima facie case for why the movants should be allowed to sue the Trustee. Moreover, at the February 18, 2016 hearing presenting these motions, counsel for the movants, Maurice J. Salem, was asked if there was any statutory or contractual basis for the Motion for Funds from the Trust. Mr. Salem failed to articulate any such basis for such a request in both open court and in his motion. Therefore that motion should also be denied. Next, dismissal of Adversary Proceeding 12-00430 should be granted without prejudice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. Finally, per the Court's authority under Rule 9011(c)(1)(B) of the Federal Rules of Bankruptcy Procedure, the Court will issue an Order to Show Cause why Ragda Sharifeh, Haifa Sharifeh and Attorney Maurice Salem should not be sanctioned for violating Rule 9011 of the Federal Rules of Bankruptcy Procedure for filing frivolous pleadings.

### I. Jurisdiction

The Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(a) which provides that district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code ("Code"). Under 28 U.S.C. § 157(a), the district courts can refer title 11 cases to bankruptcy judges in their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a) which refers its bankruptcy cases to the judges of this Court.

As allowed by 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on core proceedings arising in or under the Bankruptcy Code.

Core proceedings include "proceedings affecting the liquidation of the assets of the estate,"

28 U.S.C. § 157(b)(2)(O), and matters concerning the administration of the estate. 28 U.S.C.

§ 157(b)(2)(A). Ragda Sharifeh's Motion for Funds from the Trust requests the turnover of

funds from property of the estate. The remaining matters deal with issues involving the

administration of the estate and this bankruptcy case as a whole. These matters, therefore, are

core proceedings in which this Court may enter a final order.

## II. Background

The facts of this case have been the subject of numerous court rulings and should be

familiar to all involved. However, given the moving parties' repeated attempts to play fast-and-

loose with this and other courts, the Court will nonetheless take the time to recite the facts here

for completeness of the record. The following facts are taken from the pleadings as well as from

matters that the Court can take judicial notice of, such as the docket and public record. *See e.g.*,

*In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) ("The court can take judicial notice of

matters in its own records.").

### A. Pre-Bankruptcy Filing

### 1. Northern District of Illinois

This bankruptcy case is but the latest in a series of cases that date back to 2002. In 2002,

the Debtor, and some co-plaintiffs, filed a lawsuit against Wellness International Network, LTD

and its directors (collectively "WIN"). WIN was a producer of health and wellness supplies; it

had an agreement with the Debtor for the Debtor to be WIN's distributor. When the relationship

soured, the Debtor filed a lawsuit in the District Court for the Northern District of Illinois

alleging that WIN was actually involved in an illegal pyramid scheme, violations of the

Racketeer Influenced and Corrupt Organizations Act, federal securities law, violations of the

Illinois Consumer Fraud Act, and criminal violations that allegedly voided the contracts as a

matter of public policy. *See Sharif v. Wellness Intern. Network, Ltd.*, 376 F.3d 720, 722 (7th Cir.

2004).[2]

WIN filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and under 28 U.S.C. § 1406(a), alleging improper venue. *Id.* at 723. After two extensions for the Debtor and his co-plaintiffs, the motions were fully briefed and ready for ruling. Before ruling, the case was transferred to Judge Der-Yeghiayan, who set an initial status date for October 20, 2003. Only a docket entry reflects the status date and it is not clear whether the plaintiffs' counsel had notice of this as none of the plaintiffs' attorneys appeared that day.

On October 20, 2003, WIN also brought a motion to compel arbitration. On October 23, 2003, the court held a hearing on the motion where attorneys for all parties were present. The court found that the motion to compel arbitration was "superfluous" because WIN's motion to dismiss already discussed both venue and the arbitration clause. The court ruled that it would deny the motion not on the merits but due to the pending motion to dismiss. *See id.* WIN appealed that ruling. WIN then moved to stay the proceedings pending appeal. The motion was fully briefed but at the next status date counsel for the plaintiffs failed to appear. Days later, the court dismissed the case without prejudice for want of prosecution. After the court denied two motions to vacate, the plaintiffs ultimately appealed as well. *See id.* On appeal, the Seventh Circuit vacated the dismissal order and reversed the denial of WIN's motion to compel arbitration. *Id.* at 727.

On remand, the court divided the plaintiffs' claims into two categories. The first category contained seven claims which the parties agreed were subject to the arbitration clause. The court granted WIN's motion to compel arbitration as to those claims. The second category contained claims which WIN claimed were subject to a forum selection clause indicating that the

---

[2]

It should be noted that in March of 2003, with a case already pending, the same group of plaintiffs filed another lawsuit against WIN which alleged essentially the same claims. *See Sharif,* 376 F.3d at 723 (describing the new suit, styled as a class action, as *Budner v. Murnighan,* No. 03 C 2100 (N.D. Ill.)). That case proceeded to arbitration and was not the subject of the Seventh Circuit's opinion.

federal and state courts in Dallas County, Texas were the correct forum. The court agreed and dismissed those claims. *See Sharif v. Wellness Int'l Network, Ltd.*, No. 02 C 3047, 2004 WL 3119025, at *3 (N.D. Ill. Dec. 2, 2004) *aff'd sub nom. Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006).

## 2. Northern District of Texas

On July 8, 2005, about half a year after the Northern District of Illinois case was dismissed, the Debtor filed a new case against WIN in the United States District Court for the Northern District of Texas. Adv. 09-00770, Dkt. 10, p. 2 (Amended Complaint Objecting to Discharge). The Debtor, as agent for Soad Watter, and his co-plaintiffs, which now included Haifa Kaj and Ragda Sharifeh, brought the suit asserting fraud, RICO violations, and claiming damages of nearly $1 million. *Id.* The Debtor and his co-plaintiffs did not conduct any discovery in that action and did not cooperate with WIN's efforts to obtain discovery. *Id.* The Debtor and his co-plaintiffs did not serve initial disclosures and failed to respond to written discovery. *Id.* The Debtor and his co-plaintiffs had admissions deemed against them for failure to respond to discovery requests. WIN subsequently moved for summary judgment on the grounds that the admissions negated all claims asserted; the Debtor and his co-plaintiffs failed to introduce any evidence in support of the claims. *Id.* The district court granted summary judgment on those grounds. *Id.*

The Debtor and his co-plaintiffs appealed the entry of summary judgment to the Fifth Circuit in 2007. *Id.* The Fifth Circuit affirmed all of the district court's rulings and noted:

A review of the record on appeal demonstrates that *Appellants' untimely performance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of non-performance or insubstantial performance and compliance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to*

5

*prolong this contumacious litigation for purposes of harassment or delay, or both.* The time is long overdue to terminate Appellants' feckless litigation at the obvious cost of time and money to the Defendants by affirming all rulings of the district court but remanding the case to that court for the reinstatement of its consideration of Appellees' motion for attorney's fees. In so doing, we caution Appellants that any further efforts to prolong or continue proceedings in this court, including the filing of petitions for rehearing, will potentially expose them to the full panoply of penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Sharif v. Wellness Int'l Network, Ltd,* 273 F. App'x 316, 317 (5th Cir. 2008) (emphasis added). On remand the district court awarded WIN's attorneys' fees in the amount of $655,596.13 as a sanction against the Debtor and his co-plaintiffs. *See Sharif v. Wellness Int'l Network, Ltd,* No. CIV.A.3:05-CV-01367-B, 2008 WL 2885186, at *4 (N.D. Tex. July 22, 2008).

WIN subsequently served the Debtor with post-judgment discovery and document requests. Adv. 09-00770, Dkt. 10, p. 3. The Debtor did not comply with the discovery request and did not tender responsive documents. *Id.* WIN filed a motion to compel post-judgment discovery on October 13, 2008. On November 19, 2008, the District Court for the Northern District of Texas ordered the Debtor to respond to outstanding discovery. *Id.* at pp. 3-4. Despite the orders compelling the Debtor to comply with discovery requests, the Debtor did not respond to the requests nor did he appear for a deposition. *Id.*

On December 4, 2008, WIN filed a motion for civil contempt against the Debtor for violating the district court's order on the motion to compel. *Id.* At a show cause hearing on January 13, 2009, at which the Debtor did not appear, the district court found clear and convincing evidence that the Debtor had violated several court orders compelling him to comply with outstanding discovery requests and the order to appear at the January 13, 2009 show cause

6

hearing. *Id.* at p. 3. On February 10, 2009, the district court held the Debtor in civil contempt for his discovery violations and ordered him to respond to post-judgment discovery and reimburse his opponents for attorneys' fees and costs incurred to prepare and file the motion to compel and the motion for civil contempt. *Id.* at pp. 3-5. On February 24, 2009, two weeks after the Northern District of Texas's contempt finding, the Debtor filed the instant bankruptcy case.

### B. Bankruptcy Case

Following the bankruptcy filing, there have been a series of adversary proceedings and contested matters filed. The relevant proceedings are outlined below.

### 1. *Wellness International Network Ltd. a/k/a WIN et al v. Sharif*, 09-A-00770

On August 24, 2009, WIN filed a five-count adversary complaint against the Debtor. Count I of the adversary complaint alleges that the Debtor "has continuously concealed property that he owns by holding such property in the name of the Soad Wattar Living Trust ("Soad Wattar Trust") with improper intent to deceive" in violation of 11 U.S.C. § 727(a)(2). Adv. 09 - 00770, Dkt. 10, Amended Complaint ¶ 19. WIN also asserted that the Debtor was the trustee of the Soad Wattar Trust, exercised complete control over the Trust and held out the assets in the Trust as his own.

Count II alleged that the Debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" in violation of 11 U.S.C. § 727(a)(3). *Id.* at ¶ 22.

Count III alleged that the Debtor knowingly and fraudulently made a false oath or account in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A). Specifically, WIN contended that the Debtor failed to disclose companies in which he was an officer within the past six years despite the fact that part of Debtor's bankruptcy petition required the Debtor to list all businesses in which the Debtor was an officer, director, partner or managing

7

executive. The Debtor did not list any businesses. *See* Bankr. 09-05868, Dkt. 1, p. 29, ¶ 18.[3]

WIN asserted that the Debtor was or had been an officer of Logan Square MRI and Diagnostic

Center, Inc. ("Logan Square"), Allied Medical Management, Inc., and Logan Square Surgery

Center, Ltd.

Count IV alleged that the Debtor failed to explain the loss of $5 Million in assets that he

claimed to own in a 2002 Washington Mutual Bank, N.A. Loan Application (the "Loan

Application") in violation of 11 U.S.C. § 727(a)(5). The assets listed in the Loan Application

included the following: (1) Logan Square, (2) Sharif Pharmacy, (3) Hermosa Medical Center, (4)

three Banco Popular Accounts containing $90,000, $40,000 and $50,000, (5) $1,400,000 in a

401(k) retirement fund, and (6) $1,400,000 in real estate (collectively, the "Loan Application

assets"). *See* Adv. 09-00770, Dkt. 38, Ex. 1 (Master Loan Application, pp. WM 0840-0842).[4]

Although the Debtor claimed that he did not own any of the property that he once claimed to

own in the Loan Application, he failed to explain its loss or disposition.

Count V sought a declaratory judgment that the Soad Wattar Trust was the alter ego of

the Debtor because he exercised complete control over the Trust. WIN asserted that there was a

unity of interest and identity between the Debtor and the Trust, that they were not separate, and

that continuing to recognize the Debtor and the Trust as separate would promote injustice.

Count V, the Soad Wattar Trust, and the Trust's assets have been, and continue to be, the subject

of much litigation.

On April 15, 2010, WIN filed a Motion for Sanctions, Costs and Fees, and in the

---

[3]

Bankr. 09-05868, Dkt. 1 contains both the Debtor's Voluntary Chapter 7 Bankruptcy Petition and the Debtor's Statement of Financial Affairs. These shall be referred to as the "Petition" and "SOFA," respectively. This particular information is located on paragraph 18 of the Debtor's SOFA.

[4]

Adv. 09-00770, Dkt. 38 is WIN's Motion for Sanctions. Attached to the motion is a copy of the Washington Mutual Bank Master Loan Application. The Court will refer to this attachment as the "Loan Application" and will cite to the 'WM' pagination found at the bottom of the right hand corner of the exhibit. Additionally, many of the documents referred to in the Background section of this Opinion have been presented to the Court, over time, as exhibits at various hearings. Where possible, the Court has done its best to cite to places on the Court's docket where these documents can be found.

alternative, a Motion to Compel, Motion for Costs and Fees, and Motion to Modify Scheduling Order. Adv. 09-00770, Dkt. 38 (hereinafter the "Sanctions Motion"). The Court held a hearing on the Sanctions Motion on April 21, 2010. WIN argued that the Debtor had failed to comply with discovery requests and missed discovery deadlines for document production and responding to interrogatories. This Court entered an order on April 21, 2010 compelling the Debtor to comply with all outstanding discovery by April 28, 2010 or else an order of default would be entered against him. Adv. 09-00770, Dkt. 48. The hearing on the Sanctions Motion was continued to April 28, 2010.

On April 28, 2010, WIN noted that the Debtor had produced some documents along with certain interrogatory responses on the afternoon of April 27, 2010. *See* Adv. 09-00770, Dkt. 99, May 24, 2010 Transcript of Sanctions Hearing, p. 4 (the "Hearing Transcript"). This Court continued the hearing to May 24, 2010 to allow WIN time to assess whether the Debtor's document production and discovery responses were in compliance with the April 21, 2010 order compelling the Debtor to comply with all outstanding discovery.

### a. Debtor's Discovery Violations

At the hearing on May 24, 2010, WIN argued that the Debtor had not fully complied with discovery requests and should be sanctioned. The Debtor's specific discovery violations include:

### i. Failure to Sign or Verify Interrogatory Responses

Federal Rule of Civil Procedure 33(b), applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7033, requires in pertinent part:

(1) Responding Party. The interrogatories must be answered:

(A) by the party to whom they are directed; or

(B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must

9

furnish the information available to the party.

\* \* \*

(3) Answering Each Interrogatory. Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

\* \* \*

(5) Signature. The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed. R. Civ. P. 33(b)(1), (3) & (5) (made applicable by Fed. R. Bankr. P. 7033). The Seventh Circuit Court of Appeals and the United States District Court for the Northern District of Illinois have determined that under Rule 33, answers to interrogatories must be verified and signed by the person answering the interrogatory, not only by the party's attorney. *See, e.g., Hindmon v. Natl.-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 619 (7th Cir. 1982) (observing that interrogatory answers signed by an attorney and not the party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); *accord Overton v. City of Harvey*, 29 F.Supp.2d 894, 901 (N.D. Ill. 1998) (striking as summary judgment exhibit plaintiff's unverified answers to interrogatories signed only by attorney).

The Debtor's interrogatory responses as trustee of the Soad Wattar Trust were signed by Debtor and Debtor's attorney but did not contain a statement verifying the interrogatory answers. *See* Hearing Transcript, p. 6; Richard Sharif's Answers to Interrogatories as Trustee of the Soad Wattar Revocable Living Trust, Hearing Ex. No. 3, p. 9 ("Sharif Trustee Interrog. Answers"). Similarly, the Debtor's individual interrogatory responses were signed by Debtor's attorney but did not contain a statement verifying the interrogatory answers. *See* Hearing Transcript, p. 6; Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, Hearing Ex. No. 4, p. 9 ("Sharif Individual Interrog. Answers"). They should have been signed by the Debtor under oath.

10

The Debtor was not present at the hearing and his attorney did not explain why the interrogatory responses were not signed as required by the Federal Rules.

## ii. Failure to Provide Washington Mutual Loan Application and Related Documents

During the Debtor's initial Section 341 meeting on March 25, 2009, WIN and the Trustee asked the Debtor to provide documents relating to the Loan Application wherein the Debtor asserted that he owned various assets. The assets listed in the Loan Application include the following: (1) Logan Square MRI and Diagnostic Center, Inc.; (2) Sharif Pharmacy; (3) Hermosa Medical Center; (4) three Banco Popular Accounts containing $90,000, $40,000 and $50,000; (5) $1,400,000 in a retirement fund 401(k) account and (6) $1,400,000 in real estate. *See* Loan Application pp. WM 0840-0841. The Section 341 meeting was continued to April 21, 2009 to allow the Debtor additional time to gather the documents. *See* Sanctions Motion, p. 5. When the Debtor appeared at the continued Section 341 meeting he did not provide the U.S. Trustee or WIN with the requested documents, and instead alleged that none of the Loan Application assets belonged to him. *Id.* The Debtor asserted that the Soad Wattar Trust owned all of the Loan Application assets, that the Debtor was the trustee of the Trust, and that the Debtor had lied when he represented that he owned the assets listed in the Loan Application. *Id.* At his Rule 2004 examination the Debtor confirmed under oath that he testified at the Section 341 meeting that he lied in the Loan Application.

> Q: The third sentence [of Debtor's answer to the Amended Adversary Complaint states], defendant testified at the 341 meeting that he lied on the loan application, that he did not own any of the real estate listed in the loan application, and that this property is owned by Soad Wattar Trust, his mother or sister. Do you see that statement? I'd be glad to orient you if you --
>
> A: Yeah. Is that by the Answer, defendant admits?
>
> Q: Uh huh.

11

A: Yeah. That on April '09 – okay.

Q: Is that a true statement?

A: Yes, yeah.

Adv. 09-00770, Dkt. 59, pp. 60-61.[5] Based upon the Debtor's assertion that the Trust owned the assets listed in the Loan Application, WIN and the Trustee requested documents relating to the formation and funding of the Soad Wattar Trust and documents evidencing ownership or transfer of the Loan Application assets. *See* Sanctions Motion, p. 5. The Section 341 meeting was continued again to June 3, 2009 to give the Debtor time to provide the requested documents. At the June 3, 2009 Section 341 meeting the Debtor again failed to provide any of the requested documents. Sanctions Motion, p. 5.

Subsequent to the Debtor's refusal to provide the documents requested at his second and third Section 341 meetings, the Debtor brought a Motion for Protective Order requesting that he be granted leave to tender documents relating to the Loan Application and the Soad Wattar Trust under a protective order to prevent disclosure of information to the Debtor's creditors and creditors' attorneys. *See* Bankr. 09-05868, Dkt. 23. The Debtor's Motion for Protective Order was denied on June 11, 2009. *See* Bankr. 09-05868, Dkt. 25. Despite this Court's denial of Debtor's Motion for Protective Order, the Debtor never tendered any documents relating to the Loan Application, prompting the Trustee to file a Motion for Turnover of Documents from Richard Sharif to Horace Fox, Jr. ("Trustee's Motion") on October 20, 2009. *See* Bankr. 09-05868, Dkt. 40. This Court granted the Trustee's Motion on October 27, 2009. *See* Bankr. 09-05868, Dkt. 42. The Debtor, however, never complied with the Order to turn over the documents. *See* Sanctions Motion, p. 6.

WIN served the Debtor with production requests requiring the Debtor to provide

---

5

Adv. 09-00770, Dkt. 59 is a supplemental filing by WIN and contains the transcript of the May 13, 2010 Rule 2004 Examination of Richard Sharif (hereinafter "Transcript of Debtor's Rule 2004 Examination").

documents relating to each of the Loan Application assets. *See* Richard Sharif's Response to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 1, ¶¶ 15-22 ("Sharif Production Responses"). The Debtor failed to produce any documents relating to the Loan Application assets.

### iii. Failure to Produce Richard Sharif Revocable Trust Related Documents

WIN asserted that the Debtor failed to disclose all requested information and documents relating to the Richard Sharif Revocable Trust despite interrogatory and production requests requiring him to do so.

The Debtor listed the Richard Sharif Revocable Trust in his Petition as property owned by another person that he controlled. *See* SOFA, ¶ 14. Based on this disclosure, WIN's interrogatories required the Debtor to identify each trust for the benefit of others that the Debtor had created or contributed to in the last five years. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, Hearing Ex. No. 4, p. 8, ¶ 11; Richard Sharif's Response as Trustee to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 2, p. 2, ¶ 11 ("Sharif Trustee Production Responses"). The Debtor responded "none" to the interrogatory, which is wholly inconsistent with his sworn bankruptcy schedules which list the Richard Sharif Revocable Trust on page 27. *See* Sharif Individual Interrog. Answers, p. 8, ¶ 11; Hearing Transcript, p. 9; SOFA ¶ 14.

WIN also asked that the Debtor produce all documents referencing or evidencing any assets held in trust to which the Debtor has a claim or interest. Sharif Production Responses, ¶ 42; Sharif Trustee Production Responses, ¶ 42. Again, despite Debtor's acknowledgment of having an interest in the Richard Sharif Revocable Trust (*See* SOFA, ¶ 14), he failed to produce any documents relating to that trust. Hearing Transcript, pp. 9-11.

### iv. Failure to Produce Bank Statements and Financial Records

WIN asserted that the Debtor failed to produce bank statements and records relating to

13

financial transactions involving the Debtor individually and the Soad Wattar Trust. WIN asked

the Debtor to produce documents evidencing any account at a financial institution in which the

Debtor was a designated signatory. Sharif Trustee Production Responses, p. 7, ¶ 44; Sharif

Production Responses, pp. 7-8, ¶ 44. The Debtor failed to produce any documents responsive to

these requests and instead listed the names and addresses of three financial institutions with

corresponding account numbers. *See* Sharif Production Responses, p. 7, ¶ 44; Sharif Trustee

Production Responses, p. 7, ¶ 44; Hearing Transcript, p. 11.

WIN also asked the Debtor to produce documents relating to any checking, savings,

money market, passbook, demand deposit, negotiable order of withdrawal or trust account in

which the Debtor had an interest. Sharif Trustee Production Responses, p. 8, ¶ 49; Sharif

Production Responses, p. 8, ¶ 49. The Debtor failed to produce any documents responsive to this

request, even though he had a personal account at JP Morgan Chase Bank; he acknowledged his

lack of compliance during his Rule 2004 examination. Transcript of Debtor's 2004

Examination, p. 166. Instead, the Debtor responded to the requests by stating that any such

documents were available at JP Morgan Chase Bank and provided account numbers. Sharif

Trustee Production Responses, p. 8, ¶ 49; Hearing Transcript, pp. 11-12.

During their investigation, WIN independently discovered numerous documents that the

Debtor failed to produce relating to assets held at AG Edwards in which the Debtor had an

interest. They discovered account statements from AG Edwards for September to October of

2003 in the name of Soad Wattar, the Debtor's mother, and Richard Sharif as joint tenants. A.G.

Edwards & Sons, Inc. Account Statements, Ex. No. 61 to Rule 2004 Examination of Debtor

("AG Statements"). The account statements revealed that approximately $752,050 in assets

were held by AG Edwards in the joint tenancy of Soad Wattar and Richard Sharif. *See* AG

Edward Statements. At his Rule 2004 examination the Debtor admitted that while he had

documents relating to this AG Edwards account, he did not produce them. Transcript of

14

Debtor's Rule 2004 Examination, pp. 172-173. The Debtor also stated that the assets in the AG Edwards account were transferred to Wachovia Bank, but the Debtor failed to produce any transfer documents. Transcript of Debtor's Rule 2004 Examination, p. 174. The Debtor also failed to disclose the AG Edwards accounts in his bankruptcy petition. The Debtor failed to produce information or documentation regarding the AG Edwards account or its disposition despite interrogatories and requests for production requiring him to produce all documents evidencing any interest he had in any account after 2002 along with all documents showing the disposition or transfer of such accounts after 2002. *See* Sharif Trustee Production Responses, p. 8, ¶ 49; Sharif Individual Interrog. Answers, nos. 6-7; Hearing Transcript, pp.16-18.

WIN also discovered a variable annuity held at AG Edwards for the benefit of the Debtor and his sister, Ragda Sharifeh, as joint tenants. They also found an AG Edwards statement showing the TransAmerica Triple Advantage VA with a valuation of $39,248. AG Statements, pp. AGE 0180-0181. Once again, the Debtor failed to provide information or produce documentation relating to this annuity despite receiving interrogatories and document requests requiring him to do so. Hearing Transcript, p. 22. At his Rule 2004 examination the Debtor was unable to say where the $39,248 was. Transcript of Debtor's Rule 2004 Examination, pp. 178-179.

WIN estimated that approximately $912,000 in assets were held at AG Edwards for the benefit of the Debtor individually or jointly with his mother and his sister, yet the Debtor provided no information or documentation regarding those accounts. Hearing Transcript, p. 24.

The Debtor also failed to provide any information or documentation evidencing other accounts that he admitted to having an interest in at his Rule 2004 Examination. Hearing Transcript, pp. 26-31. The Debtor admitted to holding the following accounts but produced no documentation or information about the accounts in response to discovery requests: Soad Wattar Living Trust account at Banco Popular; account at Raymond Jones; and a checking account at JP

15

Morgan Chase Bank. During his Rule 2004 examination, the Debtor admitted his failure to produce the requested documents:

1)   Q: Sir, I'm just asking. You have not given me one single account statement for the trust [at Banco Popular], have you?

A: Account statement?

Q: Yes.

A: You mean, from like the investment firm?

Q: Yes.

A: There are boxes available. These are, you know --

Q: You have not provided us a single account statement, have you?

A: I did not. Again, I did not know that you needed that one. If not, it's available.

2)   Q: Where are there accounts besides Banco Popular?

A: Banco Popular, absolutely, and whatever you need from Wells Fargo, I'll provide you with it.

Q: I'm just asking for the names of the companies – Wells Fargo and who else?

A: Wells Fargo, Wachovia, which is now Wells Fargo, has a mortgage payment for the house because it comes out of the mother's living trust every month. This is two – three. What else?

Q: Any investment firms like Smith Barney or Morgan Stanley? I'm just throwing out people that I can think of.

A: There is one she [Debtor's mother] has an account with Raymond James, since 2005, one account. I just remembered this. I believe that's all I know right now.

16

3)   Q: I'm asking why have you not produced to me the JP Morgan Chase
     account statements as requested in discovery?

     A: Counsel, I did list the only account that I have. I'm sorry if I didn't
     produce the statement available. I know there's a question, Counselor,
     that I need to reproduce because my lawyer would have told me to
     produce it. I went by the name of the bank and my account but –

Transcript of Debtor's 2004 Examination, pp. 107-109; 143-144. WIN argued that even though
the Debtor stated during the Rule 2004 Examination that he could produce documents relating to
the undisclosed accounts, as shown above, the Debtor was grossly out of compliance with his
discovery obligations despite the April 21, 2010 Order compelling him to comply with all
outstanding discovery requests.

**v. Failure to Produce Conveyance, Disposal, or Transfer of Asset Documents**

WIN asserted, and the Debtor's answers to interrogatories show, that the Debtor failed to
provide information relating to the conveyance, disposal, or transfer of certain assets in which
the Debtor once claimed an interest. *See* Sharif Individual Interrog. Answers and Sharif Trustee
Interrog. Answers, pp. 6-7, ¶¶ 6-8. At his Rule 2004 examination the Debtor admitted that he
had once owned a 10% interest in the Logan Square business and had relinquished such interest.
*See* Transcript of Debtor's Rule 2004 Examination, p. 95. However, the Debtor never provided
any information or documentation evidencing the disposition of his interest in Logan Square; he
admitted the same at the Rule 2004 examination despite having received WIN's interrogatories
and requests for production inquiring about the disposition of his interest in Logan Square. *See*
Transcript of Debtor's Rule 2004 Examination, p. 96; Sharif Individual Interrog. Answers, p. 7,
¶¶ 6-8.

At his 2004 examination the Debtor denied ever having an ownership interest in Sharif
Pharmacy. Transcript of Debtor's Rule 2004 Examination, p. 61. However, he produced a

17

2002 federal income tax return which stated that he owned 100% of Sharif Pharmacy. *See* Transcript of Debtor's Rule 2004 Examination, p. 68. After the Debtor was confronted with the inconsistency between his testimony and his 2002 federal income tax return he stated that he does not examine his tax returns, his accountant does and he does not understand them. *Id.* at 69. The Debtor admitted having a 10% ownership interest in the Sharif Pharmacy and that the 100% ownership interest listed in his tax return was an error. *Id.* at 68. Whether the Debtor's ownership interest in Sharif Pharmacy was 10% or 100%, he produced no documentation evidencing the transfer of his interest in the pharmacy and acknowledged his failure to comply during the Rule 2004 examination. *See* Transcript of Debtor's Rule 2004 Examination, p. 72. The Debtor also admitted that he asked Sharif Pharmacy's office manager for responsive documents but did not undertake any efforts to obtain the documents. *Id.* at 87.

### vi. Failure to Produce Corporate Records

WIN asserted that the Debtor failed to produce corporate records for Sharif Pharmacy and the Hermosa Medical Center after 2006. Their discovery requests sought production of corporate records for Sharif Pharmacy and Hermosa Medical Center. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2, ¶¶ 7-8; Sharif Production Responses, Hearing Ex. No. 1, ¶¶ 7-8. The Debtor never produced the requested documents even after entry of the April 21, 2010 Order compelling him to comply with all outstanding discovery requests. Hearing Transcript, pp. 34-36.

### vii. Failure to Produce Documents Evidencing the Formation and Funding of the Soad Wattar Trust

WIN asserted that the Debtor failed to produce documents relating to the formation and funding of the Soad Wattar Trust. Hearing Transcript, p. 38. They argued that those documents were critical because nearly everything the Debtor owned was in the Soad Wattar Trust.

The requests for production required the Debtor to produce documents establishing and

18

funding the Soad Wattar Trust, evidencing the transfer of assets into the Trust, and all other documents related to assets held in the Trust. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2, ¶¶ 27, 45-46, 49-50; Hearing Transcript, pp. 38-41. WIN specifically requested all deeds, records, titles, or other documents that related to assets in the name of the Soad Wattar Trust after 2002. The Debtor alleged that the Trust was funded with a $2,000,000 inheritance from his deceased father that came from an international wire transfer from Beirut, Lebanon through a financial entity in Dubai. Transcript of Debtor's Rule 2004 Examination, p. 109. However, the Debtor also admitted that he did not have any of the documents evidencing the wire transfers in his possession and that he had not produced such documents. Transcript of Debtor's Rule 2004 Examination, pp. 110-111. The Debtor also admitted that except for one asset, the Revere house, he failed to produce any documents evidencing transfers of assets into the Soad Wattar Trust since 1992. *Id.* at 104-105. In summary, Debtor failed to produce documentation of the origin of the money and property in the Soad Wattar Trust.

WIN also requested the 1992 trust instrument that purportedly established the Soad Wattar Trust. Sharif's Trustee Responses at ¶ 11 concern amendments to the Soad Wattar Trust and not the original document that established the Trust. Debtor admitted in his Rule 2004 examination that he failed to produce the original trust instrument. Transcript of Debtor's Rule 2004 Examination, p. 101.

**viii. Failure to Produce Signed Tax Returns and Documents Used to Prepare Debtor's Tax Returns**

WIN argued that the Debtor failed to produce signed tax returns or any of the underlying source documents used to prepare tax returns. Hearing Transcript, p. 44. While they received some federal and state tax returns from 2003-2008 from the Debtor, not one of the tax returns received was signed. *See* Hearing Transcript, p. 44; Sharif Production Responses, ¶ 10; Sharif Trustee Production Responses, ¶ 10. When the Debtor was questioned about the unsigned tax

19

returns at his Rule 2004 examination, he stated that he was 100% sure that the tax returns that went to the government were signed, but he never produced signed tax returns. *See* Transcript of Debtor's Rule 2004 Examination, pp. 130-131. The Debtor also stated that he did not attempt to obtain signed tax returns from the IRS. *Id.* at 130.

The Debtor also failed to produce the source documents used to prepare his tax returns; he admitted this at his Rule 2004 examination. *Id.* at 135.

### ix. Failure to Produce Documents Evidencing Debts Owed to Debtor's Family Members

WIN argued that the Debtor failed to produce any documents underlying the debts that he owed to his family members. *See* Sharif Production Responses and Sharif Trustee Production Responses at ¶¶ 34-37; Hearing Transcript, p. 54. The Debtor's bankruptcy petition listed several debts owed to his relatives: (1) $49,000 to Haifa Kaj, the Debtor's sister; (2) $39,000 to Jamal Sharif, the Debtor's brother; (3) $93,000 to Ragda Sharifeh, the Debtor's sister; and (4) $90,000 to Soad Wattar, the Debtor's mother. *See* Petition, Schedule F, p. 17; Hearing Transcript, p. 55. Based on these disclosures, WIN requested that the Debtor produce documents referencing or evidencing the debts owed to the above family members. *See* Sharif Production Responses, Hearing Ex. No. 1 at ¶¶ 34-37; Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 34-37. The Debtor failed to produce any documents evidencing the amounts he owed to his relatives and asserted that those debts were created via oral agreements. *See* Sharif Production Responses, ¶¶ 34-37; Hearing Transcript, p. 56. WIN contended, and the Court agreed, that it is hard to believe that $271,000 was transferred as loans to the Debtor when no documents such as wire transfer forms, bank statements, canceled checks, emails, enclosure letters, etc. were created in doing so.

### b. The Debtor's Response

In response to the assertions regarding the Debtor's non-compliance, his attorney argued that while there may have been some deficiencies in his discovery responses, the Debtor made a

good faith effort to comply with all of the discovery requests. Hearing Transcript, pp. 75-76.
His attorney pointed out that the Debtor was initially unable to meet the discovery deadlines
because he was in Syria attending to his ill mother who subsequently passed away. Hearing
Transcript, p. 68. When the Court requested proof of the Debtor's whereabouts, his attorney
produced airline tickets to Syria and a copy of the mother's death certificates. *Id.* This Court,
however, did not believe that the Debtor made a serious effort to comply with the discovery
requests before or after his mother's death.

The Debtor's attorney argued that WIN's counsel did not call him to object to the
sufficiency of the discovery responses before filing the motion for sanctions. Hearing
Transcript, pp. 68-69. The Debtor's attorney also asserted that the supplement to the Sanctions
Motion did not contain the proper certification required by Northern District of Illinois Local
Rule 37.2 that the movant consulted with opposing counsel regarding the discovery defects
before filing a motion pursuant to Federal Rule of Civil Procedure 26. Hearing Transcript, pp.
77-78. The Court noted that a phone call would have been futile because the Debtor was so
grossly out of compliance with his discovery obligations. The Court also noted that the Original
Sanctions Motion included the required certification. *See* Sanctions Motion, p. 12.

The Debtor's attorney contended that he produced some documents after the Debtor's
Rule 2004 examination. He argued that he surmised at the Debtor's Rule 2004 examination that
WIN wanted more documents than they had received based on the questions that were posed to
the Debtor. The Debtor's attorney took it upon himself to produce bank statements from several
financial institutions relating to the Soad Wattar Trust, the Debtor's personal bank accounts and
the Sharif Pharmacy. Hearing Transcript, pp. 70-71. Debtor's attorney did not specify which
documents were produced after the Rule 2004 examination so it was unclear what was contained
in the late production, whether the documents were responsive to the requests, and why they
were not produced sooner. The Court noted that the Debtor's Rule 2004 examination took place

21

on May 13, 2010, so any documents produced after that were well outside of the April 28, 2010 deadline the Court gave the Debtor to complete all outstanding discovery and prevented WIN from questioning the Debtor about them at the Rule 2004 examination.

### c. Entry of Default Judgment

Based on the aforementioned discovery violations, the Court found that it was apparent that the Debtor failed to comply with most of the discovery requests. Moreover, the Court found that the Debtor's disclosures were inadequate given the order compelling the Debtor to comply with all outstanding discovery by April 28, 2010. At no time did the Debtor contend that he needed more time to comply with discovery requests. The Debtor's lack of compliance evidenced a pattern that continued from the time of the underlying litigation in Texas.

As a sanction for the Debtor's failure to comply with discovery requests, this Court entered a default judgment against the Debtor and in favor of WIN. Judgment was entered in favor of WIN on all counts of the amended adversary complaint.

On Count I the Court found that the Debtor, with the intent to hinder, delay, or defraud WIN, transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the filing of the petition in violation of 11 U.S.C. § 727(a)(2). Specifically, the Debtor failed to produce any documents regarding the assets in the Loan Application, which the Debtor once claimed to own, or what property was transferred into the Soad Wattar Trust. In addition, the Debtor failed to produce any documents evidencing the formation or funding of the Soad Wattar Trust, or the disposition of the $5 Million in assets listed in the Loan Application. The Court found that the Debtor transferred, removed, destroyed, mutilated, or concealed the documents with the intent to hinder or delay WIN from discovering assets that could be used to satisfy the judgment entered in its favor by the Texas District Court.

On Count II the Court found that the Debtor concealed, destroyed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers,

22

from which his financial condition or business transactions might be ascertained in violation of 11 U.S.C. § 727(a)(3). Specifically, the Debtor failed to produce any documents showing how his financial condition changed from when he claimed to own the Loan Application assets.

On Count III the Court found that the Debtor knowingly and fraudulently made a false oath in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A). Specifically, the Debtor omitted material information from his bankruptcy schedules including the companies in which he was an officer within six years of the petition date.

On Count IV the Court found that the Debtor failed to satisfactorily explain the loss of the assets listed in the Loan Application in violation of 11 U.S.C. § 727(a)(5).

On Count V the Court entered a declaratory judgment and found that the Soad Wattar Trust was the alter ego of the Debtor-Defendant Richard Sharif because he treated its assets as his own property and it would be unjust to allow him to maintain the Trust as a separate entity.

The Debtor was directed to reimburse WIN for attorneys' fees incurred to file and prosecute the Sanctions Motion and the supplemental sanctions motion filed after the Debtor's Rule 2004 Examination. The Debtor was directed to reimburse WIN for costs incurred in obtaining the Debtor's Rule 2004 examination, including court reporter and videographer costs.

WIN was allowed to submit an affidavit setting forth the attorneys' fees and costs associated with pursuing the Sanctions Motion and its supplement.

The default judgment order was entered on July 6, 2010 and provided that:

1. Richard Sharif was prohibited from opposing the claims in adversary proceeding 09 A 00770;

2. Richard Sharif's answer to the Amended Complaint was stricken;

3. Default was entered in favor of the Wellness Parties and against Richard Sharif on Counts I through V of the Amended Complaint in Adv. 09 A 00770; and

4. Richard Sharif was denied a discharge pursuant to 11 U.S.C. § 727(a)(2)-(a)(6).

23

Adv. 09-00770, Dkt. 68 (hereinafter the "July 6, 2010 Order"). Importantly for this proceeding, the order provided that the Soad Wattar Trust was the Debtor's alter ego, and thereby made its assets property of the Debtor's bankruptcy estate. The Debtor appealed this decision.

Prior to entry of the default judgment, Ragda Sharifeh filed an appearance in the adversary proceeding. Adv. 09-00770, Dkt. 43. However, her sole participation in that adversary proceeding was limited to responding to a motion seeking to hold her in contempt for failing to respond to a subpoena and her own motion for Rule 9011 sanctions for having to defend against the motion for contempt. Adv. 09-00770, Dkt. 42; Dkt. 56.

### 2. Motion of the Trustee for Turnover of Property of the Estate

Following entry of the July 6, 2010 Order, the Trustee brought a motion for turnover of assets pursuant to §§ 521 and 542 of the Bankruptcy Code. Bankr. 09-05868, Dkt. 59. The motion requested that the Court order the Debtor to account for and turnover the following as they relate to the Debtor, Soad Wattar, or the Soad Wattar Trust:

1) Life insurance policies issued by any Hartford insurance entity;

2) Wells Fargo or AG Edwards accounts;

3) Any other account with any financial institution; and

4) Any other assets that relate to the Soad Wattar Trust.

*Id.*

On August 5, 2010, the Court entered an order granting the Trustee's request for turnover. Bankr. 09-05868, Dkt. 63 (hereinafter the "August 5, 2010 Order"). Of note, the order also provided that:

The Debtor, Ragda Sharifeh, and Haifa Kaj are ordered to cease any act to exercise any control over property of the estate and shall not perform any conduct that amounts to exercising any control over property of the estate, including any control or distribution over any life insurance policies issued by any Hartford

24

insurance entity concerning or related to the Debtor or Soad Wattar or the Soad

Wattar Revocable Living Trust and any Wells Fargo/AG Edwards accounts

concerning or related to the Debtor or Soad Wattar or the Soad Wattar Recovable

Living Trust[.]

*Id.* at ¶ D. The order was not appealed but was the subject of a number of attempts to vacate which will be addressed herein.[6]

### 3. Petition to Intervene on Behalf of the S.W. Trust of 1992 and Ragda Sharifeh

On December 3, 2010, Ragda Sharifeh ("Ragda"), in her alleged capacity as the successor trustee and successor beneficiary of the Soad Wattar Trust, brought a motion in the main bankruptcy case to intervene in regards to the July 6, 2010 Order and the August 5, 2010 Order. Bankr. 09-05868, Dkt. 68. The motion made a number of allegations regarding both the Loan Application and the Soad Wattar Trust, as discussed in Adversary Proceeding 09-00770. Specifically:

> 1) That assets listed in the Loan Application were not the Debtor's property, but rather property which belonged to Ragda, Haifa Kaj, and the Soad Wattar Trust, and which she merely allowed the Debtor to claim as his own. *Id.* at ¶¶ 8-10.
>
> 2) That pursuant to an amendment dated October 8, 2007, Ragda became the successor beneficiary to the Soad Wattar Trust. *Id.* at ¶ 11.
>
> 3) That Ragda did not learn of the July 6, 2010 Order until July 28, 2010. *Id.* at ¶ 12.
>
> 4) That, on July 19, 2010, Ragda and Haifa Kaj brought a lawsuit in state court

---

[6] The Court notes that the August 5, 2010 Order was never appealed and stands as a final order requiring the turnover of Soad Wattar Trust assets to the Trustee as said Trust assets are property of the Debtor's bankruptcy estate. By failing to timely appeal the August 5, 2010 Order, the parties have forfeited their right to do so. *See U.S. v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right[.]"); Fed. R. Bankr. P. 8002(a) ([a] notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed.").

seeking declaratory judgement and injunctive relief regarding the Soad Wattar Trust.[7]  On July 21, 2010, the Circuit Court of Cook County entered a temporary restraining order prohibiting the Debtor from distributing assets of the trust to his creditors.   Shortly thereafter, the Debtor resigned as trustee for the trust and Ragda became the successor trustee.  *Id.* at ¶¶ 13-14.

5) And the many attempts made by Ragda, between July 21, 2010 and August 4, 2010 to gain access to the Soad Wattar Trust assets.  *Id.* at ¶¶ 15-19.

The motion was fully briefed.  Bankr. 09-05868, Dkts. 68, 82, 84.  On March 9, 2011, this Court ruled on the motion.  Bankr. 09-05868, Dkt. 93.  On March 10, 2011, the Court amended its earlier ruling. Bankr. 09-05868, Dkt. 94 (hereinafter the "March 10, 2011 order").

The March 10, 2011 Order made a number of conclusions regarding the motion.  First, relying on Rule 24 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7024, the Court held that Ragda could not intervene at that time because she had failed to do so in a timely manner.  Specifically, the Court pointed out that she was listed as a creditor in the Debtor's Schedules and therefore should have known of the bankruptcy proceeding and subsequent adversary proceedings.  March 10, 2011 Order, p. 20.  Furthermore, she was subpoenaed in Adversary Proceeding 09-00770 and had her deposition taken.  *Id.* Moreover, she filed an appearance and two separate pleadings in the adversary proceeding.  *Id*; *see also* Adv. 09-00770, Dkts. 42, 43, 56 (Ragda's response to a motion for sanctions, appearance in the adversary proceeding, and motion for sanctions, respectively).  All this happened prior to the July 6, 2010 Order.  Seeking to intervene in that proceeding, five months after its close was far too late.

---

[7]  Ragda and Haifa Kaj sued the Debtor in state court after this court found that the Soad Wattar Trust was the Debtor's alter ego.  They sought, amongst other things, a declaration that Ragda was the successor beneficiary of the Trust, and an injunction requiring the Debtor to transfer all of the Trust's assets to Ragda and enjoining him from transferring assets of the Trust to any of his creditors who filed claims against him in the bankruptcy case.  *Ragda Sharifeh and Haifa Kaj v. Richard Sharif*, 10 CH 30432 (filed in the Circuit Court of Cook County, Illinois, Chancery Division).

Second, the Court found that Ragda's proposition that she was the successor beneficiary to the Soad Wattar Trust was unsupported. Even if it was, under the Illinois Trusts and Trustees Act, trustees, not beneficiaries, are vested with the power to pursue "claims in favor or against the trust estate." The trustee has the power to "compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." *In re Schneider*, 417 B.R. 907, 913 (Bankr. N.D. Ill. 2009); 760 ILCS 5/4.11. The trustee, not the beneficiaries, has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust. *Godfrey v. Kamin*, No. 99 C 3230, 2000 WL 1847768, \*\*3-4 (N.D. Ill. Dec. 14, 2000). Therefore, Ragda, as a beneficiary, had no standing to intervene.

Third, the Court also questioned if Ragda was in fact the "successor trustee." Ragda failed to produce any evidence that she was the successor trustee. Moreover, Ragda claimed to have become the successor trustee after July 21, 2010 when the Debtor "resigned" as trustee. However, as of July 6, 2010, the Trust no longer existed and the actions of both the Debtor and Ragrda were meaningless. Furthermore, "[i]t is well established that property of the Debtor in the possession, custody and control of [his] alter ego comprises property of the estate at the commencement of the case, and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy the debts of the Debtor." *In re Sklarin*, 69 B.R. 949, 954 (Bankr. S.D. Fla. 1987) (quoting *In re F&C Services, Inc.*, 44 B.R. 863, 868 (S.D. Fla. 1984)). The effect of the July 6, 2010 Order, therefore, made all of the Soad Wattar Trust assets property of the estate as of the filing of the bankruptcy case in February of 2009. Therefore, it was not clear what exactly Ragda became trustee of when she "succeeded" the Debtor as trustee.

Using the Court's discretion, the Court found that intervention, five months after the close of Adversary Proceeding 09-00770, would "unduly delay and prejudice the adjudication of the original parties' rights" and therefore denied the motion.

27

### 4. Motion to Vacate Judgment or Alternatively to Stay Enforcement of Judgment

Along with the previous motion, on December 3, 2010, Ragda, once again, in her capacity as the successor trustee and individually as the successor beneficiary of the Soad Wattar Trust, brought a motion to either vacate the July 6, 2010 Order and the August 5, 2010 Order, or to stay the August 5, 2010 Order pending resolution of Adversary Proceeding 10-02239.[8] Bankr. 09-5868, Dkt. 67. Her request was predicated on the same factual basis as the previous motion and therefore does not bear repeating. The motion was also fully briefed. Bankr. 09-05868, Dkt. 67, 82, 84.

On March 14, 2011, this Court entered an order denying Ragda's motion. Bankr. 09-05868, Dkt. 95 (hereinafter "March 14, 2011 Order"). The Court repeated its findings from the March 10, 2011 Order as to Ragda being able to sue in her capacity as beneficiary of the Soad Wattar Trust and her alleged position as the Trust's successor trustee. *See Id.* at pp. 17-18. The Court also discussed both of Ragda's requests on their merits.

#### a. Request to Stay Proceeding

Ragda asked the Court to stay enforcement of the August 5, 2010 Order pending the resolution of Adversary Proceeding 10-02239. While not a "stay pending appeal," the Court nonetheless applied appeal stay standards to her motion. The Court considered: "(1) the movant's likelihood of success on the merits of the appeal; (2) whether the movant will suffer irreparable injury if a stay pending the appeal is not granted; (3) whether other parties will suffer substantial harm if the stay is issued; (4) whether there will be harm to the public interest if the stay is issued." *In re Maurice,* 167 B.R. 136, 138 (Bankr. N.D. Ill. 1994).

Doing so, the Court determined that Ragda had not provided the Court with any legal or factual grounds on which it could find that she was likely to succeed in pursuing the claims in Adversary Proceeding 10-02239. Further, the Court found that she had failed to show that she

---

[8]

Discussed herein.

28

was the appropriate party to seek relief on behalf of the Soad Wattar Trust. Therefore, the Court

found that Ragda's unsupported allegations as to the likelihood of success and irreparable harm

carried no weight.

On the other hand, the Court saw that a stay of the August 5, 2010 Order would

substantially harm WIN as it had been trying to enforce the $655,596.13 judgment of the District

Court of the Northern District of Texas for many years in the face of appeals, the bankruptcy

filing, and the Debtor's refusal to disclose information. Ragda could have litigated her concerns

in this bankruptcy case before it was adjudicated while she was involved as a creditor and as a

witness, but chose not to. Delaying the bankruptcy estate's progress, therefore, would have been

unfair.

Finally, staying the enforcement of the August 5, 2010 Order would not have been in the

public interest. The public interest lies in maintaining a transparent, efficient bankruptcy system.

Delaying the disposition of the assets that the Trustee had on hand while a nonparty to the

underlying matter pursued a separate lawsuit, was not in the public's interest.   Therefore,

Ragda's request to stay the proceeding was denied.

### b. Request to Vacate

Ragda's request to vacate the July 6, 2010 Order, and the subsequent August 5, 2010

Order, was equally unfounded. Rule 60 of the Federal Rules of Civil Procedure allows for relief

from judgements or orders based on:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have

been discovered in time to move for a new trial under Rule 59(b);

(3) fraud . . . misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgement has been satisfied, released or discharged; it is based on an

29

earlier judgment that has been reversed or vacated; or applying it prospectively is
no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b) (made applicable by Fed. R. Bankr. P. 9024).

Ragda sought relief from the part of the July 6, 2010 Order that provided that the Soad
Wattar Trust was the Debtor's alter ego. She asserted that WIN did not have standing to pursue
an alter ego claim against Richard Sharif.[9]  However, Federal Rule of Civil Procedure 60(b) does
not provide relief based on allegations of legal error. *In re Hunt*, 293 B.R. 191, 194-195 (Bankr.
C.D. Ill. 2003).  The Seventh Circuit has held that "Rule 60 is not a vehicle for correcting
putative legal errors in an underlying judgment. . . . The ground for setting aside a judgment
under Rule 60(b) must be something that could not have been used to obtain a reversal by means
of a direct appeal." *Curry v. Advocate Bethany Hospital*, 352 Fed. Appx. 88, 91 (7th Cir. 2009)
(internal citations omitted).  Ragda did not show that the orders at issue were entered as a result
of inadvertence, oversight, mistake, surprise, newly discovered evidence, fraud or other available
grounds. Her allegations of legal error should have been pursued on appeal. Moreover, by that
point the July 6, 2010 Order had been appealed and the Court had no jurisdiction to act upon it.
As such, Ragda's motion was denied.

### 5. *Sharifeh v. Sharif*, 10-A-02239

On November 3, 2010, Ragda brought her first adversary proceeding in this bankruptcy
case.  Ragda brought the adversary proceeding "in her capacity as Successor Trustee and
Successor Beneficiary of the Soad Wattar Revocable Living Trust" and against "Richard Sharif
in his capacity as former Trustee of the Soad Wattar Revocable Living Trust and Horace Fox,

---

[9]  That claim was Count V of Adversary Proceeding 09-00770. This Court's ruling on that claim was affirmed by the
District Court for the Northern District of Illinois on February 10, 2012, and by the Seventh Circuit Court of Appeals
on August 4, 2015.

Jr., in his capacity as the U.S. Trustee of Richard Sharif's bankruptcy estate."[10]  Adv. 10-02239,
Dkt. 1, p. 1.

The two-count complaint alleged that 1) the Trustee wrongfully converted the property of
the Soad Wattar Trust and requested the turnover of the trust property, and 2) declaratory
judgment that the property in the Soad Wattar Trust was not property of the estate, that Ragda
was the legal and equitable owner of the trust assets, and that Ragda, Haifa Kaj, Hana Sharifeh,
and Raja Sharifeh were the beneficiaries of Hartford Life and Annuity Company Life Insurance
Policy No. VL 9319377 and are entitled to be paid the benefits of said policy.  *Id.*

On August 30, 2011, this Court entered an order dismissing the adversary proceeding.
Adv. 10-02239, Dkt. 61.  Based on the rulings in the March 10, 2011 Order and the March 14,
2011 Order, the Court once again reiterated its concern with Ragda's standing to proceed as the
Trust's successor beneficiary or successor trustee.  The Court then addressed the specific counts
alleged in the complaint.

### a. Count I: Wrongful Conversion

Having determined that Ragda was neither the successor beneficiary with capacity to sue
nor the successor trustee of the Soad Wattar Trust, this Court proceeded to dismiss the
complaint.  Count I, which alleged wrongful conversion, was dismissed for two reasons: "(1) as
an alleged beneficiary she has no authority to sue Trustee Fox under Illinois law and (2) she
alleges that she became the trust's trustee after July 20, 2010, after it ceased to exist and its
assets had been declared to be property of Debtor Richard Sharif's bankruptcy estate." Adv. 10-
02239, Dkt. 61, p. 23.  Moreover, the Court found a number of allegations which were
completely unsubstantiated:

### i. Allegation that Trustee Fox knew that the WIN Plaintiffs did not have standing to raise

---
[10]

Ragda mistakenly describes Mr. Fox as the U.S. Trustee when he is only the Chapter 7 Trustee for the Debtor's
bankruptcy estate.  Ragda does this numerous times in various motions and pleadings.  The Court points this out to
avoid confusion and will continue to refer to Mr. Fox as the Chapter 7 Trustee or "the Trustee."

**an alter ego claim:**

Ragda appeared to suggest that Trustee Fox took possession of certain assets based on information gained from third parties that he should not have believed. However, he gained possession of certain assets pursuant to the July 6, 2010 Order after the Court gave all parties concerned an unlimited opportunity to contest WIN's allegations about the Debtor's refusal to satisfy discovery obligations.

**ii. Allegation that Debtor Richard Sharif produced documentation related to the Soad Wattar Trust in compliance with an October 27, 2009 order:**

This factual allegation was unsupported. Specifically, Ragda failed to identify what was produced, whether the production was timely and complete, and whether the alleged production preceded depositions and Federal Rule of Bankruptcy Procedure 2004 examinations of the Debtor and others involved in the Trust's formation and funding. Regardless of what Ragda tried to argue, the Court had already ruled that the Debtor failed to produce many items of discovery, and it was this failure that led to the entry of the July 6, 2010 Order against him in Adversary Proceeding 09-00770, which, on February 10, 2012, the district court affirmed on appeal and the Seventh Circuit ultimately affirmed as well on August 4, 2015.

**iii. Allegation that Trustee Fox knew that the Soad Wattar Trust was valid under Illinois law:**

The Trustee is not responsible for determining the validity of the Trust. This Court has to make that determination on the record after all parties are accorded appropriate access to discovery. The Debtor failed to disclose records of its formation and operation.

**iv. Allegation that Trustee Fox knew that the Soad Wattar Revocable Living Trust was not Debtor Richard Sharif's alter ego based on records turned over by Attorney William Stevens:**

The Trustee could not be held responsible for knowing anything about the alter ego status

32

of the Trust where the Debtor unreasonably and illegally denied him and WIN access to the records of the trust's formation, operation, and funding. In addition, this allegation failed because it did not identify what records it refers to. In any event, the production of records was insufficient; WIN and the Trustee had the right to examine and review all pertinent information. The Debtor's lack of cooperation prevented review of the Trust and his financial circumstances generally.

**v. Allegation that Trustee Fox knew of an October 7, 2007 amendment to the Soad Wattar Revocable Living Trust which named Ragda Sharifeh as its successor beneficiary:**

The Trustee could not be held responsible for the existence of documents under the circumstances herein where he was unreasonably denied access to the records of the Trust's formation and operation in time to question involved parties about them.

**vi. Allegation that Ragda Sharifeh produced the October 8, 2007 amendment at her deposition on June 10, 2010:**

Ragda did not pinpoint where in her deposition such disclosure could be found. In any event, this allegation did not indicate that if the alleged disclosure was made, that it was timely in terms of allowing WIN and the Trustee to investigate it in relation to the formation and operation of the Soad Wattar Trust.

**vii. Allegation that Trustee Fox advised Wells Fargo Financial Advisors that Richard Sharif's bankrupt estate owned the funds being held in the name of the Soad Wattar Trust:**

The allegation was deficient in that it did not allege when such a communication was made. Moreover, that statement could have been made validly after the Court entered the July 6, 2010 Order.

**viii. Allegation that Trustee Fox incorrectly stated on July 27, 2010 in a motion that the Debtor produced an amendment to the Soad Wattar Trust:**

The allegation did not point to which motion it concerned. In addition, the allegation did

33

not explain what was incorrect about the statement.

**ix. Allegation that Trustee Fox's statement was incorrect because Richard Sharif did not produce the original Soad Wattar Trust because it was not in his possession and that Richard Sharif only produced copies of amendments date [sic] May 15, 1996; April 26, 2007 and October 7, 2007:**

The allegation did not indicate when the Debtor did not have possession of the original Soad Wattar Trust documents. Nor did the allegation indicate what amendments it refers to.

**x. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the Soad Wattar Trust when he sought turnover of the assets in a motion on July 27, 2010:**

By July 27, 2010 Trustee Fox may have acted pursuant to this Court's order that declared that the assets in question were property of the bankruptcy estate.

**xi. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the assets on August 4, 2010 when he caused his attorney to obtain an order:**

The Trustee and his attorney may have been acting pursuant to the July 6, 2010 Order when turnover of assets was sought in August of 2010.

**xii. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of assets of the Soad Wattar Trust which were held by Wells Fargo Financial prior to July 6, 2010:**

It was of no importance whether Ragda was a successor beneficiary before or after July 6, 2010, as the law is that a trust beneficiary generally does not have standing to sue third parties absent the wrongful refusal of the trustee to do so. In this matter, where the trustee is being sued, he was not refusing to pursue a cause of action on behalf of the Trust. The exception to the prohibition against a beneficiary being allowed to sue on behalf of a trust does not apply herein because to date Ragda, the alleged beneficiary, has not complained about her trustee's conduct.

34

*In re Stoll*, 252 B.R. 492, 495 (B.A.P. 9th Cir. 2000); *Saks v. Damon Raike & Co.*, 8 Cal.Rptr.2d 869, 874-75 (Ct. App. 1992). Moreover, "[a]bsent special circumstances, an action prosecuted for the benefit of a trust estate by a person other than the trustee is not brought in the name of a real party in interest and is demurrable." *Powers v. Ashton*, 118 Cal.Rptr. 729, 787 (Ct. App. 1975). The Court noted that Ragda did not allege in her Adversary Complaint that the Debtor, as trustee of the Soad Wattar Trust, did anything improper. He had been named in the caption of her Adversary Complaint as a defendant; however, there were no allegations made against him therein. Her failure to complain may have reflected that she was satisfied with his conduct in refusing to cooperate with discovery in both the bankruptcy case and WIN's Adversary Proceeding. Ragda could have, but did not, seek leave to intervene in the bankruptcy case or WIN's Adversary Proceeding before those matters were adjudicated.

**xiii. Allegation that Trustee Fox did not serve Plaintiff Ragda Sharifeh with notice that he had filed pleadings to have the assets in the Soad Wattar Revocable Living Trust turned over to him:**

The Trustee owed notice to the parties involved in the litigation in issue. As a beneficiary, Ragda was not a party; her trustee, the Debtor, was the party who represented the Soad Wattar Trust. In addition, Ragda did not indicate with specificity what pleading this allegation concerns. The Court noted that WIN requested that the Trust's assets be declared the Debtor's alter ego in Count V of the Amended Complaint in Adversary Proceeding 09-00770. Moreover, as discussed earlier, Ragda clearly knew of Adversary Proceeding 09-00770 as she was involved therein as a deposed witness.

**xiv. Allegation that Trustee Fox unconstitutionally and unlawfully disentitled Ragda Sharifeh of the assets of the Soad Wattar Trust:**

The Trustee had a Court order allowing him to take possession of the assets in question. He did not act without constitutional and legal right. The Court did not accept as true those

35

unsupported legal conclusions.

Ragda failed to cite to any statute or other legal authority to support her claim that the Trustee converted the Trust assets when he took possession of them as allowed by the July 6, 2010 Order and the August 5, 2010 Order. To support an allegation of conversion, Ragda had to plead and prove that "(1) [she] has a right to the property; (2) [she] has an absolute and unconditional right to the immediate possession of the property; (3) [she] made a demand for possession and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Brodsky v. HumanaDental Insurance Co.*, No. 10-C-3233, 2011 WL 529302, at * 6 (N.D. Ill. February 8, 2011) (quoting *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)).

Even after accepting all allegations of the complaint as true and construing the allegations in the light most favorable to Ragda, the Court found that her claim for conversion failed. Nowhere in the Adversary Complaint did Ragda allege that the Trustee's conduct was unauthorized. Rather, the Trustee's acts in taking possession of the Trust assets were authorized by the July 6, 2010 Order and the August 5, 2010 Order.

Her allegations that the Trustee knew that the Soad Wattar Trust was valid fails to account for the fact that both the Trustee and WIN sought information about the formation and operation of the Trust to no avail. The Debtor's lack of cooperation is documented herein. Ragda should not have expected legal professionals to rely on her bald assertions that a trust exists, that she is the Trust's beneficiary or that she is the Trust's trustee.

Moreover, Ragda's allegation that the Trustee knew that the Soad Wattar Trust was not the Debtor's alter ego failed to account for the fact that when it was convenient and in his interest to do so, with Ragda's permission or at her direction, the Debtor claimed the Trust's assets as his own. As discussed in the next section, Ragda's testimony in this regard was noted. In this adversary proceeding, however, Ragda was trying to assert otherwise.

36

Moreover, as discussed earlier, even if Ragda was a successor beneficiary of the Soad Wattar Trust, she did not have standing to sue Trustee Fox for conversion. *See* 760 ILCS 5/4.11; *see also In re Schneider,* 417 B.R. at 913. The Trustee did not err if he did not notify Ragda when he filed pleadings in the bankruptcy court to have the assets contained in the Soad Wattar Trust turned over to him. As a beneficiary, she was not the real party in interest regarding the Trust and there is nothing unconstitutional about a bankruptcy Trustee's inquiry about assets being held by a debtor and seeking turnover of the same.

The Court noted that before the Trust's assets were declared to be the Debtor's alter ego on July 6, 2010, Ragda appeared in the WIN Adversary Proceeding on May 14, 2010. *See* Adv. 09-00770, Dkt. 56. While she did not have authority to sue on behalf of the Trust, since she was not its trustee, she had an unlimited opportunity to inform herself of the litigation involving the efforts of WIN and of the Trustee to gain access to the assets of the Soad Wattar Trust. She could have sought to intervene at that time to argue that the Debtor was not protecting her interests as a beneficiary; she could have asked for leave to litigate the issues involved.

Ragda could have asked, on May 14, 2010, to be allowed to sue on behalf of the Trust.[11] Had she intervened and complained about the Debtor's conduct as trustee of the Soad Wattar Trust before the July 6, 2010 Order was entered, she could have asserted the claims she sought to proceed on in Adversary Proceeding 10-02239. She could have provided the information that WIN and the Trustee sought regarding the formation, funding, and operation of the Soad Wattar Trust.

Regardless of what she could have done, at the very least she was on notice by May 14, 2010 that WIN was seeking to have the Trust declared to be the Debtor's alter ego. The request

---

[11] Ragda did not try to intervene in the bankruptcy case until December 3, 2010, when she filed a motion to intervene in the main case. *See* Bankr. 09-05868, Dkt. 68. This was long after the resolution of the issues in dispute on May 14, 2010, the date when she first appeared before this Court and sought court action regarding WIN's subpoena. *See* Adv. 09-00770, Dkt. 42, 43, 56.

37

for that relief was made in Count V of the Amended Adversary Complaint which was filed on November 3, 2009, eight months before her motion was filed on May 14, 2010. Moreover, Ragda was generally notified of the bankruptcy case as she was listed as an unsecured creditor on the Debtor's Schedule F no later than February 28, 2009.

The Court dismissed Count I of Ragda's complaint with prejudice. The Court found that there was no set of facts on which Plaintiff Ragda Sharifeh could recover against the Trustee for conversion.

### b. Count II: Declaratory Judgment

As with Count I, the Court accepted all of Ragda's allegation in Count II as true. She essentially requested that the Court enter declaratory judgment that the assets of the Soad Wattar Trust were not property of the Debtor's estate. She based this on five basic factual allegations:

    (1) an October 8, 2007 amendment to the Soad Wattar Revocable Living Trust that named Ragda Sharifeh as a successor beneficiary;

    (2) an October 8, 2007 amendment to that Trust that named Ragda Sharifeh, Haifa Kaj, Raja Sharifeh and Hana Sharifeh as successor beneficiaries of Hartford Life Insurance Policy VL 931377 which insured the life of Soad Watter, who passed away on March 17, 2010;

    (3) Debtor Richard Sharif resigned as Trustee of the Soad Wattar Revocable Living Trust on July 21, 2010;

    (4) that Ragda Sharifeh succeeded Richard Sharif as Trustee of the Soad Wattar Revocable Living Trust; and

    (5) that Richard Sharif did not personally own the assets of the Soad Wattar Revocable Living Trust such that those assets did not become property of his bankruptcy estate.

*See* Adv.10-02239, Dkt. 61, p. 31. Once again, the Court found that even if accepted as true, the

38

facts did not support her request for declaratory judgment.[12]

The Court noted that Ragda had testified that the Debtor acted as her agent in the conduct of the Texas federal court litigation from which WIN's judgment originated. She directed the Debtor to file the litigation, instructed him on how to proceed with the litigation, and instructed him to represent to third parties that he owned the Loan Application assets.[13] Bankr. 09-05868, Dkt. 78, Ex. A, pp. 47-58 (Transcript of June 10, 2010 Deposition of Ragda Sharifeh). The Court determined that she should not be allowed at one point in time to have the Debtor represent that he owned the assets and then later claim the contrary, that she or the Trust owns the assets.

Specifically, at page 95 of the Ragda's deposition, she testified about telling the Debtor to use property to buy a house for their mother:

Q: And again, it's checked self-employed. Were you aware that Richard represented to Washington Mutual Bank that he, as self-employed, owned Logan Square MRI Center, Sharif Pharmacy, and Hermosa Medical Center?

A. What I told him is to use the home address, the clinic address, in order to secure the amount of money to be used to buy the house for mom.

*Id.* at p. 95.

Further, on page 96 of the Deposition, Ragda testified that the assets were being held out by the Debtor as his own although he was not the owner of them:

Q. So did you know that these assets, the company's and the real estate, were being held out by Richard as representing that he owned all of them? He was

---

[12]

The Court noted that in Count II, Ragda asked for relief on behalf of herself and Haifa Kaj, Raja Sharifeh, and Hana Sharifeh. The Court, however, declined to enter relief on behalf of those other individuals because Ragda failed to show that she represented said individuals. *See* Adv. 10-02239, Dkt. 61, p. 37. Moreover, Ragda asserted that she became the Trust's trustee after July 21, 2010. That was fifteen days after the Trust's assets were ruled to be property of the Debtor's bankruptcy estate. Therefore, there was nothing for Ragda to become trustee of, negating her authority to sue herein on behalf of Haifa Kaj, Hana Sharifeh and Raja Sharifeh.

[13]

The same Loan Application as discussed in Adversary Proceeding 09-00770.

representing to the bank that he owned the real estate and the business?

A. He is, he is not the owner. Otherwise his ex-wife would have cleaned him
out, but I told him that he could make that statement.

*Id.* at p. 96.

At page 39 of the Deposition, Ragda was asked whether she discussed the lawsuit herein
with the Debtor:

Q. Have you had any conversations with Richard Sharif regarding this, this
lawsuit that we're here on?

A. Just for a little bit. I went over there, took my paperwork. We are brother and
sister, we talk about some things.

*Id.* at p. 39.

At page 41 of the Deposition, Ragda was asked if she knew about the Debtor's
bankruptcy filing. She answered:

A. We talked about how he doesn't have any money and that there is a lawsuit
against him and therefore he was forced to file for bankruptcy. He doesn't talk
very much about his private business with me.

*Id.* at p. 41.

At pages 45-51 of the Deposition, Ragda was asked why she authorized the Debtor to
bring a lawsuit against WIN:

Q. Okay. And why did you authorize Richard to bring a lawsuit?

A. He speaks English better than I do. He is more familiar with the laws here.
That's why I am continuously asking for assistance because my English is not
that good.

Q. So did Richard enter into the deal that resulted in the lawsuit?

A. Maybe.

40

Q. And he entered into it on your behalf?

A. Yes.

Q. And did you instruct him to enter into the deal?

A. What I wanted, he did.

Q. But you can't remember what the lawsuit is about?

A. (In English) I don't remember.

Q. Do you know if it related to Wellness International Network?

A. Yes. . . .

Q. And did you direct Richard to file the lawsuit against Wellness International Network?

A. Of course.

Q. And Richard was operating under your instructions when he filed the lawsuit against Wellness?

A. Of course. . . .

A. I told him to do this because he lost the money. He lost my mother's money, he lost the family money, and I was a partner.

Q. Partner in what?

A. And I had some financial interest in it, the money was lost, my mother's money was lost, so we were asking for our rights.

Q. So when Richard, Richard sued Wellness, were you involved in that litigation?

A. Mm-hmm.

Q. And you were–and was Richard acting as your agent? I mean was he acting on your behalf?

A. Yes. . . .

41

Q. What do you mean as long as he puts you in the picture?

A. To tell me, to tell me what he was doing, how he was operating the business, how he was managing, what's right, what's wrong, what we should do better next time. He was my agent.[14]

*Id*. at pp. 45-51.

On page 116 of the Deposition, Ragda testified about the Loan Application assets:

Q. So Richard Sharif did not commit fraud when he filled out the Washington Mutual Loan Application, which is Exhibit 54?

A. We put down on the application that it is family ownership, family property, and it was up to the bank to review or look into it or (sic), and make a decision.

*Id*. at 116.

In short, when it suited their interests, Ragda allowed the Debtor to claim ownership of certain assets.

The Court also noted that Ragda, like her brother, also refused to cooperate with the judicial process. At page 24 of her Deposition she was asked whether she complied with Request to Produce No. 4:

Q. See that request number 4. Do you have any documents, corporate documents, for Sharif Pharmacy?

A. No.

Q. What did you do—well, did you make any attempt to look for any documents relating to Sharif Pharmacy, Inc. in response to this request?

A. No.

*Id*. at p. 24.

---

[14] The court noted that principals are bound by their agent's authorized conduct. *See* Restatement (Third) of Agency § 1.01 (2006).

Her conduct was as offensive as the conduct that the Fifth Circuit Court of Appeals condemned. Ragda wanted to rely on documents that purported to establish that she is a beneficiary and trustee of the Soad Wattar Trust while she refused to cooperate with the discovery process herein regarding those documents and issues.

The Court also pointed out that if Ragda wanted a declaratory judgment concerning the Trust, then the record clearly showed that she had a declaration concerning her rights regarding the Soad Wattar Trust in the form of this Court's July 6, 2010 Order, March 10, 2011 Order, and March 14, 2011 Order. As a matter of law, because the facts alleged in the adversary did not support her request for relief, and because there were no set of facts on which Ragda could have been awarded the declaratory judgment she sought, this Court dismissed Count II with prejudice.

### c. Res Judicata and Collateral Estoppel

In the motion to dismiss, the Trustee also asked that Ragda's Adversary Proceeding be dismissed on res judicata and collateral estoppel grounds. Because each is an affirmative defense, the Trustee had the burden of proving each of its requirements. *Adair v. Sherman*, 230 F.3d. 890, 894 (7th Cir. 2000); *See* Fed. R. Bankr. P. 7008(c).

The Court found that the doctrine of res judicata was applicable[15] and barred Ragda's efforts to relitigate the issues in Adversary Proceeding 10-02239. She was bound by the July 6, 2010 Order because (1) that order represented a final judgment on the merits rendered by a court of competent jurisdiction, this Court; (2) the claims raised in this subsequent Adversary Proceeding are identical to those raised in the pleadings that resulted in the entry of the July 6, 2010 Order: who should possess and have title to the assets of the Soad Wattar Trust and (3) the prior action involved the same parties or their privies: she was represented therein by the Debtor

---

[15] To establish res judicata, the Trustee needed to demonstrate that: 1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) the claims raised in the subsequent action were identical to those decided in the prior action and (3) the prior action involved the same parties or their privies. *Hoxworth v. Blinder*, 74 F.3d 205, 208 (10th Cir. 1996); *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 591 (7th Cir. 1993). Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

43

as the trustee of the Soad Wattar Trust.

Res judicata also applied to bar the relitigation of the issues involved in Adversary
Proceeding 10-02239 based on the March 10, 2011 Order, denying Ragda's Motion to Intervene,
and the March 14, 2011 Order, denying Ragda's Motion to Vacate or Stay Proceeding. Those
Orders were not appealed. The three requirements for res judicata had been met: the underlying
motions were both filed on Ragda Sharifeh's behalf (same parties); they involved the ownership
of the Trust's assets (same issues), and they were litigated to final unappealed orders (final
judgment on the merits).

Furthermore, the Court found that the doctrine of collateral estoppel, or issue preclusion
as it is formally known, also prevented Ragda from relitigating issues that she had previously
litigated and lost.[16] This Court determined that the July 6, 2010 Order; the March 10, 2011
Order, and the March 14, 2011 Order were prior adjudications of the identical issues herein
regarding whether Ragda was a beneficiary, what authority she possessed in that status to sue on
behalf of the Trust, and whether she became a successor trustee after the Debtor resigned as
trustee after the state court entered certain orders on July 21, 2010. The Court found that the
prior proceedings involved the same issues as Adversary Proceeding 10-02239.

Ragda, as a beneficiary, was represented by the Debtor as the trustee of the Soad Wattar
Trust throughout the prior matters which have to be given preclusive effect because she is
bound, as a matter of law, by the orders resolving the matters previously before this Court. In
*Anderson v. Elliott*, 1 Ill. App. 2d 448, 453 (1954), the Illinois Appellate Court held that a
beneficiary is bound by the outcome of a lawsuit involving the trustee in which the trustee was a
party and rendered actual and efficient protection, in the absence of a showing of bad faith on the

---

[16] Collateral estoppel has four requirements: (1) the issue sought to be precluded must be the same issue involved in the
prior proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) determination of the issue
must have been essential to the final judgment in the earlier proceeding; and (4) the party against whom estoppel is
asserted must have been fully represented in the prior proceeding. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.
1987).

44

trustee's part. That litigation did not concern the rights of the beneficiaries and the trustee as between themselves. As a beneficiary, Ragda is bound by the conduct of her representative, the Debtor, the trustee of the Soad Wattar Trust. She did not intervene to make a showing of bad faith. She could have complained that his conduct amounted to a breach of fiduciary duties owed to her, but she did not complain even though she was involved in the matters long before the entry of the orders she wishes to avoid being bound by.

The Court found that the issues in the March 10, 2011 Order and the March 14, 2011 Order determine the same issues that Ragda raised in the adversary proceeding, importantly whether she could intervene on behalf of the Trust and who had legal and equitable title to the Trust assets. The Court found that by filing the adversary proceeding, Ragda was asking this Court to declare that "the assets are not property of Richard Sharif's bankruptcy estate," and that "Ragda Sharifeh is the legal and equitable owner of the assets contained in the Soad Wattar Revocable Living Trust" when those issues were clearly resolved by the Court's March 10, 2011 Order and March 14, 2011 Order. Ragda did not appeal those orders. Instead, she wants to relitigate them.

Next, the Court noted that the issues were actually litigated. At the time, the Court did not rely on the default judgment order in Adversary Proceeding 09-00770 because of Seventh Circuit precedent holding that a default judgment is not a proper basis for collateral estoppel. *See Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1992).[17]  Instead, the Court

---
17

In making this ruling, the Court noted that the Third Circuit's decision in *In re Docteroff* could be a basis on which to establish the preclusive effect of the default judgment order. The Third Circuit stated that: "We do not hesitate in holding that a party . . . who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application. . . . To hold otherwise would encourage behavior similar to [his] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." *In re Docteroff*, 133 F.3d 210, 213-214 (3d Cir. 1997). The Court now notes that in *Herbstein v. Bruetman*, the Seventh Circuit "affirm[ed] for the reasons given by the district judge." 32 F. App'x 158 (7th Cir. 2002). The district court, in turn, held that "where [a litigant] participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, [then] we agree with the Bankruptcy Court and the Third [Circuit] . . . that [the litigant] should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in [another court] due solely to [the litigant's] decisions. [The litigant] is not entitled to a second bite at the apple. The issue underlying the . . . default judgment were "actually litigated for purposed of the collateral estoppel doctrine."" *Herbstein v. Bruetman*, 266 B.R. 676, 685 (N.D. Ill. 2001) (citing *Docteroff*, 133 F.3d at 215). Moreover, *Grip-Pak* described the

45