## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Richard Sharif, | ) | Case No. 09 B 5868 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

**Memorandum Opinion on Rule 9011 Violations (Dkt. No. 257)**

### I. Background and Facts

This matter involves a series of related cases that have been heard over the past fifteen years in the District Court for the Northern District of Texas, the Fifth Circuit Court of Appeals, the Bankruptcy Court for the Northern District of Illinois, the District Court for the Northern District of Illinois, the Seventh Circuit Court of Appeals and the U.S. Supreme Court.

This Court's lengthy April 25, 2016 Memorandum Opinion on two motions, a Motion for Leave to Commence an Action Against the Trustee and His Counsel and a Motion for Funds From the Trust ("Motions"), covers information about the trajectory of these matters from 2002 through 2016. *Sharifeh v. Sharif* (*In re Sharif*) 549 B.R. 485 (Bankr. N.D. Ill. 2016). That Opinion included an Order that Attorney Maurice James Salem, Ragda Sharifeh and Haifa Sharifeh show cause why they should not be sanctioned for violating Federal Rule of Bankruptcy Procedure 9011(b)(1-3).

Each respondent, Mr. Salem, Ragda Sharifeh and Haifa Sharifeh, appeared at the June 21, 2016 show cause hearing. Each respondent filed a written response, at Dkts. 297 and 302. This matter was taken under advisement by this Court on October 18, 2016 after each party was heard on the issues herein.

The April 25, 2016 Memorandum Opinion will be included herein in amended form to provide context to the findings that the Motions were presented in violation of Federal Rule of Bankruptcy Procedure 9011 because they were based on insufficient legal grounds, that they

were not warranted by existing law and that they had no evidentiary support.

This Court also finds that the Mandate Rule binds the parties and this Court to comply with the letter and spirit of the appellate mandates issued by both the District Courts and the Seventh Circuit Court of Appeals affirming previous rulings that the trust in issue became property of Richard Sharif's bankruptcy estate as of February 24, 2009, the date he filed for bankruptcy relief. *In re Continental Illinois Securities Litigation*, 985 F.2d 867, 869 (7th Cir. 1993) ("Judicial mandates must be obeyed, and litigation must have an end.")  It is time to end this litigation.

This Court finds that the two Motions were presented by Attorney Maurice James Salem and his clients Ragda Sharifeh and Haifa Sharifeh to harass the bankruptcy Trustee, cause unnecessary delay and to increase the cost of litigation.  The respondents argue that because the Court did not set a briefing schedule the Trustee did not incur costs in responding to the motions.  However, review of the Trustee's Attorney's Application for Compensation dated January 3, 2017 at Dkt. 321, p.7 shows that the fee request covers work done by him in the appeal of the two orders that resolved the Motions.  In *In re Royal Manor Management, Inc.* in affirming the imposition of sanctions against an attorney for vexatiously multiplying proceedings, the Sixth Circuit stated that "[l]itigation tactics that hinder a final resolution of controversies are always unwelcome.  In the context of the collective creditor remedy that bankruptcy provides, tactics that delay and reduce the percentage dividend to holders of allowed claims warrant special scrutiny." 652 Fed. Appx. 330, 335 (6th Cir. 2016).  The repeated filings herein were aimed at undoing settled issues.  They have delayed the resolution of this case and wasted the time and resources of other parties and the Court.

Mr. Salem and his clients have unnecessarily increased the bankruptcy estate's litigation expenses.

For the reasons noted herein this Court will sanction Attorney Maurice James Salem by barring him from ever filing any pleadings in this bankruptcy case or any related adversary proceeding without prior leave of this Court.  In addition, a $20,000 fine is being imposed on Mr. Salem pursuant to Federal Rule of Bankruptcy Procedure 9011(c)(2) which states that a sanction imposed for violation of the Rule may include an order to pay a penalty into court.

Ragda Sharifeh and Haifa Haj Sharifeh are ordered to never again file any pleading in this bankruptcy case or any related adversary proceeding.

### A. Latest Motions

On February 15, 2016, Ragda Sharifeh and Haifa Sharifeh filed a Motion for Leave to Commence an Action Against the Trustee and his Counsel. Bankr. 09-05868, Dkt. 253.[1] That same day, Ragda Sharifeh, individually, filed a Motion for Funds from the Trust. Bankr. 09-05868, Dkt. 254. Ragda Sharifeh also filed a notice of dismissal pursuant to Rule 41(a)(1)(A)(I) of the Federal Rules of Civil Procedure in Adversary Proceeding 12-00430. Attorney Maurice James Salem filed each of these pleadings. Each pleading concerns the disposition of the Soad Wattar Revocable Living Trust (hereinafter the "Soad Wattar Trust" or the "Trust"). At the hearing of the motions on February 18, 2016, counsel for Horace Fox, Jr., not individually but as Chapter 7 Trustee (the "Trustee") for Richard Sharif (the "Debtor"), urged the Court to dismiss the adversary proceeding with prejudice and set a briefing schedule for the two Motions. The Court took all the matters under advisement.

On April 25, 2016 this Court denied both Motions. The Motion for Leave to Commence an Action Against the Trustee and his Counsel was denied for failure to establish a prima facie claim against the Trustee.

At the February 18, 2016 presentment hearing, counsel for the movants, Mr. Salem, was asked if there was any statutory or contractual basis for the Motion for Funds from the Trust. He failed to articulate any basis for the request in open court or in his motion. That motion was also denied. Dismissal of Adversary Proceeding 12-00430 was granted without prejudice pursuant to Rule 41(a)(1)(A)(I) of the Federal Rules of Civil Procedure. Federal Rule of Bankruptcy Procedure 7041 applies Rule 41 to adversary proceedings.

### II. Jurisdiction

The Court had jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(a) which provides that district courts have original and exclusive jurisdiction of all cases under title 11, the

---

[1]

Citations to the docket of the main bankruptcy case will be referred to by "Bankr. 09-05868." Citations to the dockets of the various accompanying adversary proceeding will be referred to by "Adv.," followed by the case number of the relevant adversary proceeding.

Bankruptcy Code ("Code"). Under 28 U.S.C. § 157(a), the district courts may refer title 11 cases to the bankruptcy judges in their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a) which refers its bankruptcy cases to the judges of this Court.

As allowed by 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on core proceedings arising in or under the Bankruptcy Code. Core proceedings include "proceedings affecting the liquidation of the assets of the estate," 28 U.S.C. § 157(b)(2)(O), and matters concerning the administration of the estate, 28 U.S.C. § 157(b)(2)(A). Ragda Sharifeh's Motion for Funds from the Trust requests the turnover of funds from property of the estate. The remaining matters deal with issues involving the administration of the estate and this bankruptcy case as a whole. The motions are core proceedings in which this Court may enter a final order.

The facts of this case have been the subject of numerous court rulings. However, given the moving parties' repeated attempts to play fast-and-loose with this and other courts, the Court will nonetheless take the time to recite the facts to set forth a complete record. The following facts are taken from the pleadings as well as from matters that the Court can take judicial notice of, such as its docket and the public record. *See e.g., In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) ("The court can take judicial notice of matters in its own records.")

## III. Pre-Bankruptcy Filing

### A. Northern District of Illinois

Wellness International Network, LTD ("WIN") is a producer of health and wellness supplies; it had an agreement with the Debtor for him to be WIN's distributor. When the relationship soured, the Debtor filed a lawsuit in the District Court for the Northern District of Illinois alleging that WIN was involved in an illegal pyramid scheme, that it had violated the Racketeer Influenced and Corrupt Organizations Act, federal securities law and the Illinois Consumer Fraud Act, voiding the contract as a matter of public policy. *See Sharif v. Wellness Intern. Network, Ltd.*, 376 F.3d 720, 722 (7th Cir. 2004).[2]

---

[2] It should be noted that in March of 2003, with a case already pending, the same group of plaintiffs filed another lawsuit against WIN which alleged essentially the same claims. *See Sharif*, 376 F.3d at 723 (describing the new suit, styled as

-4-

WIN filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and under 28 U.S.C.
§ 1406(a) alleging improper venue. *Id.* at 723.

On October 20, 2003, WIN also brought a motion to compel arbitration. On October 23,
2003, the court held a hearing on the motion; attorneys for all parties were present. The court
found that the motion to compel arbitration was "superfluous" because WIN's motion to dismiss
already discussed both venue and the arbitration clause. The court ruled that it would deny the
motion not on the merits but due to the pending motion to dismiss. *Id.* WIN appealed that
ruling. WIN then moved to stay the proceedings pending appeal. The motion was fully briefed
but at the next status date counsel for the plaintiffs failed to appear. Days later, the court
dismissed the case without prejudice for want of prosecution. After the court denied two motions
to vacate, the plaintiffs ultimately appealed as well. *Id.* On appeal, the Seventh Circuit vacated
the dismissal order and reversed the denial of WIN's motion to compel arbitration. *Id.* at 727.

On remand, the court divided the plaintiffs' claims into two categories. The first category
included seven claims which the parties agreed were subject to the arbitration clause. The court
granted WIN's motion to compel arbitration as to those claims. The second category included
claims which WIN claimed were subject to a forum selection clause indicating that the federal
and state courts in Dallas County, Texas were the correct forum. The court agreed and dismissed
those claims. *See Sharif v. Wellness Int'l Network, Ltd.*, No. 02 C 3047, 2004 WL 3119025, at
*3 (N.D. Ill. Dec. 2, 2004) *aff'd sub nom. Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d
759 (7th Cir. 2006).

### B. Northern District of Texas

On July 8, 2005, about half a year after the Northern District of Illinois case was
dismissed, the Debtor filed a new case against WIN in the United States District Court for the
Northern District of Texas. Adv. 09-00770, Dkt. 10, p. 2 (Amended Complaint Objecting to
Discharge). The Debtor, as agent for Soad Wattar, and his co-plaintiffs, which now included
Haifa Kaj and Ragda Sharifeh, brought the suit asserting fraud and RICO violations, claiming
damages of nearly $1 million. *Id.* The Debtor and his co-plaintiffs did not conduct any

---

a class action, as *Budner v. Murnighan*, No. 03 C 2100 (N.D. Ill.)). That case proceeded to arbitration and was not the
subject of the Seventh Circuit's opinion.

discovery in that action and did not cooperate with WIN's efforts to obtain discovery. *Id.* The Debtor and his co-plaintiffs did not serve initial disclosures and failed to respond to written discovery. *Id.* The Debtor and his co-plaintiffs had various facts deemed admitted against them for failure to respond to discovery requests. WIN subsequently moved for summary judgment on the grounds that the admissions negated all claims asserted; the Debtor and his co-plaintiffs failed to introduce any evidence in support of the claims. *Id.* The district court granted summary judgment in favor of WIN. *Id.*

The Debtor and his co-plaintiffs appealed the entry of summary judgment to the Fifth Circuit in 2007. *Id.* The Fifth Circuit affirmed all of the district court's rulings and noted:

> A review of the record on appeal demonstrates that Appellants' untimely performance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of non-performance or insubstantial performance and compliance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to prolong this contumacious litigation for purposes of harassment or delay, or both. The time is long overdue to terminate Appellants' feckless litigation at the obvious cost of time and money to the Defendants by affirming all rulings of the district court but remanding the case to that court for the reinstatement of its consideration of Appellees' motion for attorney's fees. In so doing, we caution Appellants that any further efforts to prolong or continue proceedings in this court, including the filing of petitions for rehearing, will potentially expose them to the full panoply of penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Sharif v. Wellness Int'l Network, Ltd*, 273 F. Appx 316, 317 (5th Cir. 2008) (emphasis added). On remand the district court awarded WIN attorneys' fees in the amount of $655,596.13 as a sanction against the Debtor and his co-plaintiffs. *See Sharif v. Wellness Int'l Network, Ltd*, No. CIV. A. 3:05-CV-01367-B, 2008 WL 2885186, *4 (N.D. Tex. July 22, 2008).

WIN subsequently served the Debtor with post-judgment discovery and document requests. Adv. 09-00770, Dkt. 10, p. 3. The Debtor did not comply with the discovery requests and did not tender responsive documents. *Id.* WIN filed a motion to compel post-judgment

discovery on October 13, 2008. On November 19, 2008, the District Court for the Northern District of Texas ordered the Debtor to respond to outstanding discovery. *Id.* at pp. 3-4. Despite the order compelling the Debtor to comply with discovery requests, he did not respond to the requests nor did he appear for a deposition. *Id.*

On December 4, 2008, WIN filed a motion for civil contempt against the Debtor for violating the district court's order on the motion to compel. *Id.* At a show cause hearing on January 13, 2009, at which the Debtor did not appear, the District Court found clear and convincing evidence that the Debtor had violated several court orders compelling him to comply with outstanding discovery requests and the order to appear at the January 13, 2009 show cause hearing. *Id.* at p. 3. On February 10, 2009, the District Court held the Debtor in civil contempt for his discovery violations and ordered him to respond to post-judgment discovery and to reimburse his opponents for attorneys' fees and costs incurred to prepare and file the motion to compel and the motion for civil contempt. *Id.* at pp. 3-5. On February 24, 2009, two weeks after the Northern District of Texas's contempt finding, the Debtor filed the instant bankruptcy case.

### C. Bankruptcy Case

Following the bankruptcy filing, the parties have filed several adversary proceedings and contested matters. The relevant proceedings are outlined below.

#### 1. *Wellness International Network, Ltd. a/k/a WIN, et al. v. Sharif*, 09-A-00770

On August 24, 2009, WIN filed a five-count adversary complaint against the Debtor. Count I of the adversary complaint alleges that the Debtor "has continuously concealed property that he owns by holding such property in the name of the Soad Wattar Living Trust ("Soad Wattar Trust") with improper intent to deceive" in violation of 11 U.S.C. § 727(a)(2). Adv. 09-00770, Dkt. 10, Amended Complaint ¶ 19. WIN also asserted that the Debtor was the Trustee of the Soad Wattar Trust, exercised complete control over the Trust and held out the assets in the Trust as his own.

Count II alleged that the Debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" in violation of 11 U.S.C. § 727(a)(3). *Id.* at ¶ 22.

Count III alleged that the Debtor knowingly and fraudulently made a false oath or account in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A). Specifically,

WIN contended that the Debtor failed to disclose companies in which he was an officer within the past six years despite the fact that the bankruptcy petition required the Debtor to list all businesses in which he was an officer, director, partner or managing executive. The Debtor did not list any businesses. *See* Bankr. 09-05868, Dkt. 1, p. 29, ¶ 18.[3]  WIN asserted that the Debtor was or had been an officer of the Logan Square MRI and Diagnostic Center, Inc. ("Logan Square"), Allied Medical Management, Inc., and the Logan Square Surgery Center, Ltd.

Count IV alleged that the Debtor failed to explain the loss of $5 Million in assets that he claimed to own in a 2002 Washington Mutual Bank, N.A. Loan Application (the "Loan Application") in violation of 11 U.S.C. § 727(a)(5). The assets listed in the Loan Application included: (1) Logan Square, (2) the Sharif Pharmacy, (3) the Hermosa Medical Center, (4) three Banco Popular Accounts containing $90,000, $40,000 and $50,000, (5) $1,400,000 in a 401(k) retirement fund and (6) $1,400,000 in real estate (collectively, the "Loan Application Assets"). *See* Adv. 09-00770, Dkt. 38, Ex. 1 (Master Loan Application, pp. WM 0840-0842).[4]  Although the Debtor claimed that he did not own any of the property that he once claimed to own in the Loan Application, he failed to explain its loss or disposition.

Count V sought a declaratory judgment that the Soad Wattar Trust was the alter ego of the Debtor because he exercised complete control over it. WIN asserted that there was a unity of interest and identity between the Debtor and the Trust, that they were not separate, and that continuing to recognize the Debtor and the Trust as separate would promote injustice. Count V, the Soad Wattar Trust, and the Trust's assets have been, and continue to be, the subject of extensive litigation.

On April 15, 2010, WIN filed a Motion for Sanctions, Costs and Fees, and in the

---

[3]

Bankr. 09-05868, Dkt. 1 contains both the Debtor's Voluntary Chapter 7 Bankruptcy Petition and the Debtor's Statement of Financial Affairs. These shall be referred to as the "Petition" and "SOFA," respectively. This particular information is located on paragraph 18 of the Debtor's SOFA.

[4]

Adv. 09-00770, Dkt. 38 is WIN's Motion for Sanctions. Attached to the motion is a copy of the Washington Mutual Bank Master Loan Application. The Court will refer to this attachment as the "Loan Application" and will cite to the 'WM' pagination found at the bottom of the right hand corner of the exhibit's pages. Additionally, many of the documents referred to in the Background section of this Opinion have been presented to the Court, over time, as exhibits at various hearings. Where possible, the Court has done its best to cite to places on the Court's docket where these documents can be found.

alternative, a Motion to Compel, Motion for Costs and Fees, and Motion to Modify Scheduling Order. Adv. 09-00770, Dkt. 38 (hereinafter the "Sanctions Motion"). The Court held a hearing on the Sanctions Motion on April 21, 2010. WIN argued that the Debtor had failed to comply with discovery requests and missed discovery deadlines for document production and responding to interrogatories. This Court entered an order on April 21, 2010 compelling the Debtor to comply with all outstanding discovery by April 28, 2010 or else an order of default would be entered against him. Adv. 09-00770, Dkt. 48. The hearing on the Sanctions Motion was continued to April 28, 2010.

On April 28, 2010, WIN noted that the Debtor had produced some documents along with certain interrogatory responses on the afternoon of April 27, 2010. *See* Adv. 09-00770, Dkt. 99, May 24, 2010 Transcript of Sanctions Hearing, p. 4 (the "Hearing Transcript"). This Court continued the hearing to May 24, 2010 to allow WIN time to assess whether the Debtor's document production and discovery responses were in compliance with the April 21, 2010 order compelling the Debtor to comply with all outstanding discovery.

### a. Debtor's Discovery Violations

At the hearing on May 24, 2010, WIN argued that the Debtor had not fully complied with discovery requests and should be sanctioned. The Debtor's specific discovery violations include:

### (1) Failure to Sign or Verify Interrogatory Responses

Federal Rule of Civil Procedure 33(b), applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7033, requires in pertinent part:

(1) Responding Party. The interrogatories must be answered:

> (A) by the party to whom they are directed; or

> (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party . . . .

(3) Answering Each Interrogatory. Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath. . . .

(5) Signature. The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed. R. Civ. P. 33(b)(1), (3) & (5). The Seventh Circuit Court of Appeals and the United States District Court for the Northern District of Illinois have determined that under Rule 33 answers to interrogatories must be verified and signed by the person answering the interrogatory, not only by the party's attorney. *See, e.g., Hindmon v. Natl.-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 619 (7th Cir. 1982) (observing that interrogatory answers signed by an attorney and not the party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); *accord Overton v. City of Harvey*, 29 F.Supp.2d 894, 901 (N.D. Ill. 1998) (striking as summary judgment exhibit plaintiff's unverified answers to interrogatories signed only by attorney).

The Debtor's interrogatory responses as Trustee of the Soad Wattar Trust were signed by the Debtor and his attorney but did not contain a statement verifying the interrogatory answers. *See* Hearing Transcript, p. 6; Richard Sharif's Answers to Interrogatories as Trustee of the Soad Wattar Revocable Living Trust, Hearing Ex. No. 3, p. 9 ("Sharif Trustee Interrog. Answers"). Similarly, the Debtor's individual interrogatory responses were signed by Debtor's attorney but did not include a statement verifying the interrogatory answers. *See* Hearing Transcript, p. 6; Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, Hearing Ex. No. 4, p. 9 ("Sharif Individual Interrog. Answers"). They should have been signed by the Debtor under oath.

The Debtor was not present at the hearing and his attorney did not explain why the interrogatory responses were not signed as required by the Federal Rules.

### (2) Failure to Provide Washington Mutual Loan Application and Related Documents

During the Debtor's initial Section 341 meeting on March 25, 2009, WIN and the Trustee ("Trustee") asked the Debtor to provide documents relating to the Loan Application where the Debtor asserted that he owned the Loan Application Assets. *See* Loan Application pp. WM 0840-0841. The Section 341 meeting was continued to April 21, 2009 to allow the Debtor additional time to gather the documents. *See* Sanctions Motion, p. 5. When the Debtor appeared at the continued Section 341 meeting he did not provide the U.S. Trustee or WIN with the requested documents, and instead alleged that none of the Loan Application Assets belonged to him. *Id.* The Debtor asserted that the Soad Wattar Trust owned all of the Loan Application Assets, that the Debtor was the Trustee of the Trust, and that he lied when he represented that he

owned the assets listed in the Loan Application. *Id.* At his Rule 2004 examination the Debtor

confirmed under oath that he testified at the Section 341 meeting that he lied in the Loan

Application.

> Q: The third sentence [of Debtor's answer to the Amended Adversary Complaint
>
> states], defendant testified at the 341 meeting that he lied on the loan application,
>
> that he did not own any of the real estate listed in the loan application, and that
>
> this property is owned by Soad Wattar Trust, his mother or sister. Do you see that
>
> statement? I'd be glad to orient you if you --
>
> A: Yeah. Is that by the Answer, defendant admits?
>
> Q: Uh huh.
>
> A: Yeah. That on April '09 – okay.
>
> Q: Is that a true statement?
>
> A: Yes, yeah.

Adv. 09-00770, Dkt. 59, pp. 60-61.[5] Based upon the Debtor's assertion that the Trust owned the

assets listed in the Loan Application, WIN and the Trustee requested documents relating to the

formation and funding of the Soad Wattar Trust and documents evidencing ownership or transfer

of the Loan Application Assets. *See* Sanctions Motion, p. 5. The Section 341 meeting was

continued to June 3, 2009 to give the Debtor time to provide the requested documents. At the

June 3, 2009 Section 341 meeting the Debtor again failed to provide any of the requested

documents. Sanctions Motion, p. 5.

Subsequent to the Debtor's refusal to provide the documents requested at his second and

third Section 341 meetings, he brought a Motion for Protective Order requesting that he be

granted leave to tender documents relating to the Loan Application and the Soad Wattar Trust

under a protective order to prevent disclosure of the information to his creditors and the

creditors' attorneys. *See* Bankr. 09-05868, Dkt. 23. The Debtor's Motion for Protective Order

was denied on June 11, 2009. *See* Bankr. 09-05868, Dkt. 25. Despite this Court's denial of

Debtor's Motion for Protective Order, the Debtor never tendered any documents relating to the

---

[5]

 Adv. 09-00770, Dkt. 59 is a supplemental filing by WIN; it is a transcript of the May 13, 2010 Rule 2004 Examination
of Richard Sharif (hereinafter "Transcript of Debtor's 2004 Examination").

Loan Application Assets, prompting the Trustee to file a Motion for Turnover of Documents from Richard Sharif to Horace Fox, Jr. ("Trustee's Motion") on October 20, 2009. *See* Bankr. 09-05868, Dkt. 40. This Court granted the Trustee's Motion on October 27, 2009. *See* Bankr. 09-05868, Dkt. 42. The Debtor, however, never complied with the Order to turn over the documents. *See* Sanctions Motion, p. 6.

WIN served the Debtor with production requests requiring the Debtor to provide documents relating to each of the Loan Application Assets. *See* Richard Sharif's Response to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 1, ¶¶ 15-22 ("Sharif Production Responses"). The Debtor failed to produce any documents relating to the Loan Application Assets.

### (3) Failure to Produce Richard Sharif Revocable Trust Related Documents

WIN asserted that the Debtor failed to disclose all requested information and documents relating to the Richard Sharif Revocable Trust despite interrogatory and production requests requiring him to do so.

The Debtor listed the Richard Sharif Revocable Trust in his Petition as property owned by another person that he controlled. *See* SOFA, ¶ 14. Based on this disclosure, WIN's interrogatories required the Debtor to identify each trust for the benefit of others that the Debtor had created or contributed to in the last five years. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, Hearing Ex. No. 4, p. 8, ¶ 11; Richard Sharif's Response as Trustee to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 2, p. 2, ¶ 11 ("Sharif Trustee Production Responses"). The Debtor responded "none" to the interrogatory, which is wholly inconsistent with his sworn bankruptcy schedules which list the Richard Sharif Revocable Trust on page 27. *See* Sharif Individual Interrog. Answers, p. 8, ¶ 11; Hearing Transcript, p. 9; SOFA ¶ 14.

WIN also asked that the Debtor produce all documents referencing or evidencing any assets held in trust to which the Debtor had a claim or interest. Sharif Production Responses, ¶ 42; Sharif Trustee Production Responses, ¶ 42. Again, despite Debtor's acknowledgment of having an interest in the Richard Sharif Revocable Trust (*See* SOFA, ¶ 14), he failed to produce

any documents relating to that trust. Hearing Transcript, pp. 9-11.

### (4) Failure to Produce Bank Statements and Financial Records

WIN asserted that the Debtor failed to produce bank statements and records relating to financial transactions involving the Debtor individually and as Trustee of the Soad Wattar Trust. WIN asked the Debtor to produce documents evidencing any account at financial institutions in which the Debtor was a designated signatory. Sharif Trustee Production Responses, p. 7, ¶ 44; Sharif Production Responses, pp. 7-8, ¶ 44. The Debtor failed to produce any documents responsive to these requests and instead listed the names and addresses of three financial institutions with corresponding account numbers. *See* Sharif Production Responses, p. 7, ¶ 44; Sharif Trustee Production Responses, p. 7, ¶ 44; Hearing Transcript, p. 11.

WIN also asked the Debtor to produce documents relating to any checking, savings, money market, passbook, demand deposit, negotiable order of withdrawal or trust account in which the Debtor had an interest. Sharif Trustee Production Responses, p. 8, ¶ 49; Sharif Production Responses, p. 8, ¶ 49. The Debtor failed to produce any documents responsive to this request, even though he had a personal account at JP Morgan Chase Bank; he acknowledged his lack of compliance during his Rule 2004 examination. Transcript of Debtor's 2004 Examination, p. 166. Instead, the Debtor responded to the requests by stating that any such documents were available at JP Morgan Chase Bank and provided account numbers. Sharif Trustee Production Responses, p. 8, ¶ 49; Hearing Transcript, pp. 11-12.

During their investigation, WIN independently discovered numerous documents that the Debtor failed to produce relating to assets held at AG Edwards in which the Debtor had an interest. They discovered account statements from AG Edwards for September and October of 2003 in the name of Soad Wattar, the Debtor's mother, and Richard Sharif as joint tenants. A.G. Edwards & Sons, Inc. Account Statements, Ex. No. 61 to Rule 2004 Examination of Debtor ("AG Statements"). The account statements revealed that approximately $752,050 in assets were held by AG Edwards in the joint tenancy of Soad Wattar and Richard Sharif. *See* AG Edward Statements. At his Rule 2004 examination the Debtor admitted that while he had documents relating to this AG Edwards account, he did not produce them. Transcript of Debtor's Rule 2004 Examination, pp. 172-173. The Debtor also stated that the assets in the AG Edwards account

-13-

were transferred to Wachovia Bank, but the Debtor failed to produce any transfer documents.
Transcript of Debtor's Rule 2004 Examination, p. 174. The Debtor also failed to disclose the
AG Edwards account in his bankruptcy Petition. The Debtor failed to produce information or
documentation regarding the AG Edwards account or its disposition despite interrogatories and
requests for production requiring him to produce all documents evidencing any interest he had in
any account after 2002 along with all documents showing the disposition or transfer of such
accounts after 2002. *See* Sharif Trustee Production Responses, p. 8, ¶ 49; Sharif Individual
Interrog. Answers, nos. 6-7; Hearing Transcript, pp.16-18.

WIN also discovered a variable annuity held at AG Edwards for the benefit of the Debtor
and his sister, Ragda Sharifeh, as joint tenants. They also found an AG Edwards statement
showing the TransAmerica Triple Advantage VA with a valuation of $39,248. AG Statements,
pp. AGE 0180-0181. Once again, the Debtor failed to provide information or produce
documentation relating to this annuity despite receiving interrogatories and document requests
requiring him to do so. Hearing Transcript, p. 22. At his Rule 2004 examination the Debtor was
unable to say where the $39,248 was. Transcript of Debtor's Rule 2004 Examination, pp. 178-
179.

WIN estimated that approximately $912,000 in assets were held at AG Edwards for the
benefit of the Debtor individually or jointly with his mother and his sister, yet the Debtor
provided no information or documentation regarding those accounts. Hearing Transcript, p. 24.

The Debtor also failed to provide any information or documentation evidencing other
accounts that he admitted to having an interest in at his Rule 2004 Examination. Hearing
Transcript, pp. 26-31. The Debtor admitted to holding the following accounts but produced no
documentation or information about the accounts in response to discovery requests: Soad Wattar
Living Trust account at Banco Popular; account at Raymond Jones; and a checking account at JP
Morgan Chase Bank. During his Rule 2004 examination, the Debtor admitted his failure to
produce the requested documents:

1)    Q: Sir, I'm just asking. You have not given me one single account
      statement for the Trust [at Banco Popular], have you?
      A: Account statement?

-14-

Q:  Yes.

A:  You mean, from like the investment firm?

Q:  Yes.

A:  There are boxes available.  These are, you know --

Q:  You have not provided us a single account statement, have you?

A:  I did not.  Again, I did not know that you needed that one.  If not, it's available.

2)    Q:  Where are there accounts besides Banco Popular?

A:  Banco Popular, absolutely, and whatever you need from Wells Fargo, I'll provide you with it.

Q:  I'm just asking for the names of the companies – Wells Fargo and who else?

A:  Wells Fargo, Wachovia, which is now Wells Fargo, has a mortgage payment for the house because it comes out of the mother's living Trust every month.  This is two – three.  What else?

Q:  Any investment firms like Smith Barney or Morgan Stanley?  I'm just throwing out people that I can think of.

A: There is one she [Debtor's mother] has an account with Raymond James, since 2005, one account.  I just remembered this.  I believe that's all I know right now.

3)    Q:  I'm asking why have you not produced to me the JP Morgan Chase account statements as requested in discovery?

A:  Counsel, I did list the only account that I have.  I'm sorry if I didn't produce the statement available.  I know there's a question, Counselor, that I need to reproduce because my lawyer would have told me to produce it.  I went by the name of the bank and my account but –

Transcript of Debtor's 2004 Examination, pp. 107-109; 143-144.  WIN argued that even though the Debtor stated during the Rule 2004 Examination that he could produce documents relating to the undisclosed accounts, as shown above, the Debtor was grossly out of compliance with his

-15-

discovery obligations despite the April 21, 2010 Order compelling him to comply with all outstanding discovery requests.

### (5) Failure to Produce Conveyance, Disposal, or Transfer of Asset Documents

WIN asserted, and the Debtor's answers to interrogatories show, that the Debtor failed to provide information relating to the conveyance, disposal, or transfer of assets in which the Debtor once claimed an interest. *See* Sharif Individual Interrog. Answers and Sharif Trustee Interrog. Answers, pp. 6-7, ¶¶ 6-8. At his Rule 2004 examination the Debtor admitted that he had once owned a 10% interest in the Logan Square business and had relinquished that interest. *See* Transcript of Debtor's Rule 2004 Examination, p. 95. However, the Debtor never provided any information or documentation evidencing the disposition of his interest in Logan Square; he admitted the same at the Rule 2004 examination despite having received WIN's interrogatories and requests for production inquiring about the disposition of his interest in Logan Square. *See* Transcript of Debtor's Rule 2004 Examination, p. 96; Sharif Individual Interrog. Answers, p. 7, ¶¶ 6-8.

At his 2004 examination the Debtor denied ever having an ownership interest in Sharif Pharmacy. Transcript of Debtor's Rule 2004 Examination, p. 61. However, he produced a 2002 federal income tax return which stated that he owned 100% owner of Sharif Pharmacy. *See* Transcript of Debtor's Rule 2004 Examination, p. 68. After the Debtor was confronted with the inconsistency between his testimony and his 2002 federal income tax return he stated that he does not examine his tax returns, his accountant does and he does not understand them. *Id.* at 69. The Debtor admitted having a 10% ownership interest in the Sharif Pharmacy and that the 100% ownership interest listed in his tax return was an error. *Id.* at 68. Whether the Debtor's ownership interest in Sharif Pharmacy was 10% or 100%, he produced no documentation evidencing the transfer of his interest in the pharmacy and acknowledged his failure to comply during the Rule 2004 examination. *See* Transcript of Debtor's Rule 2004 Examination, p. 72. The Debtor also admitted that he asked Sharif Pharmacy's office manager for responsive documents but did not undertake any efforts to obtain the documents. *Id.* at 87.

### (6) Failure to Produce Corporate Records

WIN asserted that the Debtor failed to produce corporate records for Sharif Pharmacy and the Hermosa Medical Center after 2006. Their discovery requests sought production of corporate records for the Sharif Pharmacy and the Hermosa Medical Center. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2, ¶¶ 7-8; Sharif Production Responses, Hearing Ex. No. 1, ¶¶ 7-8. The Debtor never produced the requested documents even after entry of the April 21, 2010 Order compelling him to comply with all outstanding discovery requests. Hearing Transcript, pp. 34-36.

### (7) Failure to Produce Documents Evidencing the Formation and Funding of the Soad Wattar Trust

WIN asserted that the Debtor failed to produce documents relating to the formation and funding of the Soad Wattar Trust. Hearing Transcript, p. 38. They argued that those documents were critical because nearly everything the Debtor owned was in the Soad Wattar Trust.

The requests for production required the Debtor to produce documents establishing and funding the Soad Wattar Trust, evidencing the transfer of assets into the Trust, and all other documents related to assets held in the Trust. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2, ¶¶ 27, 45-46, 49-50; Hearing Transcript, pp. 38-41. WIN specifically requested all deeds, records, titles, or other documents that related to assets in the name of the Soad Wattar Trust after 2002. The Debtor alleged that the Trust was funded with a $2,000,000 inheritance from his deceased father that came from an international wire transfer from Beirut, Lebanon through a financial entity in Dubai. Transcript of Debtor's Rule 2004 Examination, p. 109. However, the Debtor also admitted that he did not have any of the documents evidencing the wire transfers in his possession and that he had not produced such documents. Transcript of Debtor's Rule 2004 Examination, pp. 110-111. The Debtor also admitted that except for one asset, the Revere House, he failed to produce any documents evidencing transfers of assets into the Soad Wattar Trust since 1992. *Id.* at 104-105. In summary, Debtor failed to produce documentation of the origin of the money and property in the Soad Wattar Trust.

WIN also requested the 1992 Trust instrument that purportedly established the Soad Wattar Trust. Sharif's Trustee Responses at ¶ 11 concern amendments to the Soad Wattar Trust

-17-

and not the original document that established the Trust. Debtor admitted in his Rule 2004 examination that he failed to produce the original Trust instrument. Transcript of Debtor's Rule 2004 Examination, p. 101.

### (8) Failure to Produce Signed Tax Returns and Documents
### Used to Prepare Debtor's Tax Returns

WIN argued that the Debtor failed to produce signed tax returns or any of the underlying source documents used to prepare tax returns. Hearing Transcript, p. 44. While they received some federal and state tax returns from 2003-2008 from the Debtor, not one of the tax returns received was signed. *See* Hearing Transcript, p. 44; Sharif Production Responses, ¶ 10; Sharif Trustee Production Responses, ¶ 10. When the Debtor was questioned about the unsigned tax returns at his Rule 2004 examination, he stated that he was 100% sure that the tax returns that went to the government were signed, but he never produced signed tax returns. *See* Transcript of Debtor's Rule 2004 Examination, pp. 130-131. The Debtor also stated that he did not attempt to obtain signed tax returns from the IRS. *Id.* at 130.

The Debtor also failed to produce the source documents used to prepare his tax returns; he admitted this at his 2004 examination. *Id.* at 135.

### (9) Failure to Produce Documents Evidencing Debts Owed to
### Debtor's Family Members

WIN argued that the Debtor failed to produce any documents underlying the debts that he owed to his family members. *See* Sharif Production Responses and Sharif Trustee Production Responses at ¶¶ 34-37; Hearing Transcript, p. 54. The Debtor's bankruptcy petition listed several debts owed to his relatives: (1) $49,000 to Haifa Kaj, the Debtor's sister; (2) $39,000 to Jamal Sharif, the Debtor's brother; (3) $93,000 to Ragda Sharifeh, the Debtor's sister and (4) $90,000 to Soad Wattar, the Debtor's mother. *See* Petition, Schedule F, p. 17; Hearing Transcript, p. 55. Based on these disclosures, WIN requested that the Debtor produce documents referencing or evidencing the debts owed to the above family members. *See* Sharif Production Responses, Hearing Ex. No. 1 at ¶¶ 34-37; Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 34-37. The Debtor failed to produce any documents evidencing the amounts he owed to his relatives and asserted that those debts were created via oral agreements. *See* Sharif

Production Responses, ¶¶ 34-37; Hearing Transcript, p. 56. WIN contended, and the Court

agreed, that it was hard to believe that $271,000 was transferred as loans to the Debtor when no

documents such as wire transfer forms, bank statements, canceled checks, emails, enclosure

letters, etc. were created in doing so.

### b. The Debtor's Response

In response to the assertions regarding the Debtor's non-compliance, his attorney argued

that while there may have been some deficiencies in his discovery responses, the Debtor made a

good faith effort to comply with all of the discovery requests. Hearing Transcript, pp. 75-76. His

attorney pointed out that the Debtor was initially unable to meet the discovery deadlines because

he was in Syria attending to his ill mother who subsequently passed away. Hearing Transcript, p.

68. When the Court requested proof of the Debtor's whereabouts, his attorney produced airline

tickets to Syria and a copy of the mother's death certificates. *Id.* This Court, however, did not

believe that the Debtor made a serious effort to comply with the discovery requests before or

after his mother's death.

The Debtor's attorney argued that WIN's counsel did not call him to object to the

sufficiency of the discovery responses before filing the motion for sanctions. Hearing Transcript,

pp. 68-69. The Debtor's attorney also asserted that the supplement to the Sanctions Motion did

not contain a certification, required by Northern District of Illinois Local Rule 37.2, that the

movant consulted with opposing counsel regarding the discovery defects before filing a motion

pursuant to Federal Rule of Civil Procedure 26. Hearing Transcript, pp. 77-78. The Court noted

that a phone call would have been futile because the Debtor was so grossly out of compliance

with his discovery obligations. The Court also noted that the Original Sanctions Motion included

the required certification. *See* Sanctions Motion, p. 12.

The Debtor's attorney contended that he produced some documents after the Debtor's

2004 examination. He argued that he surmised at the Debtor's Rule 2004 examination that WIN

wanted more documents than they had received based on the questions that were posed to the

Debtor. The Debtor's attorney took it upon himself to produce bank statements from several

financial institutions relating to the Soad Wattar Trust, the Debtor's personal bank accounts and

the Sharif Pharmacy. Hearing Transcript, pp. 70-71. Debtor's attorney did not specify which

documents were produced after the 2004 examination so it was unclear what was contained in the late production, whether the documents were responsive to the requests, and why they were not produced sooner. The Court noted that the Debtor's Rule 2004 examination took place on May 13, 2010, so any documents produced after that were well outside of the April 28, 2010 deadline the Court gave the Debtor to complete all outstanding discovery and prevented WIN from questioning the Debtor about them at the Rule 2004 examination.

### c. Entry of Default Judgment

Based on the aforementioned discovery violations, the Court found that it was apparent that the Debtor failed to comply with most of the discovery requests. Moreover, the Court found that the Debtor's disclosures were inadequate given the Order compelling the Debtor to comply with all outstanding discovery by April 28, 2010. At no time did the Debtor contend that he needed more time to comply with discovery requests. The Debtor's lack of compliance evidenced a pattern that continued from the time of the underlying litigation in Texas.

As a sanction for the Debtor's failure to comply with discovery requests, this Court entered a default judgment in favor of WIN on all counts of the adversary complaint.

On Count I the Court found that the Debtor, with the intent to hinder, delay, or defraud WIN, transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the filing of the petition in violation of 11 U.S.C. § 727(a)(2). Specifically, the Debtor failed to produce any documents regarding the assets in the Loan Application, which the Debtor once claimed to own, or what property was transferred into the Soad Wattar Trust. In addition, the Debtor failed to produce any documents evidencing the formation or funding of the Soad Wattar Trust, or the disposition of the $5 Million in assets listed in the Loan Application. The Court found that the Debtor transferred, removed, destroyed, mutilated, or concealed the documents with the intent to hinder or delay WIN from discovering assets that could be used to satisfy the judgment entered in its favor by the Texas District Court.

On Count II the Court found that the Debtor concealed, destroyed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained in violation of 11 U.S.C. § 727(a)(3). Specifically, the Debtor failed to produce any documents showing how

his financial condition changed from when he claimed to own the Loan Application Assets.

On Count III the Court found that the Debtor knowingly and fraudulently made a false oath in connection with his bankruptcy case in violation of 11 U.S.C. §727(a)(4)(A). Specifically, the Debtor omitted material information from his bankruptcy schedules including the companies in which he was an officer within six years of the Petition date.

On Count IV the Court found that the Debtor failed to satisfactorily explain the loss of the assets listed in the Loan Application in violation of 11 U.S.C. § 727(a)(5).

On Count V the Court entered a declaratory judgment and found that the Soad Wattar Trust was the alter ego of the Debtor-Defendant Richard Sharif because he treated its assets as his own property and it would be unjust to allow him to maintain the Trust as a separate entity.

The Debtor was directed to reimburse WIN for attorneys' fees incurred to file and prosecute the Sanctions Motion and the supplemental sanctions motion filed after the Debtor's Rule 2004 Examination. The Debtor was also ordered to reimburse WIN for costs incurred in obtaining the Debtor's Rule 2004 examination, including court reporter and videographer costs.

WIN was allowed to submit an affidavit setting forth the attorneys' fees and costs associated with pursuing the Sanctions Motion and its supplement.

The default judgment order was entered on July 6, 2010 and provided that:

1. Richard Sharif was prohibited from opposing the claims in adversary proceeding 09 A 00770;

2. Richard Sharif's answer to the Amended Complaint was stricken;

3. Default was entered in favor of the Wellness Parties and against Richard Sharif on Counts I through V of the Amended Complaint in Adv. 09 A 00770; and

4. Richard Sharif was denied a discharge pursuant to 11 U.S.C. § 727(a)(2)-(a)(6).

Adv. 09-00770, Dkt. 68 (hereinafter the "July 6, 2010 Order"). Importantly for this proceeding, the order provided that the Soad Wattar Trust was the Debtor's alter ego, and thereby made its assets property of the Debtor's bankruptcy estate. The Debtor appealed this decision.

Prior to entry of the default judgment, Ragda Sharifeh filed an appearance in the adversary proceeding. Adv. 09-00770, Dkt. 43. However, her participation in the adversary proceeding was limited to responding to a motion seeking to hold her in contempt for failing to

respond to a subpoena and her own motion for Rule 9011 sanctions for having to defend against the motion for contempt. Adv. 09-00770, Dkt. 42; Dkt. 56.

### d. Motion of the Trustee for Turnover of Property of the Estate

Following entry of the July 6, 2010 Order, the Trustee brought a motion for turnover of assets pursuant to §§ 521 and 542 of the Bankruptcy Code. Bankr. 09-05868, Dkt. 59. The motion requested that the Court order the Debtor to account for and turnover the following as they relate to the Debtor, Soad Wattar, or the Soad Wattar Trust:

1) Life insurance policies issued by any Hartford insurance entity;

2) Wells Fargo or AG Edwards accounts;

3) Any other account with any financial institution; and

4) Any other assets that relates to the Soad Wattar Trust.

*Id.*

On August 5, 2010, the Court entered an order granting the Trustee's request for turnover. Bankr. 09-05868, Dkt. 63 (hereinafter the "August 5, 2010 Order"). Of note, the Order also provided that:

The Debtor, Ragda Sharifeh, and Haifa Kaj are ordered to cease any act to exercise any control over property of the estate and shall not perform any conduct that amounts to exercising any control over property of the estate, including any control or distribution over any life insurance policies issued by any Hartford insurance entity concerning or related to the Debtor or Soad Wattar or the Soad Wattar Revocable Living Trust and any Wells Fargo/AG Edwards accounts concerning or related to the Debtor or Soad Wattar or the Soad Wattar Revocable Living Trust[.]

*Id.* at ¶ D. The Order was not appealed but was the subject of a number of attempts to vacate which will be addressed herein.[6]

---

[6] The Court notes that the August 5, 2010 Order was never appealed and stands as a final order requiring the turnover of Soad Wattar Trust assets to the Trustee as said Trust assets are property of the Debtor's bankruptcy estate. By failing to timely appeal the August 5, 2010 Order, the parties have forfeited their right to do so. *See U.S. v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right[.]"); Fed. R. Bankr. P. 8002(a) ("[a] a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree

### e. Petition to Intervene on Behalf of the Soad Wattar
### Revocable Trust of 1992 and Ragda Sharifeh

On December 3, 2010, Ragda Sharifeh ("Ragda"), in her alleged capacity as the successor
Trustee and successor beneficiary of the Soad Wattar Trust, brought a motion in the main
bankruptcy case to intervene in regards to the July 6, 2010 Order and the August 5, 2010 Order.
Bankr. 09-05868, Dkt. 68. The motion made a number of allegations regarding both the Loan
Application and the Soad Wattar Trust, as discussed in Adversary Proceeding 09-00770.
Specifically:

> 1) That assets listed in the Loan Application were not the Debtor's property, but
> rather property which belonged to Ragda, Haifa Kaj, and the Soad Wattar Trust,
> and which she merely allowed the Debtor to claim as his own. *Id.* at ¶¶ 8-10.
>
> 2) That pursuant to an amendment dated October 8, 2007, Ragda became the
> successor beneficiary to the Soad Wattar Trust. *Id.* at ¶ 11.
>
> 3) That Ragda did not learn of the July 6, 2010 Order until July 28, 2010. *Id.* at
> ¶ 12.
>
> 4) That on July 19, 2010, Ragda and Haifa Kaj brought a lawsuit in state court
> seeking declaratory judgement and injunctive relief regarding the Soad Wattar
> Trust.[7] On July 21, 2010, the Circuit Court of Cook County entered a temporary
> restraining order prohibiting the Debtor from distributing assets of the Trust to his
> creditors. Shortly thereafter, the Debtor resigned as Trustee for the Trust and
> Ragda became the successor Trustee. *Id.* at ¶¶ 13-14.
>
> 5) The many attempts made by Ragda, between July 21, 2010 and August 4, 2010
> to gain access to the Soad Wattar Trust assets. *Id.* at ¶¶ 15-19.

---

being appealed.").

[7]
 Ragda and Haifa Kaj sued the Debtor in state court after this court found that the Soad Wattar Trust was the Debtor's
alter ego. They sought, amongst other things, a declaration that Ragda was the successor beneficiary of the Trust, and
an injunction requiring the Debtor to transfer all of the Trust's assets to Ragda and enjoining him from transferring assets
of the Trust to any of his creditors who filed claims against him in the bankruptcy case. *Ragda Sharifeh and Haifa Kaj
v. Richard Sharif,* 10 CH 30432 (filed in the Circuit Court of Cook County, Illinois, Chancery Division).

The motion was fully briefed. Bankr. 09-05868, Dkts. 68, 82, 84. On March 9, 2011, this Court ruled on the motion. Bankr. 09-05868, Dkt. 93. On March 10, 2011, the Court amended its earlier ruling. Bankr. 09-05868, Dkt. 94 (hereinafter the "March 10, 2011 Order").

The March 10, 2011 Order made a number of conclusions regarding the motion. First, relying on Rule 24 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7024, the Court held that Ragda could not intervene because she failed to do so in a timely manner. Specifically, the Court pointed out that she was listed as a creditor in the Debtor's Schedules and therefore should have known of the bankruptcy proceeding and subsequent adversary proceedings. Bankr. 09-05868, March 10, 2011 Order, p. 20. Furthermore, she was subpoenaed in Adversary Proceeding 09-00770 and had her deposition taken. *Id*. Moreover, she filed an appearance and other pleadings in the adversary proceeding. *Id*; *see also* Adv. 09-00770, Dkts. 42, 43, 56 (Ragda's response to a motion for sanctions, appearance in the adversary proceeding, and her motion for sanctions against WIN and its lawyers, respectively). All of this happened prior to entry of the July 6, 2010 Default Judgment Order. Seeking to intervene in that proceeding five months after its close was far too late.

The Court found that Ragda's proposition that she was the successor beneficiary to the Soad Wattar Trust was unsupported. Under the Illinois Trusts and Trustees Act, trustees, not beneficiaries, are vested with the power to "[t]o compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." *In re Schneider*, 417 B.R. 907, 913 (Bankr. N.D. Ill. 2009); 760 ILCS 5/4 and 5/4.11. The trustee, not the beneficiaries, has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust. *Godfrey v. Kamin*, No. 99 C 3230, 2000 WL 1847768, **3-4 (N.D. Ill. Dec. 14, 2000). Therefore, Ragda, as a beneficiary, had no standing to intervene on behalf of the Trust.

The Court also questioned whether Ragda was the "successor Trustee." Ragda failed to produce any evidence that she was the successor Trustee. Moreover, Ragda claimed to have become the successor Trustee after July 21, 2010 when the Debtor "resigned" as Trustee. However, as of July 6, 2010, the Trust no longer existed and the actions of both the Debtor and Ragda were meaningless. "It is well established that property of the Debtor in the possession, custody and control of [his] alter ego comprises property of the estate at the commencement of

-24-

the case, and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy the debts of the Debtor." *In re Sklarin*, 69 B.R. 949, 954 (Bankr. S.D. Fla. 1987) (quoting *In re F&C Services, Inc.*, 44 B.R. 863, 868 (S.D. Fla. 1984)). The July 6, 2010 Order made all of the Soad Wattar Trust assets property of the bankruptcy estate as of the filing of the bankruptcy case on February 24, 2009. It was not clear what Ragda became trustee of when she "succeeded" the Debtor as trustee.

This Court found that intervention, five months after the close of Adversary Proceeding 09-00770, would unduly delay and prejudice the adjudication of the original parties' rights and denied the motion.

### f. Motion to Vacate Judgment or Alternatively to Stay Enforcement of Judgment

Along with the previous motion, on December 3, 2010, Ragda, once again, in her capacity as the successor Trustee and individually as the successor beneficiary of the Soad Wattar Trust, brought a motion to either vacate the July 6, 2010 Order and the August 5, 2010 Order, or to stay the August 5, 2010 Order pending resolution of Adversary Proceeding 10-02239.[8] Bankr. 09-0868, Dkt. 67. Her request was predicated on the same factual basis as the previous motion and therefore does not bear repeating. The motion was also fully briefed. Bankr. 09-05868, Dkts. 67, 82, 84.

On March 14, 2011, this Court entered an order denying Ragda's motion. Bankr. 09-05868, Dkt. 95 (hereinafter "March 14, 2011 Order"). The Court repeated its findings from the March 10, 2011 Order as to Ragda being unable to sue in her capacity as a beneficiary of the Soad Wattar Trust and her alleged position as the Trust's successor trustee. *See Id.* at pp. 17-18. The Court also discussed both of Ragda's requests on their merits.

### g. Request to Stay Proceeding

Ragda asked the Court to stay enforcement of the August 5, 2010 Order pending the resolution of Adversary Proceeding 10-02239. While not a "stay pending appeal," the Court nonetheless applied appeal stay standards to her motion. The Court considered: "(1) the

---

[8]

Discussed herein.

movant's likelihood of success on the merits of the appeal; (2) whether the movant will suffer irreparable injury if a stay pending the appeal is not granted; (3) whether other parties will suffer substantial harm if the stay is issued; (4) whether there will be harm to the public interest if the stay is issued." *In re Maurice*, 167 B.R. 136, 138 (Bankr. N.D. Ill. 1994).

The Court determined that Ragda had not provided any legal or factual grounds on which it could find that she was likely to succeed in pursuing the claims in Adversary Proceeding 10-02239. Further, the Court found that she had failed to show that she was the appropriate party to seek relief on behalf of the Soad Wattar Trust. Therefore, the Court found that Ragda's unsupported allegations as to the likelihood of success and irreparable harm carried no weight.

On the other hand, the Court said that a stay of the August 5, 2010 Order would substantially harm WIN as it had been trying to enforce the $655,596.13 judgment of the District Court of the Northern District of Texas for many years in the face of appeals, the bankruptcy filing, and the Debtor's refusal to disclose information. Ragda could have litigated her concerns in this bankruptcy case before it was adjudicated while she was involved as a creditor and as a witness, but chose not to. Delaying the bankruptcy estate's progress, therefore, would have been unfair.

Staying enforcement of the August 5, 2010 Order would not have been in the public's interest. The public's interest lies in maintaining a transparent, efficient bankruptcy system. Delaying the disposition of the assets that the Trustee had on hand while a nonparty to the underlying matter pursued a separate lawsuit, was not in the public's interest. Therefore, Ragda's request to stay the proceeding was denied.

### h. Request to Vacate

Ragda's request to vacate the July 6, 2010 Order, and the subsequent August 5, 2010 Order, was equally unfounded. Rule 60 of the Federal Rules of Civil Procedure permits relief from judgements or orders based on:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud . . . misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an

earlier judgment that has been reversed or vacated; or applying it prospectively is

no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b) (made applicable to Bankruptcy Code cases by Fed. R. Bankr. P. 9024).

Ragda sought relief from the part of the July 6, 2010 Order that provided that the Soad

Wattar Trust was the Debtor's alter ego. She asserted that WIN did not have standing to pursue

an alter ego claim against Richard Sharif.[9] However, Federal Rule of Civil Procedure 60(b) does

not provide relief based on allegations of legal error. *In re Hunt*, 293 B.R. 191, 194-195 (Bankr.

C.D. Ill. 2003). The Seventh Circuit has held that "Rule 60 is not a vehicle for correcting

putative legal errors in an underlying judgment. . . . The ground for setting aside a judgment

under Rule 60(b) must be something that could not have been used to obtain a reversal by means

of a direct appeal." *Curry v. Advocate Bethany Hospital*, 352 Fed. Appx. 88, 91 (7th Cir. 2009)

(internal citations omitted). Ragda did not show that the Orders at issue were entered as a result

of inadvertence, oversight, mistake, surprise, newly discovered evidence, fraud or other available

grounds. Her allegations of legal error should have been pursued on appeal. Moreover, by that

point the July 6, 2010 Order had been appealed and this Court did not have jurisdiction to act

upon it. Ragda's motion was denied.

### D. *Sharifeh v. Sharif*, 10-A-02239

On November 3, 2010, Ragda brought her first adversary proceeding in this bankruptcy

case. Ragda brought the adversary proceeding "in her capacity as Successor Trustee and

Successor Beneficiary of the Soad Wattar Revocable Living Trust" and against "Richard Sharif

in his capacity as former Trustee of the Soad Wattar Revocable Living Trust and Horace Fox, Jr.,

---

[9]

That claim was Count V of Adversary Proceeding 09-00770. This Court's ruling on that claim was affirmed by the
District Court for the Northern District of Illinois on February 10, 2012, and by the Seventh Circuit Court of Appeals
on August 4, 2015.

in his capacity as the U.S. Trustee of Richard Sharif's bankruptcy estate."[10] Adv. 10-02239, Dkt.
1, p. 1.

The two-count complaint alleged that the Trustee wrongfully converted the property of
the Soad Wattar Trust, requested the turnover of the Trust property and a declaration that the
property in the Soad Wattar Trust was not property of the bankruptcy estate. She alleged that she
was the legal and equitable owner of the Trust assets, and that Ragda, Haifa Kaj, Hana Sharifeh
and Raja Sharifeh were the beneficiaries of Hartford Life and Annuity Company Life Insurance
Policy No. VL 9319377 entitled to the benefits of said policy. *Id.*

On August 30, 2011, this Court granted Trustee Fox's Motion to Dismiss Adversary
Proceeding 10-02239. Adv. 10-02239, Dkt. 61. Based on the rulings in the March 10, 2011
Order and the March 14, 2011 Order, the Court once again reiterated its concern with Ragda's
standing to proceed as the Trust's successor beneficiary or successor trustee. The Court then
addressed the specific counts alleged in the complaint.

### 1. Count I: Wrongful Conversion

After determining that Ragda was neither the successor beneficiary with capacity to sue
nor the successor trustee of the Soad Wattar Trust, this Court dismissed the complaint. Count I,
which alleged wrongful conversion, was dismissed for two reasons: "(1) as an alleged beneficiary
she has no authority to sue Trustee Fox under Illinois law and (2) she alleges that she became the
Trust's Trustee after July 20, 2010, after it ceased to exist and its assets had been declared to be
property of Debtor Richard Sharif's bankruptcy estate." Adv. 10-02239, Dkt. 61, p. 23.
Moreover, the Court found a number of allegations which were completely unsubstantiated:

### 2. Allegation that Trustee Fox knew that the WIN Plaintiffs did not have standing to raise an alter ego claim:

Ragda appeared to suggest that Trustee Fox took possession of certain assets based on
information gained from third parties that he should not have believed. However, he gained
possession of certain assets pursuant to the July 6, 2010 Order after the Court gave all parties

---

[10] Ragda mistakenly describes Mr. Fox as the U.S. Trustee when he is the Chapter 7 Trustee for the Debtor's
bankruptcy estate. Ragda does this numerous times in various motions and pleadings. The Court points this out to
avoid confusion and will continue to refer to Mr. Fox as the Chapter 7 Trustee or "the Trustee."

concerned an unlimited opportunity to contest WIN's allegations about the Debtor's refusal to satisfy discovery obligations.

### 3. Allegation that Debtor Richard Sharif produced documentation related to the Soad Wattar Trust in compliance with an October 27, 2009 order:

This factual allegation was unsupported. Specifically, Ragda failed to identify what was produced, whether the production was timely and complete, and whether the alleged production preceded depositions and Federal Rule of Bankruptcy Procedure 2004 examinations of the Debtor and others involved in the Trust's formation and funding. Regardless of what Ragda tried to argue, the Court had already ruled that the Debtor failed to produce many items of discovery, and it was this failure that led to the entry of the July 6, 2010 Order against him in Adversary Proceeding 09-00770, which, on February 10, 2012, the District Court affirmed on appeal and the Seventh Circuit ultimately affirmed on August 4, 2015.

### 4. Allegation that Trustee Fox knew that the Soad Wattar Trust was valid under Illinois law:

The Trustee is not responsible for determining the validity of the Trust. This Court had to make that determination on the record after all parties were accorded appropriate access to discovery. The Debtor failed to disclose records of its formation and operation.

### 5. Allegation that Trustee Fox knew that the Soad Wattar Revocable Living Trust was not Debtor Richard Sharif's alter ego based on records turned over by Attorney William Stevens:

The Trustee could not be held responsible for knowing anything about the alter ego status of the Trust because the Debtor unreasonably and illegally denied him and WIN access to the records of the Trust's formation, operation, and funding. In addition, this allegation failed because it did not identify what records it referred to. In any event, the production of records was insufficient; WIN and the Trustee had the right to examine and review all pertinent information. The Debtor's lack of cooperation prevented review of the Trust and his financial circumstances.

**6. Allegation that Trustee Fox knew of an October 7, 2007 amendment to the Soad Wattar Revocable Living Trust which named Ragda Sharifeh as its successor beneficiary:**

The Trustee could not be held responsible for the existence of documents under the circumstances herein where he was unreasonably denied access to the records of the Trust's formation and operation in time to question involved parties about them.

**7. Allegation that Ragda Sharifeh produced the October 8, 2007 amendment at her deposition on June 10, 2010:**

Ragda did not pinpoint where in her deposition such disclosure could be found.  In any event, this allegation did not indicate that if the alleged disclosure was made, that it was timely in terms of allowing WIN and the Trustee to investigate it in relation to the formation and operation of the Soad Wattar Trust.

**8. Allegation that Trustee Fox advised Wells Fargo Financial Advisors that Richard Sharif's bankruptcy estate owned the funds being held in the name of the Soad Wattar Trust:**

The allegation was deficient in that it did not allege when such a communication was made.  Moreover, that statement could have been made validly after the Court entered the July 6, 2010 Order.

**9. Allegation that Trustee Fox incorrectly stated on July 27, 2010 in a motion that the Debtor produced an amendment to the Soad Wattar Trust:**

The allegation did not point to which motion it concerns.  In addition, the allegation did not explain what was incorrect about the statement.

**10. Allegation that Trustee Fox's statement was incorrect because Richard Sharif did not produce the original Soad Wattar Trust because it was not in his possession and that Richard Sharif only produced copies of amendments date [sic] May 15, 1996; April 26, 2007 and October 7, 2007:**

The allegation did not indicate when the Debtor did not have possession of the original Soad Wattar Trust documents.  Nor did the allegation indicate what amendments it refers to.

**11. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the Soad Wattar Trust when he sought turnover of the assets in a motion on July 27, 2010:**

By July 27, 2010 Trustee Fox may have acted pursuant to this Court's July 6, 2010 Order that declared that the assets in question were property of the bankruptcy estate.

**12. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the assets on August 4, 2010 when he caused his attorney to obtain an order:**

The Trustee and his attorney may have been acting pursuant to the July 6, 2010 Order when turnover of assets was sought in August of 2010.

**13. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of assets of the Soad Wattar Trust which were held by Wells Fargo Financial prior to July 6, 2010:**

It was of no importance whether Ragda was a successor beneficiary before or after July 6, 2010, as the law is that a trust beneficiary generally does not have standing to sue third parties absent the wrongful refusal of a trustee to do so. In this matter, where the Trustee is being sued, he was not refusing to pursue a cause of action on behalf of the Trust. The exception to the prohibition against a beneficiary being allowed to sue on behalf of a trust does not apply herein because to date Ragda, the alleged beneficiary, has not complained about her trustee's conduct. *In re Stoll*, 252 B.R. 492, 495 (B.A.P. 9th Cir. 2000); *Saks v. Damon Raike & Co.*, 8 Cal.Rptr.2d 869, 874-75 (Ct. App. 1992). Moreover, "[a]bsent special circumstances, an action prosecuted for the benefit of a Trust estate by a person other than the Trustee is not brought in the name of a real party in interest and is demurrable." *Powers v. Ashton*, 118 Cal.Rptr. 729, 787 (Ct. App. 1975). The Court noted that Ragda did not allege in her Adversary Complaint that the Debtor, as Trustee of the Soad Wattar Trust, did anything improper. He was named in the caption of her Adversary Complaint as a defendant; however, no allegations were made against him. Her failure to complain may have reflected that she was satisfied with his conduct in refusing to cooperate with discovery in both the bankruptcy case and WIN's Adversary Proceeding. Ragda could have, but did not, seek leave to intervene in the bankruptcy case or WIN's Adversary

-31-

Proceeding before those matters were adjudicated.

**14. Allegation that Trustee Fox did not serve Plaintiff Ragda Sharifeh with notice that he had filed pleadings to have the assets in the Soad Wattar Revocable Living Trust turned over to him:**

The Trustee owed notice to the parties involved in the litigation in issue. As a beneficiary, Ragda was not a party; her trustee, the Debtor, represented the Soad Wattar Trust. In addition, Ragda did not indicate with specificity what pleading this allegation concerns. The Court noted that WIN requested that the Trust's assets be declared the Debtor's alter ego in Count V of the Amended Complaint in Adversary Proceeding 09-00770. Moreover, as discussed earlier, Ragda clearly knew of Adversary Proceeding 09-00770 as she was involved therein as a deposed witness and filed pleadings therein at Dkts. 42, 43, and 56.

**15. Allegation that Trustee Fox unconstitutionally and unlawfully disentitled Ragda Sharifeh of the assets of the Soad Wattar Trust:**

The Trustee had a Court Order allowing him to take possession of the assets in question. He did not act without constitutional and legal right. The Court did not accept as true those unsupported legal conclusions.

Ragda failed to cite any statute or other legal authority in support of her claim that the Trustee converted the Trust assets when he took possession of them as allowed by the July 6, 2010 Order and the August 5, 2010 Order (not appealed). To support an allegation of conversion, Ragda has to plead and prove that "(1) [she] has a right to the property; (2) [she] has an absolute and unconditional right to the immediate possession of the property; (3) [she] made a demand for possession and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Brodsky v. HumanaDental Insurance Co.,* No. 10-C-3233, 2011 WL 529302, * 6 (N.D. Ill. February 8, 2011) (quoting *Cirrincione v. Johnson,* 703 N.E.2d 67, 70 (Ill. 1998)).

After accepting all allegations of the complaint as true and construing the allegations in the light most favorable to Ragda, the Court found that her claim for conversion failed. Nowhere in the Adversary Complaint did Ragda allege that the Trustee's conduct was unauthorized. Rather, the Trustee's acts in taking possession of the Trust assets were authorized by the July 6,

-32-

2010 Order and the August 5, 2010 Order (not appealed).

Her allegations that the Trustee knew that the Soad Wattar Trust was valid fails to account for the fact that both the Trustee and WIN sought information about the formation and operation of the Trust to no avail. The Debtor's lack of cooperation is documented herein. Ragda should not have expected legal professionals to rely on her bald assertions that a trust exists, that she is the trust's beneficiary or that she is the Trust's trustee.

Moreover, Ragda's allegation that the Trustee knew that the Soad Wattar Trust was not the Debtor's alter ego failed to account for the fact that when it was convenient and in his interest to do so, with Ragda's permission or at her direction, the Debtor claimed the Trust's assets as his own. As discussed in the next section, Ragda's testimony in this regard was noted. In this adversary proceeding, however, Ragda was trying to assert otherwise.

Moreover, as discussed earlier, even if Ragda was a successor beneficiary of the Soad Wattar Trust, she did not have standing to sue Trustee Fox for conversion. *See* 760 ILCS 5/4.11; *see also In re Schneider,* 417 B.R. at 913. The Trustee did not err if he did not notify Ragda when he filed pleadings in the bankruptcy court to have the assets in the Soad Wattar Trust turned over to him. As a beneficiary, she was not the real party in interest regarding the Trust and there is nothing unconstitutional about a bankruptcy Trustee's inquiry about assets being held by a debtor and seeking turnover of them.

The Court noted that before the Trust's assets were declared to be the Debtor's alter ego on July 6, 2010, Ragda appeared in the WIN Adversary Proceeding on May 14, 2010. *See* Adv. 09-00770, Dkt. 56. While she did not have authority to sue on behalf of the Trust, since she was not its Trustee, she had an unlimited opportunity to inform herself of the litigation involving the efforts of WIN and of the Trustee to gain access to the assets of the Soad Wattar Trust. She could have sought to intervene at that time to argue that the Debtor was not protecting her interests as a beneficiary; she could have asked for leave to litigate the issues involved.

Ragda could have asked, on May 14, 2010, to be allowed to sue on behalf of the Trust.[11]

---

[11]

Ragda did not try to intervene in the bankruptcy case until December 3, 2010, when she filed a motion to intervene in the main case. *See* Bankr. 09-05868, Dkt. 68. This was long after the resolution of the issues in dispute on May 14, 2010, the date when she first appeared before this Court and sought court action regarding WIN's subpoena. *See* Adv.

Had she intervened and complained about the Debtor's conduct as Trustee of the Soad Wattar
Trust before the July 6, 2010 Order was entered, she could have asserted the claims she sought to
proceed on in Adversary Proceeding 10-02239.  She could have provided the information that
WIN and the Trustee sought regarding the formation, funding, and operation of the Soad Wattar
Trust.

Regardless of what she could have done, at the very least she was on notice by May 14,
2010 that WIN was seeking to have the Trust declared to be the Debtor's alter ego.  The request
for that relief was made in Count V of the Amended Adversary Complaint which was filed on
November 3, 2009, eight months before her motion was filed on May 14, 2010.  Moreover,
Ragda was generally notified of the bankruptcy case as she was listed as an unsecured creditor on
the Debtor's Schedule F no later than February 28, 2009.

The Court dismissed Count I of Ragda's complaint with prejudice.  The Court found that
there was no set of facts on which Ragda Sharifeh could recover against the Trustee for
conversion.

### a. Count II: Declaratory Judgment

As with Count I, the Court accepted all of Ragda's allegations in Count II as true.  She,
essentially, requested that the Court enter declaratory judgment that the assets of the Soad Wattar
Trust were not property of the Debtor's estate.  She based this on five basic factual allegations:

> (1) an October 8, 2007 amendment to the Soad Wattar Revocable Living Trust that
> named Ragda Sharifeh as a successor beneficiary;

> (2) an October 8, 2007 amendment to that Trust that named Ragda Sharifeh, Haifa Kaj,
> Raja Sharifeh and Hana Sharifeh as successor beneficiaries of Hartford Life Insurance
> Policy VL 931377 which insured the life of Soad Watter, who passed away on March
> 17, 2010;

> (3) Debtor Richard Sharif resigned as Trustee of the Soad Wattar Revocable Living Trust
> on July 21, 2010;

> (4) that Ragda Sharifeh succeeded Richard Sharif as Trustee of the Soad Wattar

---

09-00770, Dkt. 42, 43, 56.

Revocable Living Trust; and

(5) that Richard Sharif did not personally own the assets of the Soad Wattar Revocable

Living Trust such that those assets did not become property of his bankruptcy estate.

*See* Adv.10-02239, Dkt. 61, p. 31. Once again, the Court found that even if accepted as true, the

facts did not support her request for a declaratory judgment.[12]

The Court noted that Ragda had testified that the Debtor acted as her agent in the conduct

of the Texas federal court litigation from which WIN's judgment originated. She directed the

Debtor to file the litigation, instructed him on how to proceed with the litigation, and instructed

him to represent to third parties that he owned the Loan Application Assets.[13] Bankr. 09-05868,

Dkt. 78, Ex. A, pp. 47-58 (Transcript of June 10, 2010 Deposition of Ragda Sharifeh). The

Court determined that she should not be allowed at one point in time to have the Debtor represent

that he owned the assets and then later claim the contrary, that she or the Trust owns the assets.

Specifically, at page 95 of the Ragda's deposition, she testified about telling the Debtor to

use property to buy a house for their mother:

Q: And again, it's checked self-employed. Were you aware that Richard

represented to Washington Mutual Bank that he, as self-employed, owned Logan

Square MRI Center, Sharif Pharmacy, and Hermosa Medical Center?

A. What I told him is to use the home address, the clinic address, in order to

secure the amount of money to be used to buy the house for mom.

*Id.* at p. 95.

On page 96 of the Deposition, Ragda testified that the assets were being held out by the

Debtor as his own although he was not the owner of them:

Q. So did you know that these assets, the company's and the real estate, were

---

[12]

The Court noted that in Count II, Ragda asked for relief on behalf of herself and Haifa Kaj, Raja Sharifeh, and Hana Sharifeh. The Court, however, declined to enter relief on behalf of those other individuals because Ragda failed to show that she represented said individuals. *See* Adv. 10-02239, Dkt. 61, p. 37. Moreover, Ragda asserted that she became the Trust's Trustee after July 21, 2010. That was fifteen days after the Trust's assets were ruled to be property of the Debtor's bankruptcy estate. Therefore, there was nothing for Ragda to become trustee of, negating her authority to sue herein on behalf of Haifa Kaj, Hana Sharifeh and Raja Sharifeh.

[13]

The same Loan Application as discussed in Adversary Proceeding 09-00770.

being held out by Richard as representing that he owned all of them?  He was

representing to the bank that he owned the real estate and the business?

A. He is, he is not the owner.  Otherwise his ex-wife would have cleaned him out,

but I told him that he could make that statement.

*Id.* at p. 96.

At page 39 of the Deposition, Ragda was asked whether she discussed the lawsuit herein

with the Debtor:

Q. Have you had any conversations with Richard Sharif regarding this, this

lawsuit that we're here on?

A. Just for a little bit.  I went over there, took my paperwork.  We are brother and

sister, we talk about some things.

*Id.* at p. 39.

At page 41 of the Deposition, Ragda was asked if she knew about the Debtor's

bankruptcy filing.  She answered:

A. We talked about how he doesn't have any money and that there is a lawsuit

against him and therefore he was forced to file for bankruptcy.  He doesn't talk

very much about his private business with me.

*Id.* at p. 41.

At pages 45-51 of the Deposition, Ragda was asked why she authorized the Debtor to

bring a lawsuit against WIN:

Q. Okay.  And why did you authorize Richard to bring a lawsuit?

A. He speaks English better than I do.  He is more familiar with the laws here.

That's why I am continuously asking for assistance because my English is not that

good.

Q. So did Richard enter into the deal that resulted in the lawsuit?

A. Maybe.

Q. And he entered into it on your behalf?

A. Yes.

Q. And did you instruct him to enter into the deal?

A. What I wanted, he did.

Q. But you can't remember what the lawsuit is about?

A. (In English) I don't remember.

Q. Do you know if it related to Wellness International Network?

A. Yes. . . .

Q. And did you direct Richard to file the lawsuit against Wellness International
Network?

A. Of course.

Q. And Richard was operating under your instructions when he filed the lawsuit
against Wellness?

A. Of course. . . .

A. I told him to do this because he lost the money. He lost my mother's money,
he lost the family money, and I was a partner.

Q. Partner in what?

A. And I had some financial interest in it, the money was lost, my mother's
money was lost, so we were asking for our rights.

Q. So when Richard, Richard sued Wellness, were you involved in that
litigation?

A. Mm-hmm.

Q. And you were–and was Richard acting as your agent? I mean was he acting
on your behalf?

A. Yes. . . .

Q. What do you mean as long as he puts you in the picture?

A. To tell me, to tell me what he was doing, how he was operating the business,
how he was managing, what's right, what's wrong, what we should do better next
time. He was my agent.[14]

*Id.* at pp. 45-51.

_____

[14] The court noted that principals are bound by their agent's authorized conduct. *See* Restatement (Third) of Agency §
1.01 (2006).

On page 116 of the Deposition, Ragda testified about the Loan Application Assets:

Q. So Richard Sharif did not commit fraud when he filled out the Washington

Mutual Loan Application, which is Exhibit 54?

A. We put down on the application that it is family ownership, family property,

and it was up to the bank to review or look into it or (sic), and make a decision.

*Id.* at 116.

In short, when it suited their interests, Ragda allowed the Debtor to claim ownership of certain assets.

The Court also noted that Ragda, like her brother, also refused to cooperate with the judicial process. At page 24 of her Deposition she was asked whether she complied with Request to Produce No. 4:

Q. See that request number 4. Do you have any documents, corporate documents,

for Sharif Pharmacy?

A. No.

Q. What did you do–well, did you make any attempt to look for any documents

relating to Sharif Pharmacy, Inc. in response to this request?

A. No.

*Id.* at p. 24.

Her conduct was as offensive as the conduct that the Fifth Circuit Court of Appeals condemned. Ragda wanted to rely on documents that purported to establish that she is a beneficiary and trustee of the Soad Wattar Trust while she refused to cooperate with the discovery process herein regarding those documents and issues.

The Court also pointed out that if Ragda wanted a declaratory judgment concerning the Trust, the record clearly showed that she had a declaration concerning her rights regarding the Soad Wattar Trust in the form of this Court's July 6, 2010 Order, March 10, 2011 Order, and March 14, 2011 Order. As a matter of law, because the facts alleged in the adversary did not support her request for relief, and because there were no set of facts on which Ragda could have been awarded the declaratory judgment she sought, this Court dismissed Count II with prejudice.

### b. Res Judicata and Collateral Estoppel

In the motion to dismiss, the Trustee also asked that Ragda's Adversary Proceeding be dismissed on res judicata and collateral estoppel grounds. Because each is an affirmative defense, the Trustee had the burden of proving each of its requirements. *Adair v. Sherman*, 230 F.3d. 890, 894 (7th Cir. 2000); *See* Fed. R. Bankr. P. 7008(c).

The Court found that the doctrine of res judicata was applicable[15] and barred Ragda's efforts to relitigate the issues in Adversary Proceeding 10-02239. She was bound by the July 6, 2010 Order because (1) that Order represented a final judgment on the merits rendered by a court of competent jurisdiction; (2) the claims raised in this subsequent Adversary Proceeding are identical to those raised in the pleadings that resulted in the entry of the July 6, 2010 Order: who should possess and have title to the assets of the Soad Wattar Trust and (3) the prior action involved the same parties or their privies: she was represented therein by the Debtor as the Trustee of the Soad Wattar Trust.

Res judicata also applied to bar the relitigation of the issues involved in Adversary Proceeding 10-02239 based on the March 10, 2011 Order, denying Ragda's Motion to Intervene, and the March 14, 2011 Order, denying Ragda's Motion to Vacate or Stay Proceeding. Those Orders were not appealed. The three requirements for res judicata had been met: the underlying motions were both filed on Ragda Sharifeh's behalf (same parties); they involved the ownership of the Trust's assets (same issues), and they were litigated to final unappealed orders (final judgment on the merits).

Furthermore, the Court found that the doctrine of collateral estoppel, or issue preclusion as it is formally known, also prevented Ragda from relitigating issues that she had previously

---

[15]

To establish res judicata, the Trustee needed to demonstrate that: 1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) the claims raised in the subsequent action were identical to those decided in the prior action and (3) the prior action involved the same parties or their privies. *Hoxworth v. Blinder*, 74 F.3d 205, 208 (10th Cir. 1996); *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 591 (7th Cir. 1993). Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

litigated and lost.[16] This Court determined that the July 6, 2010 Order; the March 10, 2011

Order, and the March 14, 2011 Order were prior adjudications of the identical issues herein

regarding whether Ragda was a beneficiary, what authority she possessed in that status to sue on

behalf of the Trust, and whether she became a successor Trustee after the Debtor resigned as

Trustee after the state court entered certain orders on July 21, 2010. The Court found that the

prior proceedings involved the same issues as Adversary Proceeding 10-02239.

      Ragda, as a beneficiary, was represented by the Debtor as the Trustee of the Soad Wattar

Trust throughout the prior matters which have to be given preclusive effect because she is bound,

as a matter of law, by the orders resolving the matters previously before this Court. In *Anderson*

*v. Elliott*, 1 Ill. App. 2d 448, 453 (1954), the Illinois Appellate Court held that a beneficiary is

bound by the outcome of a lawsuit involving the Trustee in which the Trustee was a party and

rendered actual and efficient protection, in the absence of a showing of bad faith on the Trustee's

part. That litigation did not concern the rights of the beneficiaries and the Trustee as between

themselves. As a beneficiary, Ragda is bound by the conduct of her representative, the Debtor,

the Trustee of the Soad Wattar Trust. She did not intervene to make a showing of bad faith. She

could have complained that his conduct amounted to a breach of fiduciary duties owed her, but

she did not complain even though she was involved in the matters long before the entry of the

Orders she wishes to avoid being bound by.

      The Court found that the issues in the March 10, 2011 Order and the March 14, 2011

Order determined the same issues that Ragda raised in the adversary proceeding, importantly

whether she could intervene on behalf of the Trust and who had legal and equitable title to the

Trust assets. The Court found that by filing the adversary proceeding, Ragda was asking this

Court to declare that "the assets are not property of Richard Sharif's bankruptcy estate," and that

"Ragda Sharifeh is the legal and equitable owner of the assets contained in the Soad Wattar

Revocable Living Trust" when those issues were clearly resolved by the Court's March 10, 2011

---

[16]

Collateral estoppel has four requirements: (1) the issue sought to be precluded must be the same issue involved in the prior proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) determination of the issue must have been essential to the final judgment in the earlier proceeding; and (4) the party against whom estoppel is asserted must have been fully represented in the prior proceeding. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

Order and March 14, 2011 Order.  Ragda did not appeal those orders.  Instead, she wants to relitigate them.

Next, the Court noted that the issues were actually litigated.  At the time, the Court did not rely on the default judgment order in Adversary Proceeding 09-00770 because of Seventh Circuit precedent holding that a default judgment is not a proper basis for collateral estoppel.  *See Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1992).[17]  Instead, the Court found that the March 10, 2011 Order and March 14, 2011 Order satisfied the actually litigated requirement.  Both of those matters were fully briefed by the parties, Bankr. 09-05968, Dkt. 78, 82, 84, the Court conducted a hearing on both motions on January 19, 2011, and subsequently issued lengthy memorandum opinions on each motion.  Bankr. 09-05868, Dkts. 67, 68.

Third, the 'essential to the adjudication' element was also met.  The issues raised in the adversary proceeding were equally essential to the Court's decisions in the March 10, 2011 Order and the March 14, 2011 Order.  Namely, in Ragda's Motions to Vacate and Intervene, she alleged, *inter alia*, that she was the successor trustee and successor beneficiary of the Soad Wattar Trust, requested a turnover of the assets held in the Trust, and asserted that she was entitled to the proceeds of the Trust.  The Court's disposal of those central issues concerning the Soad Watter Trust and its ownership was essential to rendering its decisions.

The final issue, whether Ragda Sharifeh was fully represented at each stage involving the

---

[17]

In making this ruling, the Court noted that the Third Circuit's decision in *In re Docteroff* could be a basis on which to establish the preclusive effect of the default judgment order.  The Third Circuit stated that: "We do not hesitate in holding that a party . . . who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application. . . . To hold otherwise would encourage behavior similar to [his] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." *In re Docteroff*, 133 F.3d 210, 213-214 (3d Cir. 1997).  The Court now notes that in *Herbstein v. Bruetman*, the Seventh Circuit "affirm[ed] for the reasons given by the district judge." 32 F. App'x 158 (7th Cir. 2002).  The district court, in turn, held that "where [a litigant] participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, [then] we agree with the Bankruptcy Court and the Third [Circuit] . . . that [the litigant] should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in [another court] due solely to [the litigant's] decisions. [The litigant] is not entitled to a second bite at the apple. The issue underlying the . . . default judgment were "actually litigated for purposed of the collateral estoppel doctrine."" *Herbstein v. Bruetman*, 266 B.R. 676, 685 (N.D. Ill. 2001) (citing *Docteroff*, 133 F.3d at 215).  Moreover, *Grip-Pak* described the general rule that a default judgment is not a basis for collateral estoppel, and not the exception to the rule as articulated in *Docteroff* and *Herbstein*.  Given the Seventh Circuit's explicit approval of the *Herbstein* court's rational, and *Herbstein*'s reliance on *Docteroff*, this Court can now say that the July 6, 2010 Order likewise could have formed a basis for the "actually litigated" component of collateral estoppel.

litigation of the Motion to Intervene and the Motion to Vacate was also met. Ragda was represented by her counsel of record herein, Mr. Garrett S. Reidy, in both the Motion to Intervene and the Motion to Vacate. *See* Bankr. 09-05868, Dkt. 66 (Garrett S. Reidy's Appearance). That attorney also represented her in Adversary Proceeding 10-02239.

Accordingly, the Court found that Ragda was bound by the July 6, 2010 Order based on the conduct of her Trustee, Debtor Richard Sharif. She was bound by the two adverse rulings regarding the two motions she independently filed in December, 2010. She could not be allowed to relitigate the same issues regarding her authority to sue on behalf of the Soad Wattar Trust as a successor beneficiary or as a successor Trustee, the issues she did not prevail on previously. The Court also held that Ragda was precluded from attempting to relitigate those matters based on the doctrines of res judicata and collateral estoppel.

### c. Dismissal

Having determined such, the Court stated that the adversary proceeding was nothing more than Ragda's attempt to get yet another bite at the apple. She had her first bite of the apple when she stayed on the sidelines while Adversary Proceeding 09-00770 was litigated. She got her second and third bites when she filed the motions to vacate and to intervene on December 3, 2010. Therefore, on August 30, 2011, the Court ordered:

> Count I is dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.
>
> Count I is dismissed with prejudice on res judicata grounds as Plaintiff Radga Sharifeh will not be allowed to relitigate the three previous orders.
>
> Count I is dismissed with prejudice on collateral estoppel grounds as to the March 10, 2011 and March 14, 2011 orders.
>
> Count II is dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.
>
> Count II is dismissed on res judicata grounds as Plaintiff Ragda Sharifeh will not be allowed to relitigate the three previous orders.
>
> Count II is dismissed on collateral estoppel grounds as to the March 10, 2011 and March 14, 2011 orders.

—

Adv. 10-02239, Dkt. 61, p. 42. Ragda appealed the ruling, and it was consolidated with a number of other matters in the District Court. On November 17, 2015, the District Court dismissed the appeal with prejudice. *See* Adv. 10-02239, Dkt. 75 (Order transmitted from District Court).

### E. *Sharifeh v. Fox*, 2012 WL 469980

On February 10, 2012, the district court ruled on the Debtor's appeal of the July 6, 2010 Order in Adversary Proceeding 09-00770. *See Sharifeh v. Fox*, No. 09 BK 05868, 2012 WL 469980, at *1 (N.D. Ill. Feb. 10, 2012).[18] In the district court, Ragda, for the first time, brought a motion to withdraw the reference of both adversaries.[19] The district court found that by participating in the case and not asking to withdraw the reference earlier, Ragda had waived her right to do so. *Id.* at *7. The district court then turned to the merits of the appeal.

First, the Debtor challenged the factual basis of this Court's order. The Debtor pointed to a motion for summary judgment that he filed in the adversary proceeding and its accompanying affidavits as a demonstration of how weak WIN's claim was. *Id.* at *7-8; *see also* Adv. 09-00770, Dkt. 65 (Debtor's Motion for Summary Judgment). However, the district court stated that the Debtor's arguments were unpersuasive because WIN never responded to the motion because it was stricken as moot following the entry of the July 6, 2010 Order. Moreover, the Debtor could not reasonably expect the district court "to accept his version of events, particularly as to the ownership of the Soad Wattar Trust, when he was defaulted for failing to provide discovery on this very matter." *Sharifeh v. Fox*, 2012 WL 469980, *8.

---

[18] The appeal also covered other matters. Particularly, the district court discussed the denial of Ragda's motion to intervene as well as her appeal of the dismissal of Adversary Proceeding 10-02239. That appeal, however, was before a different judge. That appeal was also stayed multiple times pending appeals in the Seventh Circuit and later in the Supreme Court. Following the Supreme Court's ruling, the district court requested that the parties submit briefs on how the case should proceed. Receiving none, the district court ultimately closed the case on November 17, 2015. *See* Adv. 10-02239, Dkt. 75 (district court order); *see generally Sharifeh v. Sharif*, 11 CV 07374 (N.D.Ill.).

[19] Bankruptcy cases are referred to bankruptcy judges for the same federal district pursuant to 28 U.S.C. § 157(a). Ragda argued that in light of the United States Supreme Court's ruling in *Stern v. Marshall*, "the Bankruptcy Court did not have the authority to enter final orders in either adversary proceeding. As such, she move[d] to withdraw the reference in both adversary proceedings pursuant to 28 U.S.C. § 157(d), which allows a district court to withdraw, in whole or in part, any case referred to the bankruptcy court "on timely motion of a party, for cause shown.'" *Sharifeh v. Fox*, 2012 WL 469980, at *5; *see also Stern v. Marshall*, 131 S.Ct. 2594 (2011).

Next, the Debtor argued, presumably, that "the Bankruptcy Court, and not [WIN], violated his right to due process when it granted the motion to compel although the parties had not conferred after [WIN] supplemented its motion." *Id*. The district noted that while "[i]t is true that the imposition of sanctions under [Fed. R. Civ. P.] 37 must follow notice and the opportunity to respond. . . . Here, however, Sharif received both." *Id*. (internal citations omitted). The district court pointed to this Court's April 21, 2010 order that specifically stated "in event Richard Sharif fails to comply by April 28, 2010, an order of default will be entered against him in the proceeding." 2012 WL 469980, *8; *see also* Adv. 09-00770, Dkt. 48. Moreover, the lengthy hearing on May 24, 2010 also gave the Debtor time to explain himself and to comply. The District Court ultimately agreed with this Court and stated that the Debtor "has shown, time and time again, an unwillingness to turn over information that would allow [WIN] to collect its judgment against him. There is no reason to think an additional phone call from [WIN's] counsel would have solved the problem. *Sharifeh v. Fox*, 2012 WL 46998, at *9.

The Debtor also argued that this Court abused its discretion, specifically claiming that this Court failed to provide any insight into the deficiencies of the Debtor's discovery responses. The District Court disagreed, and explained that "the 18-page order outlines numerous deficiencies in some detail." *Id*. Nor could the District Court accept that the Debtor made a good faith effort to comply with discovery, especially since "it is clear, based on [the Debtor's] own deposition, that he failed to turn over numerous categories of documents." *Id*. The District Court also found that this Court did not err in finding that the Debtor acted willfully and in bad faith because the Debtor "had not made a serious effort to comply with the discovery requests, either before or after his mother's death, that he was grossly out of compliance with his obligations, and that his lack of compliance was part of a pattern that had continued from the time of the Texas litigation." *Id*.

The Debtor argued that this Court abused its discretion in seizing the Soad Wattar Trust and turning it over to the Trustee. The Debtor claimed it was a real trust with real beneficiaries, i.e., Ragda. The District Court refused to rule on that issue as Ragda's appeal of Adversary Proceeding 10-02239 was before a different judge. The District Court affirmed this Court's rulings on February 12, 2012. The Debtor subsequently appealed to the Seventh Circuit.

-44-

### F. *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751

The Seventh Circuit decided the Debtor's appeal from the District Court on August 21, 2013. In its opinion, the Seventh Circuit did two things. It affirmed the District Court's judgment affirming this Court's entry of default judgment denying the discharge of the Debtor's debts (Counts I-IV of Adversary Complaint 09-0770). Importantly, the Seventh Circuit pointed out that "WIN satisfied its Rule 37(a) obligation to confer in good faith with [the Debtor] prior to filing its motion to compel with the bankruptcy court." *Wellness Int'l Netwrok, Ltd. v. Sharif*, 727 F.3d 751, 779-780 (7th Cir. 2013). The Debtor neither timely produced nor completely produced the documents requested. *Id.* at 780. Moreover, what was produced was deficient. *Id.* Furthermore, the Debtor did have notice and opportunity to be heard on the Motion for Sanctions. The Seventh Circuit even went so far as to state that "[t]his is *not* a case where the question of compliance is a close call." *Id.* (emphasis in original). The Seventh Circuit concluded "that the bankruptcy court's implied finding of willfulness, bad faith, or fault was not clearly erroneous and that it did not abuse its discretion in imposing the severe sanction of default." *Id.* at 781.

The Seventh Circuit vacated this Court's judgment as to Count V, the alter-ego claim, and remanded the case back to the District Court. It is crucial to understand that the Seventh Circuit did not do so on the merits. It determined that "WIN's alter-ego claim is a state-law claim between private parties that is wholly independent of federal bankruptcy law and is not resolved in the claims-allowance process." *Id.* at 775. This put it in the realm of the so-called *Stern* claims,[20] and as a result, this Court "lacked constitutional authority to enter final judgment on WIN's alter-ego claim." *Id.* at 775-76. Despite the fact that the Debtor did not raise this argument until his reply brief, the Seventh Circuit determined that the right to an Article III adjudication on such claims was not waivable and therefore this Court lacked authority to enter a final order on the alter-ego claim. *Id.* at 773.[21] This set the stage for WIN's appeal to the

---

[20]

*Stern* claims refer to claims which the bankruptcy court has statutory authority to decide under 28 U.S.C. § 157(b)(2), but lacks constitutional authority under Article III. *See Stern v. Marshall*, 131 S.Ct. 2594 (2011).

[21]

*Stern v. Marshall*, upon which the Debtor relied for his argument, was decided after entry of the July 6, 2010 Order. Despite that, the Debtor first made this argument in a supplemental brief in the district court case after briefing had been

Supreme Court.

### G. Second Motion to Vacate

Following the Debtor's success in the Seventh Circuit case, Ragda filed a second motion to vacate the August 5, 2010 Order on November 4, 2013. Bankr. 09-5868, Dkt. 151. She sought to vacate the order based on Rule 60(b)(5), which grants relief from a judgment if the judgment "is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). Because the Seventh Circuit vacated and remanded the July 6, 2010 Order as applied to the alter-ego claim, Ragda argued that the August 5, 2010 Order (for turn over) should also be vacated as it was based on the July 6, 2010 Order.

On December 12, 2013, this Court entered an Order on that Motion to Vacate in which it declined to rule on it. Bankr. 09-05868, Dkt. 155. The Court pointed out that Ragda misstated the legal effect of the Seventh Circuit ruling. The Seventh Circuit remanded the case to the District Court to enter findings consistent with its opinion. *Sharif*, 727 F.3d at 777. Specifically, the Seventh Circuit stated that:

> the district court shall first determine whether the alter-ego claim is a core or a noncore proceeding. If it concludes that it is a noncore proceeding, then the court may treat the bankruptcy court's order purporting to enter final judgment on the alter-ego claim as proposed findings of fact and conclusions of law to be reviewed de novo. *See* Fed. R. Bankr. P. 9033(d) . . . If, on the other hand, the court determines the alter-ego claim to be a core proceeding, then it shall order that the reference of the alter-ego claim to the bankruptcy court be withdrawn and conduct fresh discovery proceedings in the district court, though the district judge will have discretion in setting a more abbreviated schedule given that prior discovery has been had.

*Id.* No such ruling had been made by the District Court and no remand back to this Court had

---

closed. The district court stated that "*Stern* was decided by the United States Supreme Court on June 23, 2011, a month and a half before [the Debtor] field his appellate brief on August 9, 2011 in this case. [The Debtor] now seeks to raise this issue, for the first time, six month after *Stern*. The court finds this motion untimely, and therefore denies it." *Sharifeh*, 2012 WL 469980, at *10. Evidentially, the Debtor then waited until his reply brief before raising the same issue before the Seventh Circuit. The Seventh Circuit acknowledged that "[u]nder ordinary principles of waiver . . . [the Debtor's] argument is not preserved because he waited too long to assert it." *Sharif*, 727 F.3d at 767.

occurred. The Court, therefore, declined to rule on the motion as any order by this Court could have interfered with the District Court's authority or limited its options as to remedies. Bankr. 09-05868, Dkt. 155, p. 12.

### H. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932

The question before the Supreme Court was whether non-Article III courts, such as the bankruptcy courts, can adjudicate a claim for which litigants are constitutionally entitled to an Article III adjudication with the litigants' consent. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015). On May 26, 2015, the Supreme Court held that they can. *Id.*

The Supreme Court determined that "[a]djudication by consent is nothing new. Indeed, '[d]uring the early years of the Republic, federal courts, with the consent of the litigants, regularly referred adjudication of entire disputes to non-Article III referees, masters, or arbitrators, for entry of final judgment in accordance with the referee's report.'" *Id.* at 1942 (quoting Ralph Brubaker, *The Constitutionality of Litigant Consent to Non–Article III Bankruptcy Adjudications*, 32 Bankruptcy Law Letter No. 12, p. 6 (Dec. 2012). After describing the history of consent litigation, the Supreme Court concluded that the "entitlement to an Article III adjudicator is 'a personal right' and thus ordinarily 'subject to waiver.'" *Id.* at 1944 (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986)). Moreover, "allowing bankruptcy litigants to waive the right to Article III adjudication of *Stern* claims does not usurp the constitutional prerogative of Article III courts." *Id.* at 1944-45.

Having determined that litigants can consent to non-Article III adjudication, the Supreme Court next addressed whether consent has to be express or if it can be implied. In this regard, it ruled that consent can be express or implied, so long as the consent is knowing and voluntary. *Id.* at 1948. With that, the Supreme Court reversed the Seventh Circuit and remanded the case for the Seventh Circuit to decide whether there was knowing and voluntary consent in this case. *Id.* at 1949.[22]

---

22

It is equally important to note that while the majority required the Seventh Circuit to determine whether there was consent, the dissent, in the alternative, stated that such alter-ego claims were not *Stern* claims and the bankruptcy court could have adjudicated the claim regardless of consent. Specifically, "[a]t its most basic level, bankruptcy is "an

### I. *Wellness Int'l Network, Ltd. v. Sharif*, 617 Fed.Appx. 589

On August 4, 2015, the Seventh Circuit issued a short opinion, which concluded that the Debtor "forfeited his *Stern* argument when he was first before [the court]." *Wellness Int'l Network, Ltd. v. Sharif*, 617 Fed.Appx 589, 590 (7th Cir. 2015). The Seventh Circuit explained that "[b]y waiting until his reply brief to challenge the bankruptcy court's authority to decided the alter-ego claim, [the Debtor] failed to preserve his challenge[.]" *Id.* at 591. The Seventh Circuit then affirmed the District Court's, and by extension this Court's, decision as to Count V, the alter-ego claim. *Id.* The Seventh Circuit's order was not appealed. With that, both the Seventh Circuit and the District Court have placed their stamp of approval on this Court's ruling that the Soad Wattar Trust was the Debtor's alter-ego and therefore the Trust assets were rightly property of the Debtor's bankruptcy estate.

### J. *Ragda Sharifeh v. Horace Fox, Jr., et al.*, 12-A-00430

Having discussed the litigation involving Adversary Proceeding 09-00770, the Court now returns to 2012, when Ragda brought yet another lawsuit regarding the Soad Wattar Trust. Not satisfied with either this Court's nor the District Court's rulings on Adversary Proceeding 09-00770 and too impatient to wait for the outcome of her appeal in Adversary Proceeding 10-02239;[23] Ragda[24] filed a Complaint to Recover Property and Declaratory Judgment on February 16, 2012 in the Chancery Division of the Circuit Court for Cook County. On March 16, 2012, the Trustee filed a Notice of Removal, removing the case to the Bankruptcy Court. Adv. 12-

---

adjudication of interests claimed in a res." . . . [WIN] asked the Bankruptcy Court to declare that assets held by Sharif are part of that res. Defining what constitutes the estate is the necessary starting point of every bankruptcy; a court cannot divide up the estate without first knowing what's in it." *Id.* at 1952 (Roberts, J. dissenting) (internal citations omitted). Moreover, WIN's claim fell "within the narrow historical exception that permits a non-Article III adjudicator in certain bankruptcy proceedings." *Id.* at 1954. The dissent did qualify this by stating that a non-Article III court can adjudicate this type of claim "[p]rovided that no third party asserted a substantial adverse claim to the Trust assets[.]" *Id.* However, such an exception would not have applied in this case as Ragda did not attempt to assert a claim against the Soad Wattar Trust until after the July 6, 2010 Order, by which point the alter-ego claim was already fully adjudicated. Therefore, one can posit that regardless of the outcome of the Supreme Court case, this Court would have had jurisdiction to determine the alter-ego claim.

[23]

The Seventh Circuit had yet to rule on the Debtor's appeal from *Sharifeh v. Fox*, No. 09 BK 05868, 2012 WL 469980, at *1 (N.D. Ill. Feb. 10, 2012).

[24]

In her capacity as successor trustee and successor beneficiary to the Soad Wattar Trust.

00430, Dkt. 1.

This complaint was, once again, predicated on the same facts discussed in Ragda's Motion to Intervene, Motion to Vacate, and Adversary Proceeding 10-02239. Count I, essentially, reiterated the same wrongful conversion claim against the Trustee that Ragda had previously brought in Adversary 10-02239. Adv. 12-00430, Dkt. 1, Removed Complaint, ¶¶ 26-48. Count II was against Wells Fargo Financial Advisors for allegedly breaching its fiduciary duty to Ragda when it complied with the August 5, 2010 Order, requiring the turnover of Trust assets to the bankruptcy estate. *Id.* at ¶¶ 49-53. Count III requested injunctive relief against Green Bank, the bank where the Trustee deposited funds related to this case, and sought to prohibit Green Bank from disbursing said funds. *Id.* at ¶¶ 54-56. Count IV was nearly identical to Count II in Adversary Proceeding 10-02239, where Ragda sought a declaratory judgment that she is the rightful equitable and legal owner of the assets in the Soad Wattar Trust. *Compare* Adv. 12-00430, Dkt. 1, Removed Complaint, ¶¶ 57-67 *with* Adv. 10-02239, Dkt. 1, ¶¶ 48-62.

On July 11, 2012, WIN's motion to intervene was granted and it appeared in this adversary as well. Adv. 12-00430, Dkt. 10. On August 8, 2012, the Court granted a motion to stay the proceeding pending resolution of the appeals in the District Court, and by extension the Seventh Circuit. Adv. 12-00430, Dkt. 21.[25]

Once the appeals were resolved, Wells Fargo filed a motion to dismiss the part of the complaint that was directed against it on January 5, 2016. Adv. 12-00430, Dkt. 40. The Trustee then filed a Motion to Dismiss the whole complaint on January 15, 2016. Adv. 12-00430, Dkt. 43. The Trustee's motion made numerous arguments why the complaint should be dismissed, including 1) violation of the *Barton* Doctrine,[26] 2) application of the doctrine of collateral estoppel, and 3) deficiencies in the complaint itself. *Id.*

On January 19, 2016, this Court set briefing schedules for both motions. Ragda was to respond to Wells Fargo's motion by January 28, 2016 and to the Trustee's motion by February 8,

---

[25]The order granted a stay pending resolution of the appeal of Adversary Proceeding 10-02239, which was case 11 CV 7374 in the district court. That case, however, was stayed pending the appeal of *Sharifeh v. Fox*, 2012 WL 469980 to the Seventh Circuit, and then to the Supreme Court of the United States.

[26]
*See Barton v. Barbour*, 104 U.S. 126 (1881).

2016. Adv. 12-00430, Dkt. 46, 47. No responses were filed. Instead, on the eve of this Court's hearing the motions to dismiss, Ragda filed a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(I). Adv. 12-00430, Dkt. 48 (filed on February 15, 2016 when the hearing was set for February 18, 2016).[27] For reasons to be discussed later, the Court will allow Ragda to voluntarily dismissed the adversary without prejudice.

### K. Third Motion to Vacate

After the Supreme Court, Seventh Circuit, and the District Court left intact this Court's disposition of the Trust and its assets, it appeared that the issues surrounding the Soad Wattar Trust were finally coming to a close. However, on September 12, 2015, Haifa Sharifeh[28] (hereinafter "Haifa"), as Executrix for the Estate of Soad Watter, brought a motion asking the Court to vacate the August 5, 2010 Order pursuant to Rule 60(b)(4). Bankr. 09-05868, Dkt. 194. With a new movant there was also a new fact pattern by which she attempted to reclaim the Trust assets. Haifa argued that after Soad Wattar passed away on March 17, 2010, her estate became the true owner of all the Trust assets. Moreover, because Soad Wattar's estate never received notice of the Trustee's turnover request, the August 5, 2010 Order was void for lack of personal jurisdiction. *Id.*

On October 20, 2015, the Trustee filed an amended objection to Haifa's motion, which included 19 attached exhibits. *See* Bankr. 09-05868, Dkt. 209. Of note is Exhibit 6, which purports to be Soad Wattar's Last Will and Testament dated April 26, 2007. *Id.* at Ex. 6 (hereinafter "April 26 Will"). Nowhere in the Will does it name Haifa as executrix of Soad Wattar's estate. In fact, it names Richard Sharif, the Debtor, as executor and Ragda Sharifeh as successor executor. April 26 Will, p. 9. Moreover, Article 3.01 of the Will bequeathed all of

---

[27]

As will be discussed later on, on February 15, 2016, Ragda also brought a Motion for Leave to file a new complaint which asserts essentially the same claims as the complaint to which she filed a notice of dismissal.

[28]On September 12, 2015, attorney Maurice James Salem filed an appearance on behalf of the Estate of Soad Wattar through Haifa Sharifeh as the Executrix. Bankr. 09-05868, Dkt. 192. At first, this did not seem to be confusing as Ragda Sharifeh, the supposed successor Trustee of the Soad Wattar Trust was represented by attorney Garrett Reidy, Bankr. 09-05868, Dkt. 66, and then by Anthony Burch. Bankr. 09-05868, Dkt 167. The latter, however, appears to only represent Ragda in her individual capacity. The matter was complicated on January 18, 2016, when Mr. Salem filed an appearance on behalf of Ragda, once again apparently in her individual capacity. Bankr. 09-05868, Dkt. 251.

Soad Wattar's tangible personal property to the Trustee of the Soad Wattar Trust, "to be added to such Trust and administered and distributed under the provisions of said Trust Agreement." Soad Wattar Will, p. 3. Similarly, Article 5.01 bequeathed the "rest, residue, and remainder of [Soad Wattar's] Estate" to the Trustee of the Soad Wattar Trust under the same terms as Article 3.01. *Id.* at p. 4.[29]

In response, Haifa's reply contains an additional Will of Soad Wattar dated April 28, 2007. Bankr. 09-05868, Dkt. 228, Ex. U (hereinafter "April 28 Will").[30] While the April 26 Will was damning to Haifa's case, the April 28 Will, unbelievably, is the polar opposite. Not only does the April 28 Will name Haifa as Executrix, and Ragda as successor executrix, but it also changes the distribution of all of Soad Wattar's assets, including those in the Trust. April 28 Will, p. 3. Now the funds are to be used for the education of Soad Wattar's children, grandchildren and great grandchildren. *Id.* The Trustee's objection points out that the April 26 Will was the Will that the Debtor produced in discovery and which he acknowledged as Soad Wattar's Will at his deposition. Bankr. 09-05868, Dkt. 209, ¶ 14, n. 15, Ex. 3. Haifa's reply, on the other hand, provides no explanation as to where the April 28 Will comes from or why Soad Wattar would change her Will two days later. Moreover, the Will was not even attached to Haifa's original motion. The sheer fact that the April 28 Will miraculously appeared in time to challenge the April 26 Will makes it highly suspect.[31]

Regardless of the discrepancy in the Wills, the Court ultimately denied the motion on

---

[29]

Readers should now know that the Soad Wattar Trust was ruled to be the Debtor's alter ego. July 6, 2010 Order. All the Trust's assets were ordered to be turned over to the Trustee. August 5, 2010 Order. If the April 26 Will is accurate, then given that any of Soad Wattar's residual assets were to go to the Trust, and that the Trust is property of the estate, the Court can now add that not only is the Trust property located where it belongs, but also that the Trustee may have cause to seek the turnover of any of these residual assets that the parties have not yet turned over to the bankruptcy estate.

[30]It should be noted that Haifa's reply contains two Wills. The Court points out that while Haifa's reply claims that an order registering Soad Wattar's Will with the authorities in Syria, and supposedly establishing a probate estate, should be attached as Exhibit T, the Exhibit itself is merely an affidavit of an individual claiming to be Soad Wattar's attorney in Syria. *See* Bankr. 09-05868, Dkt. 228, p. 4, Ex. T. Moreover, while the affidavit claims to have an attached court order, no court order is attached.

[31]

At the very least, it is indicative of the tactics that have been employed by the Sharif family throughout this bankruptcy case. When one fact fails, they produce a new one. When the Debtor's attempts to retain the Trust assets failed, Ragda appeared and attempted to claim them. When Ragda's attempts failed, Haifa appeared and attempted to claim them.

November 25, 2015. Bankr. 09-05868, Dkt. 232. The Court reasoned that the issues concerning

the Soad Wattar Trust assets were well settled. Moreover, Haifa's request for relief was directed

against the Trustee and the motion was filed without leave of court. The *Barton* doctrine states

that bankruptcy trustees may not be sued unless their appointing court allows the claimant to

proceed. *Barton v. Barbour*, 104 U.S. 126, 136 (1881); *Matter of Linton*, 136 F.3d 544, 545 (7th

Cir. 1998). A party seeking to sue a trustee "must make a prima facie case against the Trustee,

showing that its claim is not without foundation." *In re Morris Senior Living*, 504 B.R. 490, 491

(Bankr. N.D. Ill. 2014). The Court found that Haifa did not comply with the *Barton* doctrine.

Specifically:

> She can not show that she has standing to seek anything from the bankruptcy
> estate and has not explained what property the Trustee holds that rightfully
> belongs to an entity she represents. What probate or Trust estate does she
> represent? What property was in that estate? What instrument transferred
> property to an entity the movant controls? [WIN] and Trustee Fox has [sic]
> sought this information for several years to no avail.[32] The Motion is deficient. It
> has no factual basis. It has no legal basis.

Bankr. 09-05868, Dkt. 232, pp. 23-24.[33] Haifa subsequently appealed that Order. The District

Court affirmed this Court's November 25, 2015 ruling on September 26, 2016. *Sharifeh v. Fox*,

2016 WL 5373199 (N.D. Ill. September 26, 2016).

### L. Motion for Leave to Withdraw as Counsel

While not directly related to the Soad Wattar Trust assets at issue here, Garrett Reidy's

Motion for Leave to Withdraw as Counsel for Ragda nonetheless bears some discussion. *See*

Bankr. 09-05868, Dkt. 202. Haifa's motion to vacate, discussed above, alleged a number of new

---

[32] This information has been sought by the WIN since its litigation in the Northern District of Texas, and by the Trustee since the start of this case. However, despite Haifa's allegations, she provides no supporting documents.

[33] The Court, now, notes that Haifa's lack of notice claim is also without merit. Both Haifa and Soad Wattar were listed as creditors on Schedule F of the Debtor's Schedules. Bankr. 09-05868, Dkt 1. Moreover, these family loans were a subject of much dispute in Adversary Proceeding 09-00770, as discussed earlier.

facts and for the first time attached documents in support of those assertions. Of note was a document which purported to have made Ragda the successor trustee to the Soad Wattar Trust in November of 2007 (before the Debtor's bankruptcy was filed) and was purportedly signed by Ragda, the Debtor, and Soad Wattar. Bankr. 09-05868, Dkt. 194, ex. D. This appeared highly suspect considering that both the Debtor and Ragda have repeatedly claimed that at the time of filing for bankruptcy the Debtor was the Trustee and that Ragda did not become Trustee until after the Debtor resigned in 2010.

Mr. Reidy's motion shed some light on this discrepancy. He too observed the conflicting testimony and evidence, and requested information from Ragda. Bankr. 09-05868, Dkt. 202, ¶ 7. However, Mr. Reidy, just like WIN and the Trustee before him, never received the requested information. *Id.* Instead, Mr. Reidy provided a sworn declaration from Stacy Franceschi that was filed as part of the Debtor's attorney's motion to withdraw as counsel in the Seventh Circuit. *Id.* at Ex. 1. Ms. Franceschi stated that she, along with Edward Bontkowski, signed and witnessed two documents related to the Soad Wattar Trust. *Id.* One document purported to change the beneficiaries of the Hartford Life Insurance Policy, the other made Ragda the beneficiary of the Trust. *Id.* Both documents were signed and witnessed by Ms. Franceschi on October 8, 2007. However, in her sworn declaration, Ms. Franceschi stated that she did not actually sign and witness this until mid-2009. *Id.* at ¶ 3. In fact, Ms. Franceschi did not meet the Debtor until mid-2009. *Id.* at ¶ 4. At the time, the Debtor explained that they needed the documents to be back-dated because the original amendments to the Trust had been lost. *Id.* at ¶ 5. Moreover, Ms. Franceschi explains that the public notary, who claimed to have witnessed the signatures, was not present when Ms. Franceschi signed. *Id.* at ¶ 7.

On October 12, 2015, Mr. Salem, on behalf of Haifa, filed an objection to Mr. Reidy's motion arguing that Mr. Reidy should not be allowed to withdraw until he accounts for money he took from a Raymond James Financial Services account. Bankr. 09-05868, Dkt. 205. Mr. Salem attached a letter, in which Mr. Reidy, on behalf of Ragda, directed Raymond James to liquidate an account belonging to the Soad Wattar Trust and transfer the funds to Ragda. *Id.* at Ex. A. The letter was dated March 3, 2012, and therefore, Mr. Salem claimed that the transfer violated this Court's August 5, 2010 Order that enjoined Ragda from performing any act that would

exercise control of property of the bankruptcy estate, including the Trust assets. Mr. Salem then amended his objection to say that "the letter shows he helped in having money transferred from the Soad Wattar Revocable Living Trust to Ragda Sharifeh,[34]" and to include the fact that the money transferred was used to pay mortgage payments on a home owned by the Trust and Mr. Reidy's attorney's fees. Bankr. 09-05868, Dkt. 246.[35]

Mr. Reidy was given additional time to respond to the objection, however he did not return to court on the continued date; his motion to withdraw was ultimately stricken. Bankr. 09-05868, Dkt. 252. Regardless, this episode highlighted the problems in this case, and provided possible evidence of Ragda's attempts to take possession of property of the estate in violation of a clear court order and § 362 of the Bankruptcy Code.

## IV. Motion for Leave and Motion for Funds

At last the Court arrives at the matters currently before it. Patient readers will recall that in Adversary Proceeding 12-00430, Ragda, now through Mr. Salem, filed a notice of dismissal without prejudice as per Rule 41(a)(1)(A)(I) on February 15, 2016. Adv. 12-00430, Dkt. 48. This notice came after Ragda failed to respond to two motions to dismiss.[36] It appears that Mr. Salem did not waste any time in refiling/addressing the same issues when he filed the two Motions herein on February 15, 2016 which he filed the same day he filed the Notice of Dismissal in Adv. 12-0430, February 15, 2016. Dkt. 48.

---

[34]

The statement originally stated that: "The letter clearly shows that he took money from the Soad Wattar Living Revocable Living Trust, which belongs to the Estate of Soad Wattar." Bankr. 09-05868, Dkt. 205.

[35]

At the time, Mr. Salem was only representing Haifa. In his objection, Mr. Salem requests that the Court deny Mr. Reidy's Motion to Withdraw until Mr. Reidy "accounts for the money that he took form [sic] the Estate of Soad Wattar. Bankr. 09-05868, Dkt. 205. In the amendment to the motion, Mr. Salem explains that the money was transferred for Ragda's benefit. Bankr. 09-05868, Dkt. 246. By doing so, Mr. Salem implicates Ragda in violating the automatic stay and the August 5, 2010 Order. Moreover, he claims that these transferred funds needed to be accounted for and returned because they belong to the "Estate of Soad Wattar," as administered by Haifa and represented by Mr. Salem. This put Ragda and Haifa at odds with one another. Now, however, he represents both Haifa and Ragda. Given the previous tension between his clients, the Court is forced to question whether he should be allowed to represent both or even either of the individuals.

[36]

The order scheduling the briefing of the motion to dismiss was entered the same day that Mr. Salem appeared in Adversary Proceeding 12-00430. Adv. 10-02239, Dkt. 44, 46, 47. There was no question that Mr. Salem, and by extension Ragda, knew of the briefing schedule.

In the first motion, Mr. Salem, on behalf of Haifa, as Executrix of the Estate of Soad Wattar, and Ragda, individually, requests leave to sue the Trustee pursuant to the *Barton* doctrine. Bankr. 09-05868, Dkt. 253. When trying to explain the prima facie case, however, the motion merely trails off midsentence and never completes a statement that the proposed complaint showed a prima facie claim or provides an explanation.[37] In open court, Mr. Salem explained that the prima facie case can be discerned from the attached proposed complaint. *Id*, Ex. 1 (hereinafter "Proposed Complaint").

The second motion, brought on behalf of Ragda (in her individual capacity it seems), is a request for funds from the Trust. Bankr. 09-05868, Dkt. 254. In this motion, Mr. Salem appears to have forgotten the *Barton* doctrine, which he adequately described in the Motion for Leave, and, essentially, sues the Chapter 7 Trustee to recover funds that Ragda spent in maintaining certain real property that was part of the Soad Wattar Trust which later became part of the bankruptcy estate. The motion also requests the turnover of the Hartford Life Insurance Proceeds, which Ragda is now claiming to be exempt.[38]

---

[37]

More specifically, it trails off mid-phrase: "In this case, the proposed claim is against the Trustee and the Trustee's counsel, and attached hereto is the proposed claim for this Court to determine whether a prima" Bankr. 09-05868, Dkt. 253, ¶ 3. Mr. Salem did not do much better in open court where he again failed to articulate a prima facie case and merely pointed to the Proposed Complaint again.

> MR. SALEM: With respect to the motion for leave, paragraph 3, I did not state in the motion the prima facie, but I did reference the complaint, which was attached. And the complaint itself I contend states a prima facie case. And with respect to the issue of whether the -- the – Trustees are federal agents or not, really that's an issue of law. We'll leave that to be litigated. Now with respect to the issue of the Estate of Soad Wattar, well, again, she's a different entity, and again, these are legal issues that will eventually be sorted out. And so I now --
> COURT: They shouldn't be sorted out eventually. If you're going to file a claim on behalf of somebody, you have to note that with specificity in your complaint. You can't say we'll get around to that later.
> MR. SALEM: No, it is, Your Honor. The attachment of the complaint that's been attached, it's very meticulous. It has seven causes of action. And it states who the plaintiffs are and the defendants are. And that's attached to the motion, Your Honor. So I believe that it is, Your Honor.

Transcript of February 18, 2016 Hearing, pp. 8-9.

[38]

On February 18, 2016, the Court took both motions under advisement. No briefing schedules were set for either motion. The Court felt that it had sufficient information to rule on the Motions. The Court had dealt with similar, if the not the same, issues in the previous motions and adversary proceedings as described herein. In fact, during the February 18, 2016 hearing, Mr. Salem was the only one actively arguing for a briefing schedule. If anyone has cause to complain about the Court's actions it would be the Trustee. However, while the Trustee initially argued that the motions should be stayed pending the result of the appeal of this Court's November 25, 2015 ruling, the Trustee ultimately voiced no

Now that the Court has finished its lengthy discussion of the history of this case, the Court can discuss these Motions, Ragda's request to dismiss Adversary Proceeding 12-00430 without prejudice, as well as the Court's Order to Show Cause why Mr. Salem and these parties should not be sanctioned under Rule 9011.

**A. Discussion**

The Court begins by once again noting that Haifa and Ragda's Motion for Leave, on its face, is devoid of any cognizable explanation as to how they establish a prima facie case against the Trustee. Bankr. 09-05868, Dkt. 253. However, in the interest of establishing a complete record, the Court examined the Proposed Complaint; the Court should not have to do so because "[j]udges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). This Court had to hunt, look hard for a prima facie claim. None was found.

In the Proposed Complaint, Ragda and Haifa (the "Proposed Plaintiffs") seek to sue Hartford Life and Annuity Insurance, Wells Fargo, and the Trustee (the "Proposed Defendants"). The Proposed Complaint contains seven counts. Counts I-III are directed at Hartford Life and Annuity Insurance Company for breach of contract, breach of fiduciary duty, and negligence, respectively. It alleges that Hartford had a life insurance policy for Soad Wattar which listed Ragda as the beneficiary and that Hartford breached its contract, breached its fiduciary duty, and committed negligence when it failed to turn the proceeds of the life insurance policy over to Ragda upon Soad Wattar's death on March 17, 2010. Counts IV-VI are directed at Wells Fargo for breach of contract, breach of fiduciary duty, and negligence, respectively. These counts allege that Wells Fargo was entrusted with the Trust assets and that Wells Fargo breached a contract, breached its fiduciary duty, and committed negligence when it failed to give the assets to Ragda and Haifa, but instead gave the assets to the Trustee. Count VII is a *Bivens* claim directed at the Trustee and his counsel for using their alleged authority as federal agents to take property that belonged to Soad Wattar's estate without notice or hearing.

Before turning to the individual counts, the Court notes that the Proposed Complaint

concern with the Court taking these matters under advisement. In short, no briefing schedule was necessary. The Court has ruled on these issues so many times that any additional time to brief these motions would merely cause unnecessary costs and delays.

refers to an Exhibit E, an Exhibit A, an Exhibit G and an Exhibit C. However, the filing at Dkt. 253 has no exhibits. The Court also notes that the Proposed Complaint is predicated on essentially the same argument that Haifa used in the Third Motion to Vacate, i.e., that Haifa, as executrix for the estate of Soad Wattar, was entitled to the Soad Wattar Trust assets and that she was damaged when the assets were not turned over to her. *See* Bankr. 09-05868, Dkt. 194. However, as discussed earlier, due to the discrepancy between the various Soad Wattar Wills, it is still unclear who has standing to pursue claims on behalf of Soad Wattar's estate. Is it Haifa? Ragda? The Debtor? The Court does not know because the Proposed Plaintiffs have not provided anything that answers these questions.[39]

Furthermore, even if the Court were to accept, *arguendo*, the April 28 Will, making Haifa executrix and granting all the Soad Wattar Trust property to the estate of Soad Wattar, it would not justify granting the Proposed Plaintiffs' request to sue the Proposed Defendants. The Court learned of the April 28 Will when it was attached to the Haifa's reply supporting her motion to vacate the August 5, 2010 Order filed on November 16, 2015. Bankr. 09-05868, Dkt. 228. By all indications, the Proposed Defendants may not have learned of this Will until then as well. They may have been operating under the belief that the April 26 Will, naming the Debtor as executor and giving all of Soad Wattar's assets to the Trust, was valid. If so, the Proposed Defendants' actions complied with the April 26 Will.[40] The Proposed Plaintiffs cannot now complain that the Proposed Defendants did something wrong when the Proposed Defendants were working off of what was provided to them in 2010. If anything, the Proposed Plaintiffs should have qualms with the Debtor if he provided the wrong Will in discovery. Moreover, this

---

[39] In Court, Mr. Salem said the following:

> MR. SALEM: First, Your Honor, with respect to the issue of the estate, and whether I have authority
> to represent the estate, that issue was raised. You stated in your decision that I don't, and the issue is
> on appeal. So we'll just wait and see what the district court says on appeal.

Transcript of February 18, 2016 Hearing, p. 8. Mr. Salem, however, cannot wait until a later date in the hopes of establishing standing today. If he truly wishes to bring the Proposed Complaint now he needs to have sufficient support to substantiate his basic allegations now. He cannot wait until later to prove that his clients have standing.

[40] I.E. Soad Wattar's assets were to go into the Soad Wattar Trust, the Soad Wattar Trust was ruled to be the Debtor's alter ego and therefore property of the Debtor's bankruptcy estate, therefore the Proposed Defendants were right to turn over the assets to the Trustee.

merely returns the Court to its initial judgment on July 6, 2010. Had the Debtor, and the various Sharif parties, complied with WIN's discovery requests, had the Debtor produced everything that was asked of him, none of this would be an issue. However, that is not the case.

Finally, the argument, that the various assets of the Soad Wattar Trust were turned over to the Trustee without notice to the parties, is also entirely without merit. As the Court has stated many times in this Opinion, all the parties[41] had notice of the bankruptcy, and by extension Adversary Proceeding 09-00770, because of their status as creditors of the Debtor. Moreover, the Soad Wattar Trust, itself, had notice of the adversary proceeding through its Trustee, the Debtor.

Even if the Court were to accept that Soad Wattar's estate became the rightful holder of the Soad Wattar Trust assets upon the death of Soad Wattar, which the Court does not,[42] it still would not require the turnover of the Trust assets or damages as a result of the transfer of Trust assets. The estate of Soad Wattar would have had notice of the adversary proceeding because the estate's purported executrix, Haifa, had notice of the proceeding as a scheduled creditor. Moreover, Soad Wattar, as the Debtor's creditor, received notice of the bankruptcy case as well. As such, her probate estate, if it even exists, is considered to have had notice as well because the probate estate would be her successor in interest. More importantly, the July 6, 2010 Order, declaring the Trust to be the Debtor's alter-ego, effectively made all the Trust assets property of the Debtor's bankruptcy estate as the filing date. *See In re Sklarin*, 69 B.R. at 954.

Even if the estate of Soad Wattar was the rightful successor of the Trust assets as of Soad Wattar's death in 2010, the estate of Soad Wattar would still not be entitled to those assets because by Soad Wattar's death, the assets were property of the Debtor's bankruptcy estate. If anything, the estate of Soad Wattar would have a cause of action against the Debtor, not the Proposed Defendants, for breach of the Debtor's fiduciary duties to the Soad Wattar Trust. No such cause of action has ever been asserted and by now it may be too late to do so.

---

[41]

Haifa, Ragda, and Soad Wattar were all listed as creditors of the Debtor. *See* Bankr. 09-05868, Dkt. 1, pp. 17-18.

[42]

The recent allegations that the estate of Soad Wattar is the owner of the Soad Wattar Trust assets is in stark contrast to previous allegations that Ragda, as successor beneficiary of the Soad Wattar Trust, was the rightful owner of the Trust assets.

Having discussed the general flaws with the Proposed Complaint, the Court will now turned to the individual counts.

### 1. Counts I-VI

The Court will discuss Counts I-VI together because they present essentially identical arguments against two different Proposed Defendants. When the allegations within these Counts are taken as true, they fail to state a claim upon which relief can be granted.

First, Ragda and Haifa allege that they became entitled to these assets when their mother, Soad Wattar, died on March 17, 2010. The Debtor filed for bankruptcy on February 24, 2009. On August 24, 2009, WIN filed its Adversary Proceeding which alleged that the Soad Wattar Trust was the alter-ego of the Debtor. Haifa, Ragda, and Soad Wattar all had notice of the bankruptcy, and by extension the adversary proceeding, because they were all listed as creditors on the Debtor's schedules. *See* Bankr. 09-05868, Dkt. 1, Schedule F (listing the individuals as unsecured creditors). If, as they now allege, the estate of Soad Wattar or Haifa or Ragda[43] should have taken possession of these assets on March 17, 2010, the correct course of action would have been to intervene in that adversary and assert their rights before the entry of the July 6, 2010 Order.

The assets in issue were part of the Soad Wattar Trust. On July 6, 2010, this Court ruled that the Soad Wattar Trust was the Debtor's alter-ego and therefore the assets of the Trust were part of the Debtor's bankruptcy estate. As the Court has stated many times, "[i]t is well established that property of the Debtor in the possession, custody and control of [his] alter ego comprises property of the estate *at the commencement of the case*, and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy the debts of the Debtor." *In re Sklarin*, 69 B.R. 949, 954 (Bankr. S.D. Fla. 1987) (emphasis added). The Trust assets were property of the bankruptcy estate, and any transfer to Ragda or Haifa outside the claims allowance process would have been a violation of the automatic stay.

The Proposed Complaint seems to imply that Hartford and Wells Fargo should have

---

43

At the very least, the Court can confirm that Ragda, who participate in that Adversary Proceeding, had notice and should have acted.

violated the law in order to perform duties owed to the Proposed Plaintiffs. The Proposed

Defendants should not have been expected to violate the automatic stay. Rather, if these assets

were truly the property of the Proposed Plaintiffs, they should have moved to intervene, moved to

lift the stay, or simply assisted WIN and the Trustee with discovery. The burden was on Haifa

and Ragda to act, not on Hartford and Wells Fargo to violate the law.

Haifa and Ragda have failed to explain how they were entitled to this property. Until this

latest set of filings, the narrative was that Ragda was the successor trustee and successor

beneficiary of the Soad Wattar Trust, and therefore deserved to have the trust and its assets. Now

they argue that the estate of Soad Wattar should receive the assets. The Proposed Complaint

does not indicate whether Soad Wattar's interest was a trust estate or a testamentary probate

estate. Once again, they failed to provide any documentation, evidence, or proof of such. If

anything, this appears to be part of the same type of delaying tactics that have been prevalent in

this bankruptcy case and the cases that precede it.

Finally, even if these were valid claims, this Court questions its jurisdiction to hear them.

The breach of contract, breach of fiduciary duty, and negligence claims are state law claims that

neither arise in, arise under, nor relate to the bankruptcy proceeding. They are seeking to sue

third parties over property that has no bearing on the Debtor's estate.[44] While the Court believes

that it has jurisdiction to rule on the Motion for Leave as a whole, had the Proposed Complaint

been filed absent Count VII, there would be questionable jurisdiction for the Court to rule on it.[45]

---

[44]

The Proposed Plaintiffs are seeking damages equal to the value that was transferred to the bankruptcy estate from these proposed defendants. They are not seeking a return of the property from the Proposed Defendants or the bankruptcy estate. However, it is possible that any sort of litigation that concerns the Soad Wattar Trust would ultimately involve the Chapter 7 Trustee, which will in turn place a burden on the bankruptcy estate. This could establish "related to" jurisdiction as such a burden would most certainly affect "the amount of property available for distribution or the allocation of property among creditors." *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) (citations omitted).

[45]

The Court does note, however, that this may be another delay tactic employed by the Proposed Plaintiffs. Ragda had brought an adversary proceeding before, and, after failing in this Court, sought the withdrawal of reference in the hopes of a "do over." *See e.g., Sharifeh v. Fox*, 2012 WL 469980, at *4-*7 (discussing Ragda's motion to withdraw reference in the district court case). Support for this theory, however, is minimal and primarily rests on the Proposed Complaint relying on diversity jurisdiction found in 28 U.S.C. § 1332, and not on the bankruptcy court's jurisdiction in 28 U.S.C. § 1334, as well as due to the jury trial request at the end of the Proposed Complaint. Nevertheless, given how this case has unfolded, the Court felt that it needed to voice its concerns on the matter.

As a result, the Court found that the Proposed Plaintiffs failed to show a prima facie case as to Counts I-VI.

### 2. Count VII

Count VII seeks the same damages as Counts I-VII, except this time from the Trustee. Count VII also seeks $6,300,000 in punitive damages. The claim, styled as a *Bivens* claim, alleges that the Trustee, acting as a federal agent and under the color of federal law, used his position to seize the Proposed Plaintiffs' "assets from Hartford and Wells Fargo without authority and without notice or a hearing, to Plaintiff, the Estate of Soad Wattar." Bankr. 09-05868, Dkt. 253, Ex. 1, ¶ 61. The Proposed Complaint further alleges that the Trustee and his counsel did so in deprivation of the Proposed Plaintiffs' substantive due process rights.[46] This, however, also fails to state a prima facie claim.

The *Bivens* doctrine provides an implied cause of action against federal officials who deprive a plaintiff of his or her constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 399 (1971). "[T]o state a *Bivens* claim, the defendant must be a federal officer and must not have judicial immunity from suit." *Lerch v. Boyer*, 929 F.Supp. 319, 323 (N.D. Ind. 1996). The Proposed Plaintiffs' *Bivens* claim stems from their assertion that Mr. Fox is the U.S. Trustee, a federal officer. In fact, time and again Ragda and Haifa have referred to Mr. Fox as the U.S. Trustee, but they are mistaken. Mr. Fox is the Chapter 7 Trustee for the bankruptcy estate of Richard Sharif. The Office of the U.S. Trustee is an entirely separate entity. The U.S. Trustee is a federal official. Mr. Fox, as the Chapter 7 Trustee, is not, and Mr. Fox's counsel is definitely not a federal official. While the United States Trustee appoints the private Chapter 7 Trustee, a Chapter 7 Trustee is by no means an "agent" of the United States Trustee. 28 U.S.C. § 586(a)(1). The Chapter 7 Trustee is merely the legal representative of the bankruptcy estate. 11 U.S.C. § 323; *see also In re Hughes Drilling Co.*, 75 B.R. 196, 197 (Bankr. W.D. Okla 1987) ("The Trustee is a representative of the estate, not an officer, agent, or instrumentality of the United States.").

The Trustee has immunity for actions undertaken pursuant to a court order. A bankruptcy

---

[46] It also alleges that the Trustee took property that should have been exempt, mainly the Hartford life insurance policy. Because that's the subject of the following motion, the Court will address it there.

Trustee "is entitled to quasi-judicial immunity for carrying out the orders of the bankruptcy court." *Lerch*, 929 F. Supp. at 323; *see also Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986) ("Non-judicial officials whose official duties have an integral relationship with the judicial process are entitled to absolute immunity for their quasi-judicial conduct."). The Trustee and his counsel were operating within their statutory authority to administer property of the estate. They were also acting within the bounds of this Court's July 6, 2010 Order, which declared the Soad Wattar Trust assets to be property of the estate, and the August 5, 2010 Order, which required that the Trust assets be turned over to the Trustee for administration. If the Proposed Plaintiffs wanted to avoid that outcome they should have timely intervened or timely appealed the Orders. While some appeals were taken, the appeals were lost and the judgment affirmed. In addition, the court notes that neither the Debtor, Ragda, nor Haifa obtained a stay pending appeal of the matters addressed on appeal.

The Proposed Plaintiffs cannot now attempt to undo history by suing the Trustee, especially when the Trustee's actions are protected by quasi-judicial immunity. Second, any notion that the Proposed Plaintiffs did not receive notice has been debunked many times. They received notice as creditors of the Debtor, through Ragda's participation in Adversary Proceeding 09-00770, or through the Debtor as their agent.[47] Just because the Proposed Plaintiffs did not act timely does not mean that they did not receive timely notice or that they did not receive due process. Any attempt to now claim otherwise is frivolous and without merit.

As such, after evaluating the claims presented in the Proposed Complaint, the Court concluded that the Proposed Plaintiffs failed to establish a prima facie case for why they should be allowed to sue the Trustee and his attorney. The Motion was denied.

### 3. Motion For Funds

In the second matter, the Motion for Funds from the Trust, Ragda sought compensation from the Trustee for money she spent maintaining real property located at 36 Revere Drive, South Barrington, Illinois (hereinafter "Revere Drive Property"). The Revere Drive Property was an asset of the Soad Wattar Trust and is property of the bankruptcy estate, which her attorney

---

[47] Discussed thoroughly above, Ragda admitted that the Debtor was her agent and the Debtor also was the representative of the Soad Wattar Trust by virtue of being its Trustee.

admits. *See* Bankr. 09-0586, Dkt. 254, ¶ 2 ("A house at 36 Revere Drive, South Barrington, Illinois is one of the assets in the Trust."). According to the motion, she is owed $435,949.80 for paying the mortgage, taxes, and insurance on the property. Additionally, she demands, as beneficiary of the Hartford Life Insurance Policy, the proceeds of that policy. She claims that the life insurance policy was exempt under Illinois state law and therefore should not be part of the bankruptcy estate. This motion was without merit and had to be denied.

This motion at Dkt. 254 seeks to sue the Trustee for damages and therefore violates the *Barton* doctrine as she neither sought nor has permission from this Court to sue the Trustee for funds from the Trust. Indeed, Ragda clearly knew of this doctrine as her motion at Dkt. 253 properly sought leave of Court to sue the Trustee and his Counsel.

### a. Revere Drive Property

With regards to the Revere Drive Property, Ragda has failed to explain why she is entitled to reimbursement of funds she spent on the property. Ragda has not provided any sort of calculation of the source of the $435,949.80 figure. She also fails to provide any evidence that she did indeed maintain the property. The Debtor's Schedules indicate that Haifa Kaj[48] and Soad Wattar lived at the Revere Drive Property, while Ragda lived at 8715 Orchard Dr., Hickory Hills, IL. Bankr. 09-05868, Dkt. 1, pp. 17-18. There is no explanation why Ragda was paying for a property at which she did not live.

Moreover, Ragda's unsupported assertions here contradict the Debtor's sworn testimony given at his Rule 2004 examination. There the Debtor stated that "Wells Fargo, Wachovia, which is now Wells Fargo, has a mortgage payment for the house because *it comes out of the mother's living Trust* every month." Transcript of Debtor's Rule 2004 Examination, pp. 108-109 (Emphasis added). The house discussed was the Revere Drive Property and the Trust is the Soad Wattar Trust. Based on this testimony the Trust may have already paid the mortgage on the Revere Drive Property. On a more technical level, Ragda cited no legal authority for her request for compensation. In Court, Mr. Salem, on Ragda's behalf, argued that the Trustee is responsible for maintaining the property, yet Ragda was doing so and now seeks

---

[48] Probably the same Haifa that is involved in the present litigation.

compensation.  However, Mr. Salem was never able to articulate to the Court a contractual or
statutory basis for Ragda's request.  Specifically:

> COURT: Does the Trustee owe her this money based on a statute?
>
> MR. SALEM: Well, the Trustee owes her the money -- the Trustee had a
> responsibility to take care of the property within the Trust.  The Trustee failed to
> do that, and she --
>
> COURT: Did the Trustee have an agreement with Ragda under which he owed --
> she owed him something or he owed her this money?  Is there a contract or a law
> that you're relying on?
>
> MR. SALEM: Your Honor, this is -- yes, the Trustee's responsibility to the
> property of the estate.
>
> COURT: What's the contract?
>
> MR. SALEM: The --
>
> COURT: She made some payments and now she wants them back.  On what legal
> basis does he owe her this money?
>
> MR. SALEM: And that she was -- because of the fact that this issue -- this case
> was pending on appeal, and it wasn't clear who eventually was going to own that
> house, she was paying that money in the prospect that she would own the house.
> But now that the assuming --
>
> COURT: Does she have a legal obligation to do it?
>
> MR. SALEM: Yes, Your Honor, because it is her --
>
> COURT: Well, if she had a legal obligation to do it, then she can't recover it from
> somebody else.

Transcript of February 18, 2016 Hearing, pp. 11-12.  As the discussion in court showed, Ragda
may have had some sort of separate legal obligation to pay the mortgage and she was doing just
that.  It also shows that there is no statutory or contractual basis for Ragda's request.  In fact, Mr.
Salem clearly stated that she made the payment on the mistaken belief that by maintaining the
property she would be able to retain it.  That is not a valid ground for requiring the Trustee to

reimburse Ragda.[49] Ragda's request was denied.

Furthermore, if Mr. Salem's Amendment to Haifa's Objection to Mr. Reidy withdrawing as counsel for Ragda is to be believed, Ragda used property of the bankruptcy estate to make mortgage and tax payments. In the amendment, Mr. Salem, then on behalf of only Haifa, stated that "[u]pon direct first hand information received from Ragda Sharifeh . . . the money received (from the Trust) by Ragda Sharifeh was used to pay the mortgage payments of a house that is owned by the Trust." Bankr. 09-05868, Dkt. 246. Is the Revere Drive Property the house that Mr. Salem spoke of? If so, Ragda may have used property of the estate to make those payments. If anything, she should be required to pay that money back to the Trustee as she may have used and transferred property of the bankruptcy estate in direct violation of the automatic stay and this Court's injunction in the August 5, 2010 Order.

### b. Life Insurance

Ragda claims that, as the daughter of Soad Wattar and the beneficiary of the Hartford Life Insurance Policy, she is entitled to the proceeds of the policy because they are exempt under 735 ILCS 5/12-1001(f).[50] Her position lacks merit.

The Bankruptcy Code provides that debtors may choose between the exemptions provided by section 522(b)(2) (the so-called "federal" exemptions) or, the exemptions listed in section 522(b)(3), which include exemptions provided by state law and federal nonbankruptcy law. 11 U.S.C. § 522(b)(1); *see In re Bauman*, 11 B 32418, 2014 WL 816407, *11 (Bankr. N.D. Ill. Mar. 4, 2014) (citation omitted). If a state "opts out" of the federal exemption scheme provided in section 522(b)(2), debtors who reside in that state may no longer choose and thus are limited to the exemptions set forth in section 522(b)(3). 11 U.S.C. § 522(b)(2); *see Bauman*, 2014 WL 816407, at *12. Illinois has "opted out" of the federal exemption scheme. 735 ILCS

---

[49]

The Code does authorize the "actual, necessary expenses" incurred by a creditor "in making a substantial contribution in a case under chapter 9 or 11 of this title[.]" 11 U.S.C. § 503(b)(3)(D). This, however, is a case under Chapter 7 of the Bankruptcy Code and therefore the section is inapplicable. Moreover, there has been no evidence or argument provided how these payments were necessary, or that they were made.

[50]

A similar claim is made in the Proposed Complaint that was attached to the Motion for Leave. *See* Bankr. 09-05868, Dkt. 253, Ex. 1, ¶ 65.

5/12-1201. Accordingly, Illinois debtors are restricted to exemptions under section 522(b)(3), which, in turn, include Illinois exemption statutes.

Ragda claims an exemption under 735 ILCS 5/12-1001(f), which, in relevant part, exempts from judgment "[a]ll proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment polices and annuity contracts payable to a wife or husband of the insured, or a child, parent, or other person dependent upon the insured." There are, however, a slew of problems with her assertion.

First, the Code allows only the Debtor to claim an exemption in property of the estate. *See* § 522(l). The Code allows a "dependent of the debtor" to file a list of exemptions or to claim exemptions from property of the estate on behalf of the debtor. *Id.* Ragda is neither the Debtor, nor is there any indication that she is a dependent of the Debtor. Therefore, she is probably not able to claim the exemption for the Debtor.[51]

Second, even if Ragda was an individual entitled to claim property as exempt, she is ineligible to do so here. Ragda completely overlooks the longstanding interpretation that "'dependent upon the insured' should modify child and parent, as well as 'other person.'" *Schriar v. Mose (In re Schriar)*, 284 F.2d 471, 474 (7th Cir.1960). While *Schriar* interprets 215 ILCS 5/238(a), a plethora of courts have concluded that *Schriar* also applies to 735 ILCS 5/12-1001(f). *See In re Hardesty*, No. 14BK42906, 2015 WL 4719340, *7 (Bankr. N.D. Ill. Aug. 7, 2015) (collecting cases). Ragda is an adult and there is no indication that she was "dependent upon" Soad Wattar.

Third, even if this is property that the Debtor could claim as exempt, it is too late to do so. This case has been pending since February of 2009. The parties have known that this property had been ruled to be property of the estate since the July 6, 2010 Order. The Debtor has had sufficient time to amend his schedules and has not done so. Amending the schedules now, after seven years of litigation in this case is far too late. *See In re Kercheval*, 416 B.R. 293, 303-

---

[51] The Debtor's Schedule C does list three life insurance policies as exempt under 215 ILCS 5/238. The policies are issued by Hartford and insure three different individuals. Bankr. 09-05868, Dkt. 1, Schedule C. The policies are listed as "owned" by the Debtor, not Ragda. *See id.* Moreover, the three policies only claim a combined total of $12,000 as exempt, not the $500,000 that Ragda is claiming here.

304 (Bankr. N.D. Tex. 2009). In *Kercheval*, the debtor attempted to amend his schedules to

exempt life insurance proceeds following a settlement between the Chapter 7 Trustee for his case

and a creditor which transferred the proceeds of the policy to the creditor. The amendment came

eight months after the bankruptcy case was filed. The court held that it was too late to claim the

exemption and that doing so would be highly prejudicial to the settling parties. If eight months is

too long to wait to claim an exemption, waiting seven years is overkill. Moreover, given the

plethora of litigation that has occurred since 2009, over eight years, claiming the funds exempt

now would also be highly prejudicial.[52]

The Motion to Pay was denied.

### c. Adversary Proceeding 12-00430

On February 15, 2016, after missing the deadline to respond to a motion to dismiss,

Ragda filed a notice of dismissal of this adversary proceeding under Rule 41(a)(1)(A)(I) of the

Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure

7041. In open court, the Trustee urged the Court to deny the notice and instead dismiss the case

with prejudice. The Court, however, cannot.

Rule 41(a)(1)(A)(I) provides that a plaintiff can dismiss an action without court order by

filing "a notice of dismissal before the opposing party serves either an answer or motion for

summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(I). The effect is that the dismissal is without

prejudice. Fed. R. Civ. P. 41(a)(1)(B). The Seventh Circuit has stated that "one doesn't need a

good reason, or even a sane or any reason, to dismiss a suit voluntarily. The right is absolute, as

Rule 41(a)(1) and the cases interpreting it make clear[.]" *Marques v. Fed. Reserve Bank of

Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002) (collecting cases). The right is absolute until the

defendant serves an answer or motion for summary judgment. *Id.* The motions to dismiss filed

by the Trustee and Wells Fargo are neither answers nor motions for summary judgment.

Therefore, Ragda was allowed to dismiss the adversary proceeding without prejudice.

The Court does note the Trustee's concerns, and that the Trustee and the other Defendants

---

[52] Alternatively, even if the Debtor is allowed to amend his Schedules, the Trustee would then have an opportunity to object to his new exemptions. *See* Fed. R. Bankr. P. 4003(b)(1). Given the holding in *Schriar*, however, it would be difficult to imagine such an amended exemption surviving an objection.

may have been prejudiced by Ragda's voluntary dismissal of the complaint. Significant work and litigation went into presenting motions to dismiss by the Trustee and others in defense to this adversary. While the Court cannot dismiss this adversary proceeding with prejudice, it will nonetheless note the Trustee's concerns for the record.

This, however, should not be interpreted as giving Ragda free reign to refile the complaint. Her ability to do so is subject to the limitations outlined in the ruling on the Order to Show Cause, which the Court will now address.

### d. Order to Show Cause

Rule 9011 of the Federal Rules of Bankruptcy Procedure provides that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b). If these provisions are violated, a court may, after notice and hearing, issue appropriate sanctions. *Id.* at 9011(c). Rule 9011(c)(1)(B) states that "[o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated

subdivision (b) with respect thereto." *Id.* at 9011(c)(1)(B).[53]

As described in this Opinion, in the eight years that this bankruptcy case has been before this Court, and others, have had to rule on the issue of the Soad Wattar Trust numerous times. To recap in chronological order:

- July 6, 2010 Order: Entering default judgment in Adversary Proceeding 09-00770 and finding the Soad Wattar Trust to be the Debtor's alter-ego, and therefore making its assets property of the Debtor's bankruptcy estate.

- August 5, 2010 Order: Ordering the turnover of all the assets of the Soad Wattar Trust to the Trustee. Also, that the "Debtor, Ragda Sharifeh, and Haifa Kaj are ordered to cease any act to exercise any control over property of the estate and shall not perform any conduct that amounts to exercising any control over property of the estate[.]"

- March 10, 2011 Order: Denying Ragda's motion to intervene because she failed to timely intervene before the July 6, 2010 Order was entered and because she failed to provide any support for her contention that she was the successor Trustee of the Soad Wattar Trust.

- March 14, 2011 Order: Denying Ragda's motion to vacate the August 5, 2010 Order because her allegations were unsupported and the Court once again questioned her position as the successor Trustee.

- Dismissal of Adversary Proceeding 10-02239 (August 30, 2011): Court dismisses the adversary for failure to state a claim upon which relief can be granted. Issues dealt with include the wrongful conversion of the Soad Wattar Trust assets, notice of the turnover, and declaratory judgment that Ragda was the Trustee and beneficiary of the Soad Wattar Trust. The Court applied the doctrines of collateral estoppel and res judicata to Ragda's claims. The Court dismissed her complaint with prejudice.

- *Sharifeh v. Fox*, 2012 WL 469980 (February 10, 2012): District Court for the Northern District of Illinois affirmed the July 6, 2010 Order.

- Adversary Proceeding 12-00430 (filed February 12, 2012): Though it was voluntarily

---

[53] Nothing prevents any other party from bringing a motion for sanctions under Rule 9011 regarding the conduct described herein.

dismissed, this adversary proceeding bears some discussion. Despite the Court explicitly dismissing Adversary Proceeding 10-02239 with prejudice, Ragda nonetheless filed this complaint asserting similar claims. Moreover, this complaint was filed in state court, most likely in an attempt to circumvent the "with prejudice" portion of the dismissal of Adversary Proceeding 10-02239, and had to be removed to this Court.

- *Wellness Int'l Network, Ltd. v. Sharif*, 617 Fed.Appx. 589 (August 4, 2015): Seventh Circuit vacates its previous order and affirms the district court's ruling that the Soad Wattar Trust was the Debtor's alter-ego.

- November 17, 2015 order from the District Court dismissing Ragda's appeal of the dismissal of Adversary Proceeding 10-02239 with prejudice.

- November 25, 2015 Order: Haifa appears for the first time and requested the Court to vacate the August 5, 2010 Order claiming to be the true owner of the Soad Wattar Trust assets as the Executrix of the Estate of Soad Wattar. This Court denied the motion. On appeal the District Court affirmed this Court's November 25, 2015 Order denying Haifa Sharifeh's Motion for An Order Vacating the August 5, 2010 Order. 2016 WL 5373199 (N.D. Ill. September 26, 3016).

Despite no less than ten rulings on the subject, Ragda and Haifa[54] brought these Motions in an attempt to reclaim the Soad Wattar Trust assets. The Court has definitively ruled on the subject. Two District Courts and the Seventh Circuit have affirmed.

The sanctions respondents argue that they were not involved in this case throughout the eight years it has been pending. That is no excuse. Mr. Salem and his clients have to review the court records to familiarize themselves with the posture of the case and the courts' prior rulings. They can not ignore binding rulings just because they were not actively involved in this matter when the earlier Orders were entered.

The parties continuously misstate the law and the facts. A clear example is the repeated assertion that Mr. Fox is the U.S. Trustee in an attempt to establish a *Bivens* claim. *See e.g.*, Bankr. 09-05868, Dkt. 67, ¶ 8; Dkt. 68, p. 1; Adv. 10-02239, Dkt. 1, ¶ 6; Adv. 12-00430, Dkt. 1,

---

[54] The Court will continue to refer to them as the "Proposed Plaintiffs."

Ex. A, ¶ 2 (containing select instances where the parties incorrectly refer to Mr. Fox as the U.S. Trustee). The Proposed Plaintiffs also have consistently made numerous inappropriate, hostile, and incorrect statements regarding the Court as well as the Trustee. The most recent example being "this Court directed the Trustee to seize all assets belonging to the Revocable Living Trust of Soad Wattar." Bankr. 09-05868, Dkt. 254, ¶ 1. The Proposed Plaintiffs should know by now that the Court did not direct the Trustee to do anything. The Court granted the Trustee's request for turnover of property of the bankruptcy estate. Moreover, the request was properly and legally made under the Trustee's authority and § 542 of the Bankruptcy Code. These are but a few examples, however, they are demonstrative of the Proposed Plaintiffs' repeated disregard for the facts and the law.

On August 4, 2015 the Seventh Circuit affirmed the District Court ruling on Count V of Adversary Proceeding 09-00770. *Sharif*, 617 Fed.Appx. 589. Count V requested "a declaration that a Trust Sharif administered [(the Soad Wattar Trust)] was actually his alter ego, and that the Trust's assets should be considered part of his bankruptcy estate." *Id.* This Court held that the Trust was the Debtor's alter ego. July 6, 2010 Order. The District Court affirmed. *Sharifeh v. Fox*, 2012 WL 469980. The Seventh Circuit affirmed the District Court. *Sharif*, 617 Fed.Appx. 589. The Seventh Circuit's August 4, 2015 ruling has not been appealed. This issue is therefore settled. The Soad Wattar Trust is the Debtor's alter ego; its assets are property of the Debtor's bankruptcy estate. If the Proposed Plaintiffs have a problem with that ruling, the proper course of action is to appeal, which they did and lost. The wrong course of action is to continuously bring new causes of action through new plaintiffs in the hope of circumventing settled rulings.[55]

Time and again, the Proposed Plaintiffs have shown a complete disregard for the judicial system, making blatant attempts to circumvent it. When one plaintiff failed, they have brought in

---

[55] This Court, and by extension the parties before it, are bound by the mandate rule which requires the Court to comply with both the spirit and letter of the mandate issued to this Court by a higher court. *See In re Continental Illinois Securities Litigation*, 985 F.2d 867, 869 (7th Cir. 1993). The Seventh Circuit affirmed that the Soad Wattar Trust is the Debtor's alter ego and therefore property of the estate, therefore this Court and the parties must abide by it. If any of the parties disagree with that ruling they should appeal it.

another to assert similar claims.[56]  When one court rejected their arguments, they merely brought

a similar complaint in another.[57]  When they are either unable, unwilling, or forget to respond to a

pleading, they merely file a new one.[58]  This sort of action must be stopped.  Given how settled

the issue of the Soad Wattar Trust is, the latest pleadings have been filed either for an improper

purpose and are frivolous.  *See* Fed. R. Civ. P. 9011(b)(1) and (2).

Mr. Salem accepted responsibility for his actions.[59]

Beginning with the Northern District of Texas litigation and continuing through the

litigation in the Fifth Circuit Court of Appeals and most recently before this Court, the various

Sharif family parties have shown a disregard for their responsibilities under Rule 9011 of the

Federal Rules of Bankruptcy Procedure.[60]  The Court need not answer how many more lawsuits

of this kind the courts need to resolve.  Rather, the Court will merely echo the Fifth Circuit in

saying that any further attempts at prolonging or hindering the administration of this bankruptcy

estate will "expose them to the full panoply of penalties, sanctions, damages, and . . . costs" that

are at this Court's disposal.  *See Sharif v. Wellness Int'l Network, Ltd.*, 273 Fed.Appx at 317.

The time is now for the full panoply of sanctions.

## V. Priors Cases Involving Mr. Salem's Conduct

In 2005, in a case in which Mr. Salem was a defendant/judgment debtor he filed a

counterclaim when the plaintiff tried to enforce a $166,884.86 default judgment entered against

---

[56]

After the Debtor failed to maintain the Trust assets, Ragda appeared and tried to reclaim them. After Ragda failed, Haifa appeared and is attempting to do the same.

[57]

After both Ragda and the Debtor failed in this Court, Ragda brought substantially similar claims in state court. *See Ragda Sharif v. Horace Fox, Jr. and Richard Sharif and Wells Fargo Financial Advisors and the Green Bank*, Case Number 12 CH 05519 (ultimately removed to this Court as Adversary Proceeding 12-00430).

[58]

After failing to respond to two motions to dismiss in Adversary Proceeding 12-00430, Ragda merely filed a new complaint, i.e. the Motion for Leave, rather than deal with the consequences.

[59]

In court, Mr. Salem stated "Your Honor, I will take full responsibility for my actions and anything --" Transcript of February 18, 2016 Hearing, p. 10.  It is time for him to face the consequences.

[60]

E.g., to present claims that are legally and factually sound; to refrain from pursuing claims to harass or cause unreasonable delay or needless increase the costs of litigation, etc.

him in state court. He also sued the plaintiff's attorney, the state court judge and others in federal court. *See Salem v. Paroli Jr., Pagones, Goldstein & Neshewat*, 260 B.R. 246 (Bankr. S.D.N.Y. 2001) and *Salem v. Paroli*, 79 Fed.Appx. 455 (2nd Cir. 2003). A District Court ultimately enjoined Mr. Salem from filing, without leave of court, further actions in federal court against the judgment creditor, his brother. *Neshewat v. Salem,* 365 F.Supp.2d 508, 530 (S.D.N.Y. 2005).

In *In re Morris Senior Living, LLC*, 2013 WL 5753834 (N.D. Ill. 2013) a District Court reversed this Court's order finding Mr. Salem in contempt of court for refusing to timely dismiss three lawsuits he filed outside the bankruptcy case, regarding matters in issue in the bankruptcy case. The three lawsuits were: a suit was filed in Grundy County, Illinois against the Illinois Department of Health and Family Services ("IDHFS") requesting an injunction enjoining the IDHFS from processing the Trustee's change of ownership application regarding a senior living facility on the ground that Mr. Salem's client owned the certificate; a lawsuit filed in the District Court seeking to enjoining the IDHFS from terminating the senior living facility certificate. Mr. Salem refiled the second case in the District Court. After each lawsuit was filed the Trustee sent written communications to Mr. Salem contending that the lawsuits violated the automatic stay in the debtors' bankruptcy case. The lawsuits were not withdrawn.

The District Court reversed, in part, finding that this Court's contempt order and findings were conclusory. Mr. Salem's conduct in suing the Trustee and others outside the bankruptcy may have been an effort to improperly multiply proceedings. The District Court did not condone Mr. Salem's conduct.

In the same case this Court denied Mr. Salem's Amended Motion for Leave to File a Claim against Trustee's Counsel for Fraudulent Inducement. This Court found that the movants offered insufficient legal basis and no evidence to carry their burden to demonstrate that they had a prima facie claim. This Court cautioned that the efforts therein came perilously close to warranting sanctions under Rule 9011(b)(2) and (3). *In re Morris Senior Living, LLC,* 504 B.R. 490, 496, n.1 (Bankr. N.D. Ill. 2014).

In *Salem v. Kozlov*, 2016 WL 4169102 (N.D. Ill. 2016) Mr. Salem sued the Illinois Attorney Registration & Disciplinary Commission and others alleging that they conspired to deprive him of permission to appear *pro hac vice* in Illinois courts. The District Court dismissed

Mr. Salem's Second Amended Complaint without prejudice but took notice of several documents that contradicted the facts plead by Mr. Salem.   She admonished him that if he elected to refile his complaint and persisted in presenting potentially spurious allegations she would entertain a renewed motion for sanctions.

That Court also noted that Illinois Judge Jacobious stated in *Marayah Diagnostics, LLC v. Westerfield Plaza, LLC* that Mr. Salem repeatedly claimed that Judge Martin's previous ruling made factual and legal findings in favor of Salem, but that nothing in the record supported that assertion. 2012 CH 22853, at 15 (Ill. Cir. Ct. December 14, 2015).   *Salem v. Kozlov*, n.10.   That Court also noted four matters in state court where the Attorney Registration and Disciplinary Commission successfully moved to terminate Mr. Salem's permission to appear *pro hac vice*. *Id.* at p. 2.

In *Kienlen v. Christofalos*, a Bankruptcy Court denied a debtor a Chapter 7 discharge. Bankr. No. 13-47319, Adv. 14-00337, Dkt. 34. The District Court affirmed. *Christofalos v. Kienlen*, 2016 WL 3268164 (N.D. Ill. 2016).   The District Court's ruling was affirmed by the Seventh Circuit. *Kienlen v. Christofalos*, 2017 WL 461089, *5 (7th Cir. February 3, 2017).   The Seventh Circuit discussed the central issue therein, whether the debtor concealed or misrepresented his assets.   The debtor plead "for clemency, contending that it was not he but his attorney who could not have 'cared less' about the accuracy of the schedules."   That Court noted that this brief was filed by the same attorney, Mr. Maurice Salem, accusing himself of incompetence, while stating "[w]hether attorney Salem committed malpractice or violated the Illinois Rules of Professional Conduct is not before this court."   The Seventh Circuit affirmed the denial of discharge and said that "[g]iven the gravity of the apparent misconduct here, we are referring this case to the United States Attorney for the Northern District of Illinois for further review."

Mr. Salem is not being sanctioned for his past conduct.   His past conduct is being mentioned  to show that this is not his first brush with allegations of misconduct.

## VI. Conclusion

Attorney Maurice James Salem is fined $20,000 and is barred from filing any pleadings in Bankruptcy Case 09-05868 or any adversary proceedings therein without first obtaining leave

-74-

of this Court to do so.

Ragda Sharifeh and Haifa Sharifeh are barred from ever filing any pleadings in Bankruptcy Case 09-05868 or any related adversary proceedings.

This Memorandum Opinion reflects this Court's Findings of Fact and Conclusions of Law.  A separate Order will be entered imposing sanctions.

Dated:  **February 16, 2017**                    ENTERED:

_____
**Jacqueline P. Cox**
**United States Bankruptcy Judge**