UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 09-05868 |
| | ) | |
| Richard Sharif, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |
| | ) | |

**Memorandum Opinion on Trustee's Motion for Sanctions (Dkt. 790)**

The chapter 7 trustee Horace Fox, Jr. (the "Trustee") seeks sanctions against the Debtor, Richard Sharif ("Richard," "Sharif," and the "Debtor"), and his sisters, Haifa Sharifeh ("Haifa") and Ragda Sharifeh ("Ragda"), for filing and presenting several frivolous pleadings in bad faith, including objections to the Trustee's Motion for Authority to Sell Interest of the Estate in Realty: 36 Revere Drive, South Barrington and Shorten Notice (the "Motion to Sell") (Docket 730). Haifa, Ragda and Richard filed objections to that motion at dockets 734, 735 and 736. The Debtor and his sisters filed separate pleadings but made the same baseless assertions in each of them.

The Trustee also alleges that pleadings filed in response to his Motion to Amend Proposed Order (Docket 746) were frivolous. Ragda, Haifa and Richard responded to that motion at dockets 753, 754 and 755.

Trustee Fox also seeks sanctions for Ragda's Motion to Sell the Subject House to the Creditor Ragda Sharifeh (Docket 752).

For the reasons noted herein, the Motion for Sanctions (Docket 790) will be granted.

### I. Background

This matter stems from a contract action litigated in the Northern District of Texas. Richard Sharif and others sued Wellness International Network, Ltd. and Ralph and Cathy Oats (collectively,

"Wellness") alleging fraud and violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO").[1]   Sharif failed to properly respond to discovery requests; the district court granted

summary judgment in favor of Wellness.   On appeal by Sharif and others (collectively,

"Appellants"), the Fifth Circuit Court of Appeals affirmed, observing that the litigation had been

pursued to harass and delay the defendants.   The appeal was dismissed for the Appellants' failure

to order a transcript and make financial arrangements with the court reporter.   The Fifth Circuit

noted:

> A review of the record on appeal demonstrates that Appellants' untimely
> performance in this court mirrors a lengthy history in the district court of dilatoriness
> and hollow posturing interspersed with periods of non-performance or insubstantial
> performance and compliance by Appellants and their counsel, leaving the
> unmistakable impression that they have no purpose other than to prolong this
> contumacious litigation for purposes of harassment or delay, or both.   The time is
> long overdue to terminate Appellants' feckless litigation at the obvious cost of time
> and money to the Defendants by affirming all rulings of the district court but
> remanding the case to that court for the reinstatement of its consideration of
> Appellees' motion for attorneys's fees.   In so doing, we caution Appellants that any
> further efforts to prolong or continue proceedings in this court, including the filing
> of petitions for rehearing, will potentially expose them to the full panoply of
> penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Sharif v. Wellness Int'l Network, Ltd.*, 273 F. App'x 316, at *1 (5th Cir. 2008) (footnote omitted).

On remand, the district court ordered Sharif and his co-plaintiffs to pay Wellness' attorney's

fees in the amount of $655,596.13. *Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B,

2008 WL 2885186, at *4 (N.D. Tex. July 22, 2008); *see also In re Sharif*, 549 B.R. 485, 488-537

---

[1] The lawsuit began in the Northern District of Illinois in 2002. *See Sharif v. Wellness Int'l Network, Ltd.*, No. 3:05-CV-01367-B, 2007 WL 9711724, at *1 (N.D. Tex. July 16, 2007) (summarizing the case's complex procedural history), *aff'd*, 273 F. App'x 316 (5th Cir. 2008). Pursuant to a contractual forum selection clause indicating that the federal and state courts in Dallas County, Texas were the correct forum for disputes, the cause of action was dismissed. It was later filed in the Northern District of Texas in 2005. *See Sharifeh v. Fox, Jr. (In re Sharif)*, 549 B.R. 485, 489-90 (Bankr. N.D. Ill. 2016).

for additional background information.[2]

When Wellness tried to enforce the sanctions order Sharif refused to comply with discovery requests. At one point he was arrested for contempt. He was released on his own recognizance when he promised to fully comply with many court orders directing him to respond to post-judgment discovery.[3] He was held in contempt on February 10, 2009; he filed this bankruptcy case two weeks later on February 24, 2009.[4]

Wellness filed an Adversary Proceeding asking that Sharif be denied a discharge and requesting that a trust's assets declared to be his property under an alter ego theory. Complaint (Adv. Docket 1) and Amended Complaint (Adv. Docket 10), Adv. No. 09-00770. Sharif again failed to comply with discovery. Wellness sought sanctions. *Id.*, Adv. Docket 39. Sharif was warned that noncompliance could result in entry of a default judgment. He did not comply with his discovery obligations. A default judgment was entered; he was denied a discharge and the trust was declared to be his alter ego. *Id.*, Adv. Docket 68. On August 9, 2010, Wellness was awarded $52,405.99 for attorney's fees and $8,349.75 for costs incurred in prosecuting the sanctions motion that led to the entry of the default judgment. Order Granting Sanctions Motion (Adv. Docket 85), Adv. No. 09-00770.

Those rulings were affirmed on appeal to the district court. *See In re Sharif*, 2012 WL

---

[2] Review of the claims register for this case shows that only one proof of claim was filed herein: Claim No. 1 of Wellness International for $664,169.94.

[3] *See* Amended Complaint Objecting to Discharge ("Amended Complaint") (Adv. Docket 10), pp. 3-5, *Wellness Int'l Network, Ltd. v. Sharif*, Ch. 7 Case No. 09-05968, Adv. No. 09-00770 (Bankr. N.D. Ill. Aug. 24, 2009) (hereinafter "Adv. No. 09-00770") (summarizing the prior contempt proceedings).

[4] Petition (Docket 1), *In re Sharif*, Ch. 7 Case No. 09-05868 (Bankr. N.D. Ill. filed Feb. 24, 2009) (hereinafter "Bankr. No. 09-05868").

469980, at *10 (N.D. Ill. Feb. 10, 2012) (subsequent history omitted). An appeal to the Seventh

Circuit followed. That court affirmed the part of the district court's ruling affirming the denial of

Sharif's discharge but reversed the alter ego ruling, finding that bankruptcy courts lacked

constitutional authority to rule on that issue. *Wellness Int'l Network, Ltd. v. Sharif,* 727 F.3d 751,

756 (7th Cir. 2013), *rev'd,* 575 U.S. 665 (2015). That ruling was appealed to the U.S. Supreme

Court which reversed the Seventh Circuit's ruling, holding that bankruptcy courts may adjudicate

claims where they lack constitutional authority to issue a final judgment if the parties consent.

*Wellness Int'l Network, Ltd.,* 575 U.S. at 686. The matter was remanded to the Seventh Circuit to

rule on the consent issue. On remand, the Seventh Circuit ruled that Sharif forfeited his right to

object to the bankruptcy court's exercise of jurisdiction by waiting too long to do so when he first

objected in a reply pleading. *Wellness Int'l Network, Ltd. v. Sharif,* 617 F. App'x. 589, 590-91 (7th

Cir. 2015) (*mem.*). The Seventh Circuit affirmed the district court's decision on the alter ego theory.

The bankruptcy court's fee awards were reinstated.

In addition to the $60,755.69 fee award entered against Sharif in connection with Wellness'

Sanctions Motion,[5] Attorney Maurice J. Salem,[6] Haifa, and Ragda were previously sanctioned herein.

On February 16, 2017, Ragda and Haifa were barred from filing pleadings in this bankruptcy case

and its related adversary proceedings for filing frivolous motions. *See In re Sharif,* 564 B.R. 328,

380 (Bankr. N.D. Ill. 2017); Sanctions Order (Docket 330), Bankr. No. 09-05868. Mr. Salem was

fined $20,000 and barred from filing pleadings in this matter without prior leave of court. *In re*

---

[5] *See* Sanctions Motion (Adv. Docket 39) and Order Granting Sanctions Motion (Adv. Docket 85), Adv. No. 09-00770.

[6] *See In re Sharif,* 549 B.R. at 489-537 (explaining that Mr. Salem previously represented Haifa and Ragda at one point in connection with this bankruptcy case); *see also In re Salem,* No. 17-CV-1500, 2017 WL 11607219, at *1 (N.D. Ill. Dec. 14, 2017).

*Sharif,* 564 B.R. at 330, 380.[7] This matter is the subject of appeals before the Seventh Circuit.

On June 22, 2021 and November 4, 2021, Sharif was sanctioned for filing a frivolous lawsuit against the chapter 7 trustee, the trustee's attorney, his former spouse, his former spouse's attorney, and a guardian *ad litem* appointed to represent his children in a domestic relations case.[8] He was ordered to pay $20,000 to the U.S. Treasury and $37,508 to Attorney Arthur Newman. *See* Orders at Adv. Docket 143 and 180, Adv. No. 20-00399. That case, *Sharif v. Fox*, No. 1:19-cv-6035 (N.D. Ill. Sept. 9, 2019), was filed in the District Court for the Northern District of Illinois. It was transferred to the Bankruptcy Court for the Northern District of Illinois on November 13, 2020. *Id.*, Docket 81. This court dismissed the Debtor's frivolous case. *See* Memorandum Opinion (Adv. Docket 111) and Order Granting Motion to Dismiss (Adv. Docket 113), Adv. No. 20-00399. The dismissal was affirmed by the district court. *See Sharif v. Fox*, No. 21 C 1330, 2022 WL 6751930, at *6 (N.D. Ill. Oct. 11, 2022).

## II. Objections to Motion to Sell

In response to the Trustee's motion to sell a residence (property of the bankruptcy estate) at 36 Revere, South Barrington, Illinois (the "property" or the "home"), the Debtor and his sisters filed objections.[9] Haifa objected because the No. 18-cv-8508 appeal[10] was then pending in the district

---

[7] Mr. Salem appealed this court's February 16, 2017 sanctions order. *In re Salem*, No. 17-CV-1500, 2017 WL 11607219, at *1-13 (N.D. Ill. Dec. 14, 2017). The District Court for the Northern District affirmed this court's entry of that order. *Id.* at *13.

[8] Order Granting Sanctions Motion (Docket 669), Bankr. No. 09-05868; Defendant's Petition for Attorney's Fees (Adv. Docket 163) and Order Granting Petition for Attorney's Fees (Adv. Docket 180), *Sharif v. Fox, Jr.*, Ch. 7 Case No. 09-05868, Adv. No. 20-00399 (Bankr. N.D. Ill. filed Nov. 16, 2020) (hereinafter "Adv. No. 20-00399").

[9] *See* Motion to Sell (Docket 730) and the objections thereto at Dockets No. 734 (Haifa's Objection), 735 (Ragda's Objection), and 736 (Sharif's Objection), Bankr. No. 09-05868.

[10] *Sharifeh et al v. Fox Jr.*, No. 1:18-cv-08508 (N.D. Ill. filed Dec. 27, 2018) (appeal filed by Haifa).

court, because she considered the $587,000 sale price too low, that no money would be left after the Wells Fargo mortgage was paid and that the Trustee failed to negotiate a higher price with Ragda who Haifa alleges offered to pay more for the property. *See* Haifa's Objection (Docket 734), Bankr. No. 09-05868. Haifa also objected to shortening the required notice period from 21 days to 13 days. *Id.*

The No. 18-cv-8508 appeal has been resolved. On September 14, 2022, the district court affirmed this court's order denying Haifa's motion to vacate an order directing the turnover of assets held by the Wattar trust to the bankruptcy estate. *Sharifeh v. Fox*, No. 18-cv-8508, 2022 WL 4272777, at *7 (N.D. Ill. Sept. 14, 2022).

The Debtor filed an objection to the motion to sell, asserting many of the same arguments as his sisters. *See* Debtor's Objection (Docket 736), Bankr. No. 09-05868. Importantly, his subsequent appeal of this court's order approving the sale has been resolved.[11] The district court granted the Trustee's motion to dismiss the appeal.[12] Note footnote 17 of this opinion explaining that the other appeals of this court's Sale Order (civil action Nos. 22-cv-04233 and 22-cv-04237), filed by Haifa and Ragda, respectively, have been dismissed.

The sale price is a reflection of the market. The Trustee's broker, Ms. Wagner, testified that due to the condition of the property — mold, standing water and leaking gas — the requested price of $780,000 had to be reduced. Only one offer was made to purchase the property. Contrary to Haifa's assertion, there were funds left after the $432,000 mortgage held by Wells Fargo was

---

[11] *Id.*, Order Granting Motion to Sell ("Sale Order") (Docket 748) and Memorandum Opinion thereon (Docket 747); *see also Sharif v. Fox, Jr.*, No. 1:22-cv-04248, Order (Docket 18) and Judgment (docket 19) (N.D. Ill. Mar. 24, 2023) (hereinafter "No. 22-cv-04248"). This court amended its opinion on the Trustee's Motion to Sell on August 11, 2022. *See* Amended Opinion (Docket 774), Bankr. No. 09-05868.

[12] No. 22-cv-04248, Dockets 6, 18, and 19.

satisfied. Aug. 2, 2022 Hr'g. Tr., p. 93, where the Trustee's attorney noted that a net of $95,000 to the bankruptcy estate was expected after the sale of the property. The accusation that the Trustee failed to negotiate with Ragda who offered a higher price is baseless. The Trustee and the broker testified that Ragda did not present an offer to purchase the property. The court recalls that the Debtor and his sisters objected to the sale of the 36 Revere Drive home over the course of this case. However, this court's review of the record shows that neither the Debtor, Haifa nor Ragda actually submitted an offer to purchase it; they told the Trustee that Wells Fargo agreed to allow Ragda to make payments on the mortgage and that FirstSecure Bank and Trust Company had agreed to loan Ragda $165,000 to facilitate the purchase of the property.

Mr. Paul Payne ("Payne") of Wells Fargo testified at the November 1, 2022 sanctions hearing that the Debtor spoke with him about resuming mortgage payments but Payne made it clear that he had responsibility regarding the trust account only and that Wells Fargo's mortgage department would have to be consulted. Nov. 1, 2022 Hrg. Tr., pp. 26-33.

The Debtor and his sisters submitted a joint response to the motion for sanctions (the "Joint Response") (Docket 826), which includes an affidavit[13] by the Debtor that states that during his conversation with Payne, Payne "confirmed, in a telephone conversation where his attorney was present and my sister Ragda was also present, that Wells Fargo will allow Ragda to continue to pay the monthly mortgage payments, as she had been doing from September 2010, to November 2015, if the Trustee sells the house to Ragda." *See* Docket 826; Docket 845, Ex. 41. The Debtor's sworn affidavit has been discredited; he said Payne told him that Ragda could take over mortgage

---

[13] *See* Joint Response to Motion for Sanctions (Docket 826), pp. 16-17; Trustee's Second Amended Exhibit List (Docket 845), Exhibit 41. For reference, the Motion for Sanctions may be found at Docket 790.

payments; Payne denied this, testifying that he told the Debtor to seek relief from Wells Fargo's mortgage department. There is no evidence that Wells Fargo's mortgage department was consulted or agreed to anything regarding the mortgage. In any event, Wells Fargo would have had to bargain with the Trustee as the bankruptcy estate representative to modify the mortgage.

The Joint Response states that the Debtor and his sisters acted reasonably when they tried to delay the sale of the residence until resolution of the No. 18-cv-8508 appeal in the district court. Presenting that argument in bankruptcy court without obtaining a stay pending appeal amounts to frivolous conduct, evidencing their intent to delay the administration of this bankruptcy case.

The joint response also rehashes unsubstantiated arguments about the entry of the 2010 default judgment which was affirmed by the Seventh Circuit on remand from the U.S. Supreme Court. *See Wellness Int'l Network, Ltd. v*, 617 F. App'x at 589-91. This is an effort to re-litigate issues settled when the Seventh Circuit affirmed the district court in 2015; the district court affirmed this court's default judgement order which held that the trust was the Debtor's alter ego. *Sharifeh v. Fox*, 2012 WL 469980, at *1, *10.

The Debtor and his sisters refuse to observe the law of the case by trying to re-litigate settled issues.

Mr. Mohammad Suleiman of FirstSecure Bank and Trust Company testified that the bank's records and his emails did not reflect an August 8, 2022 pre-approval letter, at Docket 845, Exhibit 44, pp. 22-23, Bankr. No. 09-05868. *See* Nov. 1, 2022 Hrg. Tr., pp. 42-48. He denied sending it and could not find a copy of it in the bank's records. *Id.*

Mr. Suleiman sent an October 11, 2022 letter pre-approving a $165,000 loan to Ragda and their brother Jamal Sharifeh. Docket 845, Ex. 43. The letter does not mention the 36 Revere

-8-

property. In any event, it is dated after the August 15, 2022 sale. *See* Report of Sale, Docket 784.

The Debtor's testimony to the contrary is illusory. He and his sisters have posited fabrications in support of their assertion that Ragda stood ready and able to purchase the residence for more than what the buyer secured by the broker was willing to pay. At no point did the Debtor or his sisters submit a written offer to purchase the residence; no written offers from them have been submitted on the record in this case.

### A. Statute of Frauds Issue

Illinois' Statue of Frauds states that:

> No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party.

740 ILCS 80/2.

"The Illinois statute . . . seeks to prohibit fraudulent practices . . . by barring actions based upon nothing more than loose verbal statements." *See In re Rowell*, 606 B.R. 329, 341-42 (Bankr. N.D. Ill. 2019) (internal citation omitted). The Debtor and his sisters have based their assertion that Ragda offered to purchase the real estate in issue on verbal statements, not a writing. Their effort fails because Ragda did not submit a written offer, without which she has no right to pursue the property.

### B. Standing

In any event, the Debtor did not have standing to participate in the sale effort because administration of the estate was unlikely to result in him receiving a surplus. *In re Helmstetter*, 44 F.4th 676, 679 (7th Cir. 2022) ("Helmstetter fails to meet his burden because he provides only speculative support that he would recover from the estate after creditor distribution, such that

reversing the bankruptcy court's decision would likely redress his injury."). This court could have and should have barred the Debtor and his sisters from participating in the sale hearing but allowed them to do so because they expressed an interest in purchasing the residence.

### C. Sale Price

The assertion that the sale price was too low is contradicted by the Debtor's witness, Mr. Murad Atiep ("Atiep"). He testified that the property was worth $625,000; he did not inspect it. The Trustee's broker settled on an asking price of $625,000 before the prospective purchaser inspected it and convincingly insisted that the price drop to $587,000 due to the condition of the home. *See* Aug. 2, 2022 Tr. (testimony of Murad Atiep), pp. 86-89. Atiep did not inspect the interior or the exterior of the residence. He based his value opinion on the property's square footage.

The problematic conditions were standing water, which was observed there in the past when Ms. Wagner inspected it five years before, recent extensive mold growth that necessitated removal of a wall it was on, and odorous leaking gas. Aug. 2, 2022 Hr'g. Tr., pp. 31-32; p. 36. In addition, only one of the home's five toilets worked. *Id.*, p. 45.

The price at which the property was sold was not too low, considering its condition.

There was cause to shorten the notice period from 21 days to 13 days. Federal Rule of Bankruptcy Procedure 2002(a)(2) requires that all parties be given 21 days notice of sale motions, unless there is cause to shorten notice. The court held that 13 days notice was sufficient because the closing was set for August 15, 2022 and the sale had been the subject of litigation in the state court domestic relations case since earlier in 2022.

### D. Respondents' Failure to Offer to Purchase the Property

As noted above, the court could have barred the Debtor and his sisters from participating in

the sale hearing but respected their expressed desire to purchase the home due to its sentimental value because their mother had resided there. In return the Debtor and his sisters perpetrated a fraud on the court, caused delay and caused the Trustee to incur legal fees and expenses to respond to their outright fabrications. Instead of taking the sale process seriously, the Debtor and his sisters lied about Ragda making an offer to purchase the residence. The court notes that the broker Patti Wagner testified at the August 2, 2022 sale hearing that all offers had to be presented to her; none were presented to her. Aug. 2, 2022 Hr'g. Tr., p. 34. In addition, they lied about getting some sort of relief from Wells Fargo regarding the mortgage and about obtaining financing from FirstSecure Bank and Trust Company to finance Ragda's offer before the sale. The sale took place on August 15, 2022; the letter (the one that Mr. Suleiman acknowledges) from FirstSecure Bank and Trust Company is dated October 11, 2022, long after the sale, and does not mention the property in issue.

The Debtor said they had settlement talks with the Trustee. The Trustee denied engaging in settlement talks with the Debtor and his sisters. Aug. 2, 2022 Hr'g. Tr., pp. 75-76.

The Trustee, however, sent attorneys Ariel Weissberg and Naderh Elrabadi, as well as the Debtor, an email explaining that if the Debtor or his sisters wanted "to offer to purchase the residence for materially more money, and can simultaneously provide a satisfactory demonstration of proof of funds, we would consider such an offer." Aug. 2, 2022 Hr'g. Tr., p. 77; *see also* Docket 742, Ex. 12, Bankr. No 09-05868. Mr. Weissberg represented the Debtor and his sisters at one point in these proceedings, but he withdrew from the representation on November 4, 2021. *See* Motion for Leave to Withdraw (Docket 762), p. 1. Attorney Elrabadi represented Ragda and Haifa from October 17, 2016 to August 30, 2022. *See* Dockets 301 and 791.

In response to the court's inquiry, the Debtor noted that Ragda did not deal with the broker,

-11-

Ms. Wagner. He testified that "[s]he did not deal with her directly. She was communicating with the trustee." Aug. 2, 2022 Hr'g. Tr., p. 80. In his final argument comments, the Trustee's attorney, Mr. Block, noted that they had no idea what Ragda was interested in doing or what the Debtor was talking about in terms of an offer; they did not receive an offer. Aug. 2, 2022 Hr'g. Tr., pp. 92-93. Had the Trustee not accepted the offer obtained by the broker, a mortgage default would have ensued. Selling the property was the only option. *Id.* It had been made clear since the August 2, 2022 hearing that all offers had to come through the broker, Ms. Wagner. Aug. 2, 2022 Hr'g. Tr., pp. 34 and 49. No offers were submitted to Ms. Wagner by the Debtor or his sisters. Nov. 1, 2022 Hr'g. Tr., pp. 19-23.

The Debtor said that Ragda would make an offer to purchase the residence the next day and for that reason the motion to sell should be denied. *Id.*, p. 95. Promises from an unreliable person with a history of unreasonably delaying the administration of this bankruptcy estate have to be ignored.

**E. Frivolous Objections**

Ragda made several conclusory objections. Dockets 735 and 754. In her objection to the motion to sell ("Ragda's Objection") (Docket 735), Ragda alleges that she has a lien issue pending appeal in the Seventh Circuit; that she wants to retrieve personal property on the premises; the sale price is below the fair market value of the house; it was best to delay this matter until resolution of the pending appeal (civil action No. 18-8508) in the district court; selling the home would cause her and her family irreparable harm; there was no legitimate reason to shorten notice; and that she wanted the Trustee to negotiate a higher sale price she would pay. There is no record of Ragda having a lien.

The Trustee offered her an opportunity to retrieve her personal items in the email sent to the Debtor and Attorneys Weissberg and Elrabadi on July 28, 2022. Docket 845, Ex. 34.

In 2015, Ragda filed a motion requesting that the Trustee reimburse her in the amount of $435,949.80 for paying the mortgage, taxes and insurance on the property. Dockets 254 and 256. The motion was denied because Ragda did not obtain leave of court to sue the Trustee as required by the *Barton* doctrine,[14] she asserted no grounds — contract or statutory — for her claim and did not explain why she paid the sums in question. *See In re Sharif,* 549 B.R. at 530-32.

The *Barton* doctrine requires that a person or entity (1) be able to assert a prima facie case against a trustee and (2) obtain leave of an appointing court before bringing a lawsuit against a trustee. "Before leave to sue a trustee can be obtained, the claimant must be able to plead a prima facie case against the trustee." *In re Kids Creek Partners, L.P.,* 248 B.R. 554, 558 (Bankr. N.D. Ill. 2000) (citation and subsequent history omitted). "The trustee in bankruptcy is a statutory successor to the equity receiver, and it had long been established that a receiver could not be sued without leave of the court that appointed him." *In re Linton,* 136 F.3d 544, 545 (7th Cir. 1998) (citation omitted). The Seventh Circuit noted that:

> The concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then very great, . . . . [W]ithout the requirement, trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive . . . .

*Id.*

Ragda, Haifa, and the Debtor's intent to prevent the Trustee from selling the property is evident due to the various baseless objections they filed to the sale motion (Docket 734, 735, and 736) and their continued filings to prvent the sale even after the court had approved it. *See* Dockets 752,

---

[14] *See Barton v. Barbour,* 104 U.S. 126 (1881), 126-141.

753, 754, and 755.

Their objections about the sale price being too low was refuted by the testimony of the broker, Ms. Wagner. Ms. Wagner testified as to the reasonableness of the sale price. It was the price at which a willing buyer paid the seller for the property in an arms-length transaction.

There was no reason in 2022 to delay the sale of an estate asset in a bankruptcy case that had been pending since 2009. Waiting for pending appeals to be resolved was not necessary. In any event, Ragda would have needed to obtain a stay pending appeal to require this court to delay the sale after it had already entered an order allowing the sale.

After the Court entered its initial order approving the sale (Docket 748), the Trustee sought leave to sell the residence to an entity designated by the purchasers, Razzak and Tasneem Khader. *See* Trustee's Motion to Amend Proposed Order Authorizing Sale of Real Estate (Docket 746), Bankr. No. 09-05868. In her objection thereto, Ragda posited that the purchasers' designee might have a conflict of interest and considered that entity to be a new buyer although it was an entity designated to hold title. *See* Notice of Objection by Ragda to Trustee's Motion to Amend (Docket 753), p. 2.[15] The sale agreement allowed the purchaser to designate an entity to take title. Trustee's Amended List of Exhibits (Docket 742), Ex. 2: Fully Executed Real Estate Contract, p. 6, ¶ 16, Bankr. No. 09-05868: ("Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee . . . .").

Ragda also argued that the Trustee sought leave to sell the residence to an entity designated by the purchasers, the Trustee sought to sell the residence too quickly in light of her $459,000 lien,

---

[15] Haifa and the Debtor filed objections to the Motion to Amend, making the same arguments as Ragda. *See* Dockets 754 and 755. Due to the duplicative nature of these arguments, only Ragda's objection is discussed herein.

the Trustee dictated language that the sale be free and clear of her lien, and that the Trustee failed to respond to her offer to purchase the residence by waiving her lien and paying the mortgage. *See* Docket 753.

The Trustee was authorized by the contract to sell the residence to the purchasers' designee; thus, Ragda's first objection is baseless. Selling the property on 13 days notice in a case that has been pending for thirteen years was not too quick.

The Trustee did not and generally does not dictate what orders the court enters; the order entered allowed the sale to proceed free and clear of all liens; it did not adjudicate who, if anyone, had a lien in the premises. Movants' proposed orders are reviewed to ensure that they reflect a court's rulings. Proposed orders are not binding on the court. Movants do not dictate the terms of orders.

Bankruptcy Code section 363(f) allows the sale of property of the estate free and clear of liens and other interests under various conditions. *See* 11 U.S.C. § 363(f). A lienholder can be compelled to accept money in satisfaction of its interest.[16]

The court finds that there is nothing unfair about the 13 day notice period.

Movants' proposed orders are reviewed to make sure they reflect the court's rulings; they are not binding on the court.

This court's review of the record shows that Ragda did not formally offer to purchase the property. She testified that Wells Fargo agreed to permit her to make mortgage payments. Wells Fargo's employee, Mr. Payne, testified that he spoke with the Debtor about the mortgage but he did not authorize any changes or adjustments to the mortgage's terms. Neither the Debtor nor his sisters

---

[16] For a discussion of this issue, *see Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 29-47 (B.A.P. 9th Cir. 2008) and *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 540-48 (7th Cir. 2003).

have any proof to the contrary.

Ragda also argues the court lacked authority to declare the sale to be free of all liens because an appeal, No. 17-1615, was pending before the Seventh Circuit. She does not point to any legal authority in support of this assertion. Undeveloped legal arguments are waived.

Recall that in 2015, this court denied Ragda's baseless motion seeking a $435,949.80 money judgment against the trustee for mortgage, tax, and insurance payments she allegedly made. Bankr. No. 09-05868, Dockets 254 and 256; *In re Sharif*, 549 B.R. at 530-31. She has not shown that she has a lien based on those payments or another claim. Additionally, this court notes that the Debtor's appeal of the order approving the sale has been dismissed by the district court. *See Sharif v. Fox, Jr.*, No. 22-cv-04248, Dockets 18 and 19.

The court reiterates that neither Debtor nor his sisters obtained an order staying the sale. A request for a stay pending appeal must be sought first in the bankruptcy court before seeking such relief in a higher court. Federal Rule of Bankruptcy Procedure 8007(a).[17]

**F. Reasonableness of Price at Which Property was Sold**

The Debtor called Ms. Susan Kuttner to testify at the hearing on the sanctions motion on November 1, 2022. She is a managing broker, not an appraiser. Nov. 1, 2022 Hr'g. Tr., pp. 81-91. Ms. Kuttner testified that she did not inspect the residence and opined based on a comparative market analysis it was worth "around $900,000, maybe 972 . . . ." *Id.*, p. 82. Ms. Kuttner had no knowledge

---

[17] On September 19, 2022, in civil action No. 22-cv-4237, District Judge Seeger dismissed as moot Ragda's appeal of this court's Sale Order; that court noted that the sale had already taken place. *See Sharifeh v. Fox, Jr.*, No. 1:22-cv-04237, Order (Docket 12) and Judgment (Docket 13) (N.D. Ill. filed Aug. 11, 2022) (hereinafter "No. 22-cv-04237"); *see also* Sale Order") (Docket 748) and Memorandum Opinion thereon (Docket 747), Bankr. 09-05868.

On October 3, 2022, in civil action No. 22-cv-4233, District Judge Guzman dismissed Haifa's appeal of this court's Sale Order. *See Sharif v. Fox, Jr.*, No. 1:22-cv-04233, Order (Docket 14) and Judgment (Docket 15) (N.D. Ill. Oct. 3, 2022) (hereinafter "No. 22-cv-04233"). The dismissal without prejudice was based on her failure to file an application to proceed *in forma pauperis* or to pay the filing fee. *Id.*, Docket 14.

regarding how the listing broker marketed the property or how many offers to purchase it were received. The Debtor asked her whether it was possible that the house that was purchased for $800,000 twenty years before would be sold for $587,000. In response, Ms. Kuttner testified that:

> Well, it's possible. Obviously, you know, whatever people are willing to offer is what they're willing to offer and whatever is accepted of course. I mean, it did sell for 580 something. From my research, which of course, I believe you all and the court is all aware, I believe it was low, and it was a lower price than the value at the time or the current value.

*Id.*, pp. 83-84.

Ms. Kuttner noted that the recent rise in interest rates negatively affects the market and buyers. *Id.*, p. 89. Her opinion has no weight because the record shows that she was unaware of the property's condition.

In his response to the Trustee's Motion to Sell, the Debtor noted that based on the Illinois homestead statute, there will be no funds for creditors, as there is no equity in the property once Wells Fargo's mortgage ($437,000), the broker's commission ($35,220), the Debtor and his ex-wife's homestead exemptions (allegedly $15,000 each), and tax prorations and HOA expenses are deducted from the sale price ($587,000). Docket 736, p. 2. The Debtor does not explain what he means by this statement and cites no legal authority in support of the idea that lack of equity is significant in the context of homestead exemptions or the right to sell the property. The court is not required to ferret out the legal grounds or authority in support of a party's assertions. Failure to provide legal support for an argument dooms it; it is waived. *Amber N.L. v. Kijakazi*, No. 2:20-cv-461, 2022 WL 214481, at *3 (N.D. Ill. Jan. 25, 2022) (citation omitted) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

### G. Ragda's Motion to Sell the Property to Herself

Ragda's motion to sell the property to herself (Docket 752) is baseless. As explained previously, it is clear that she did not submit an offer to purchase it. Her motion states that she was offering more than the Trustee's prospective buyer(s) and that she would pay off the mortgage and pay cash for the property. None of this was communicated in writing to the broker. The motion was another ploy to delay and harass the Trustee and to needlessly increase his litigation costs.

### H. Federal Rule of Bankruptcy Procedure 9011 and the Inherent Authority to Sanction

Federal Rule of Bankruptcy Procedure 9011(b) states that:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . .

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b) (footnote omitted).

If Bankruptcy Rule 9011(b) is violated, after notice and a hearing a court may issue appropriate sanctions. Fed. R. Bankr. P. 9011(c). The motion for sanctions must be made separately and may not be filed unless within 21 days after service of the motion, the challenged paper, claim,

-18-

defense, contention, allegation or denial is not withdrawn or corrected. *Id.* The challenged pleadings have not been withdrawn.

The Trustee filed the motion for sanctions on August 29, 2022. It is not clear whether he served the motion on the Debtor and his sisters more than 21 days before he filed it. However, strict compliance with Bankruptcy Rule 9011 is not required for the court to exercise its inherent authority to issue sanctions in the form of attorney's fees and costs for abuse of the judicial system. *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 926-27 (7th Cir. 2004) (citations omitted); *see also Stanley v. Mason (In re BCB Contracting Servs., LLC)*, 2022 WL 1198232, at *5 (B.A.P. 9th Cir. Apr. 21, 2022) ("[t]o impose sanctions under its inherent authority, the bankruptcy court must find either bad faith, conduct tantamount to bad faith, or recklessness 'with an additional factor such as frivolousness, harassment, or an improper purpose.'") (subsequent history and citation omitted).

Reviewing courts judge awards of sanctions for abuse of discretion and will overturn them only if the lower court's findings are clearly erroneous, illogical, implausible or without support in the record. *Id.; see also Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1183 (7th Cir. 2020) ("We thus hold that the district court's findings were reasonable, especially under our deferential abuse of discretion standard of review.") (internal citation omitted)).

This court finds that it is necessary to exercise its inherent authority in response to the dishonest and vexatious conduct of the Debtor and his sisters. The court will award to the Trustee his reasonable expenses and attorney's fees incurred in responding to the objections to the motion to sell (Dockets 734, 735, and 736), their frivolous objections to the motion to amend (Dockets 753, 754, and 755), and Ragda's totally baseless motion to sell the property to herself (Docket 752).

Various sanctions entered by multiple courts have not deterred the Debtor and his sisters from

-19-

engaging in frivolous conduct with respect to this bankruptcy case: in 2008, the Northern District of Texas ruled that Sharif and the other Wellness litigation plaintiffs must pay $665,596.13 for the opposing party's attorney's fees;[18] this court awarded $60,755.69 to Wellness in 2010,[19] and this court sanctioned Sharif in 2021.[20] The court finds that each of the Trustee's allegations of misconduct are valid and supported by the record and that the allegations have been proven by clear and convincing evidence. The Debtor and his sisters are ordered to pay the Trustee's attorney's fees and expenses they caused him to incur in responding to their baseless pleadings. The Debtor and his sisters are also ordered to reimburse the Trustee for the attorney's fees and expenses he incurred in pursuing the motion for sanctions.

Their factual contentions were unfounded and they did not bother to support their legal contentions with authority.

The sanctions will be entered jointly and severally against Richard Sharif, Ragda Sharifeh and Haifa Sharifeh.

This matter was set for a hearing on February 28, 2023 at 2:00 p.m. (Docket 843), at which neither the Debtor nor his sisters presented any coherent factual or legal reasons to deny the request for sanctions. The respondents had been allowed up to February 10, 2023 to respond to the Trustee's request. On February 28, 2023, the court was told that a pleading(s) had been filed. However, review of the docket reveals that nothing was filed by February 10, 2023. The Debtor and his sisters filed a joint response on March 2, 2023, after the February 28, 2023 hearing date. Docket 847. The

---

[18] *See Sharif v. Wellness Int'l Network, Ltd.,* 2008 WL 2885186, at *4.

[19] *See* Order Granting Sanctions Motion (Adv. Docket 85), Adv. No. 09-00770.

[20] *See* Order Granting Sanctions Motion (Docket 669), Bankr. No. 09-05868; Adv. Dockets 143 and 180, Adv. No. 20-00399.

Trustee filed an amended reply on March 6, 2023. Docket 849.

## I. Judicial Notice

The Debtor and his sisters appear to complain of the instances when the Trustee or this court refers to the rulings of other courts. Joint Response (Docket 847), ¶ 10, p. 2, Bankr. No. 09-05868. Without more than the unsupported conclusory allegation, it is difficult to know exactly what is complained of. In any event, Federal Rule of Evidence 201(b) "[p]ermits the court to take judicial notice of facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (citation omitted).

## J. Review of Compensation Request

The court notes that the Trustee is not seeking compensation for (1) attorney time spent prior to the improper objections and (2) attorney time spent to prepare for what should have been a relatively routine hearing on the motion in issue. The Trustee has written off 0.5 hours for attorney time spent at the initial hearing on the motion to approve sale (Docket 730). The Trustee wrote off attorney time spent drafting the motion to amend the approval order to reflect the change in the identity of the purchaser (Docket 746). The Trustee also wrote off or prorated attorney time entries for communications with the purchaser concerning unrelated issues. The Trustee excluded time entries related to appellate proceedings regarding the order that approved the sale. However, the Trustee has included communications with the title company despite the Sharif family's appeals because that was part of their scheme to disrupt the sale.

The court has reviewed each entry of attorney time for which compensation is being sought. There are instances where more than one attorney billed in a time entry. This case, while filed in 2009, concerns matters that go back to 2002 in federal and state courts in Texas and Illinois. The

court understands the need for more than one attorney to review and handle this matter.

The joint response filed by the Debtor and his sisters notes that under Rule 9011 fees awarded "should only be an amount that will 'deter' from repeating such conduct." Joint Response (Docket 847), p. 3. This court would like to know what amount of monetary sanctions would deter them from proceeding — as they have in the past — in bad faith and with intent to delay the resolution of this case and to harass the Trustee. The $665,596.13 sanction imposed by the Texas court[21] was not enough to convince them to not repeat their offensive behavior. The $37,508.00 attorney fee sanction entered against the Debtor in Adversary Case No. 20-00399 has not deterred him.[22] In addition, in that case the court sanctioned the Debtor in the amount of $20,000 payable to the United States Treasury.[23]

### 1. Burden of Proof

Federal courts have inherent powers to assess attorney's fees and to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (internal citation omitted). The burden of proof is on the party seeking the sanction. A court may do so "[w]here it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." *Phinney v. Paulshock,* 181

---

[21] *See Sharif v. Wellness Int'l Network, Ltd.,* 2008 WL 2885186, at *4.

[22] *See* Order (Adv. Docket 180), Adv. No. 20-00399. For background on this adversary proceeding, *see Sharif v. Fox,* No. 1:19-cv-6035 (N.D. Ill. Sept. 9, 2019) and *Sharif v. Fox,* No. 21 C 1330, 2022 WL 6751930, at *6 (N.D. Ill. Oct. 11, 2022).

[23] *See* Order (Adv. Docket 143), p. 24, Adv. No. 20-00399.

F.R.D. 185, 197 (D.N.H. 1998).

The court has reviewed the time entries of the Trustee's attorney and finds that they are reasonable and necessary. When reviewing them, the court was constantly reminded of what was going on in the case at the time of the entry. The court understands why the attorneys did what they did. The fee petition was not reviewed in a vacuum. The court knows just how vexing and problematic the Debtor and his sisters have conducted themselves herein, causing the Trustee to incur the legal expenses for which he now seeks reimbursement. The request for compensation and expenses is accepted. The court finds that the legal work done was reasonable and necessary.

### K. Conclusion

The court awards the Trustee Horace Fox, Jr. $44,959.63 in fees and expenses against Richard Sharif, Ragda Sharifeh (Sharif) and Haifa Sharifeh (Sharif), jointly and severally.

A separate order will be entered.

ENTER: _____ *Jacqueline P. Cox*                    **Date**: April 4, 2023
Hon. Jacqueline P. Cox
United States Bankruptcy Judge